No. 19-2927

_____

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

EMERSON OBED HERNANDEZ CULAJAY, and
M.S.H.S., a minor child,

*Plaintiffs-Appellants*

v.

KEVIN K. MCALEENAN, Acting Secretary,
United States Department of Homeland Security, et al.

*Defendants-Appellees.*

On Appeal from Order of the United States District Court
for the Eastern District of Pennsylvania
No. 5:19-cv-03204-JDW
Honorable Joshua D. Wolson

_____

## APPELLANTS' OPENING BRIEF
## AND JOINT APPENDIX VOLUME I, PAGES JA001-024

_____

ANTHONY VALE
MICHAEL S. DEPRINCE
PEPPER HAMILTON LLP
3000 Two Logan Square
Philadelphia, Pennsylvania 19103
Telephone: 215.981.4000

TOBIAS BARRINGTON WOLFF
3501 Sansom Street
Philadelphia, Pennsylvania 19104
Telephone: 215.898.7471

BRIDGET CAMBRIA
CAMBRIA & KLINE, P.C.
532 Walnut Street
Reading, Pennsylvania 19601
Telephone: 484.926.2014

AMY MALDONADO
LAW OFFICE OF AMY MALDONADO
333 Albert Avenue, Suite 610
East Lansing, Michigan 48823
Telephone: 517.803.2870

*Attorneys for Appellants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

SUBJECT MATTER AND APPELLATE JURISDICTION ................................. 3

STATEMENT OF ISSUES PRESENTED ............................................. 5

STATEMENT OF THE CASE .............................................................. 6

SUMMARY OF ARGUMENT .............................................................. 13

ARGUMENT ................................................................................. 15

    **A.**    The District Court Had Original Subject Matter Jurisdiction To Enforce the *Flores* Settlement and To Hear Minor Appellant M.S.H.S.'s Claims Regarding Her Custody and Detention as a *Flores* Class Member ........................................................ 15

    **B.**    The District Court Had Subject Matter Jurisdiction To Adjudicate Appellants' Claims that Their Forced Return To Mexico Would Violate Their Statutory and Constitutional Right To Be Represented by Counsel ........................................................ 23

    **C.**    The District Court Had Subject Matter Jurisdiction Over Appellants' Claims that Government Has No Statutory Authority To Return Them Forcibly to Mexico ................................. 32

    **D.**    The District Court Had Subject Matter Jurisdiction To Adjudicate Appellants' Claims that Their Forced Return to Mexico Would Be Inconsistent with the Government's Non-Refoulement Obligations ................................................ 37

CONCLUSION ................................................................................. 42

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. Sessions*, 338 F. Supp. 3d 1042 (N.D. Cal 2018) ............................28, 29

*Arroyo v. United States Department of Homeland Security*, No. SACV 19-815, 2019 U.S. Dist. LEXIS 111869 (C.D. Cal. June 20, 2019) ............27, 28

*Bartlett v. Honeywell Int'l*, 737 F. App'x 543 (2d Cir. 2018) ...........................20, 21

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) ...............................................20

*Bunikyte ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 U.S. Dist. LEXIS 26166 (W.D. Tex. Apr. 9, 2007) .....................................16, 18

*Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107 (S.D. Cal. 2018)...................30

*Chehazeh v. Attorney General*, 666 F.3d 118 (3d Cir. 2012).....................25, 26, 27

*Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943) ....................................19

*Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520 (BIA 2011)...................................33

*Fla. Dep't of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008)..............26, 41

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) .......................................................16

*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017)....................................................16

*Government of Guam v. United States*, 341 F. Supp. 3d 74 (D.D.C. 2018) ................................................................................................................19

*Gunn v. Minton*, 568 U.S. 251 (2013) .............................................................20, 21

*In re Harvey*, 213 F.3d 318 (7th Cir. 2000).............................................................19

*I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415 (1999)......................................................39

*I.N.S. v. Stevic*, 467 U.S. 408 (1984) ......................................................................39

*Illinois v. City of Milwaukee*, 406 U.S. 91 (1971) ..................................................15

*Innovation Law Lab v. McAleenan*, 924 F.3d 503 (9th Cir. 2019)....................36, 37

*J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)....................................29

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ..........................6, 30, 31

*Khouzam v. Attorney General*, 549 F.3d 235 (3d Cir. 2008).................39

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) ...............31

*Ponce-Leiva v. Ashcroft*, 331 F.3d 369 (3d Cir. 2003)..........................23

*Segar v. Mukasey*, 508 F.3d 16 (D.C. Cir. 2007)....................................20

*United States v. Volvo Powertrain Corp.*, 854 F. Supp. 2d 60 (D.D.C. 2012) ..........................................................................................................19

*W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018)....................17

**STATUTES**

8 U.S.C. § 1182(a)(7).....................................................................................6

8 U.S.C. § 1225(b)(1)......................................................................................6

8 U.S.C. § 1225(b)(1)(A)(i) .........................................................................33

8 U.S.C. § 1225(b)(2)......................................................................................6

8 U.S.C. § 1225(b)(2)(A) .............................................................................33

8 U.S.C. § 1225(b)(2)(B) .............................................................................35

8 U.S.C. § 1225(b)(2)(C) .............................................................................35

8 U.S.C. § 1229a ..............................................................................................7

8 U.S.C. § 1231(b)(3)....................................................................................38

8 U.S.C. § 1252 ..............................................................................................41

8 U.S.C. § 1252(a)(4)....................................................................................40

8 U.S.C. § 1252(a)(5)....................................................................................25

8 U.S.C. § 1252(b)(4)(A) .............................................................................31

8 U.S.C. § 1252(b)(9) ........................................................................................27, 36

8 U.S.C. § 1362 ...................................................................................................23

28 U.S.C.§ 1291 ...................................................................................................4

28 U.S.C. § 1331 ........................................................................................3, 21, 40

28 U.S.C. § 1332 ...................................................................................................3

28 U.S.C. § 1332(a)(2) ..........................................................................................3

FARRA § 2242(a) ...............................................................................................39

INA § 212(a)(7)(A)(i) .........................................................................................33

## REGULATIONS

8 C.F.R. § 235.3(d) ..............................................................................................7

8 C.F.R. § 1003.6(a) .............................................................................................9

## OTHER AUTHORITIES

1951 Convention Relating to the Status of Refugees, art. 33 ...................................38

1967 Protocol Relating to the Status of Refugees, art. 1(1) ...................................38

1967 Protocol Relating to the Status of Refugees, art. 7(1) ...................................38

TRAC, Syracuse University, *Increasing Numbers "Remain in Mexico" Awaiting Immigration Court Hearings* (Aug. 26, 2019).......................2

## **INTRODUCTION**

Appellants, a father and his six-year daughter, fled Guatemala to escape gang-related violence in which the Guatemalan authorities are complicit. They seek asylum in the United States. On crossing the United States border in April 2019, they turned themselves in to U.S. Customs and Border Patrol ("CBP") and sought asylum. They were immediately returned to Mexico to await a hearing in immigration court.

After a harrowing two months in Mexico, Appellants returned for a hearing, but were ordered removed by an Immigration Judge on June 25, 2019. Then, they were brought to the Berks Family Residential Center in Leesport, Pennsylvania ("Berks") on June 28, 2019. Once at Berks, Appellants obtained counsel for the first time, and filed an appeal to the Board of Immigration Appeals ("BIA"). While their immigration proceedings continue, Immigration and Customs Enforcement ("ICE") is intent on "returning" Appellants to Mexico pursuant to the Migrant Protection Protocols ("MPP"), despite the fact that there is ample room at Berks for Appellants.

The MPP was announced by the Administration in December 2018. Under the MPP, asylum-seekers can be handed over to Mexican authorities at the

border to face homelessness and worse while they await a hearing in a U.S. Immigration Court.[1]

The district court (Hon. Joshua D. Wolson) held a preliminary injunction hearing on August 16, 2019, and in an opinion on August 19, 2019, denied Appellants' request for an injunction to prevent their return to Mexico on the ground that the court had no subject matter jurisdiction over any of the claims Appellants presented. On August 21, 2019, Judge Wolson denied Appellants' request for a stay pending appeal. The Government, however, has agreed to keep Appellants at Berks pending the outcome of this appeal.

Appellants are not Mexican residents or nationals. They have nowhere to go in Mexico, where they likely will be homeless and are vulnerable to being kidnapped. Once they are in Mexico, they will have no lawyer. Their current attorney-client relationship with counsel in Berks County, Pennsylvania will be impossible, as there are no means to communicate with them while they are homeless in Mexico.

Appellants request that the Court reverse the district court, and hold that there is subject matter jurisdiction over Appellants' claims.

---

[1] As of the end of July 2019, over 26,000 people had been returned to Mexico under the MPP. *See* TRAC, Syracuse University, *Increasing Numbers "Remain in Mexico" Awaiting Immigration Court Hearings*, (Aug. 26, 2019) http://trac.syr.edu/whatsnew/email.190826.html.

# SUBJECT MATTER AND APPELLATE JURISDICTION

The district court has original subject matter jurisdiction under 28 U.S.C. § 1331. Appellants' claims arise under *Flores*, a federal class action settlement agreement to which the United States is a party, and under the laws, treaties and Constitution of the United States. The jurisdiction of the court is not ousted by the jurisdiction-stripping provisions of 8 U.S.C. §§ 1252(a)(4), (a)(5), and (b)(9).

In the alternative, the requirements of alienage diversity are satisfied here. *See* 28 U.S.C. § 1332(a)(2). Appellants are citizens of a foreign state who are not lawfully admitted for permanent residence in the United States; defendants are United States citizens who reside in the United States. What is at stake for Appellants is their liberty, life, physical and mental well-being, and ability to access the asylum system of the United States. Hence "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost." 28 U.S.C. § 1332. The Court, however, need not evaluate alienage jurisdiction in this case. The original subject matter jurisdiction of federal courts to carry into effect a federal consent decree defining the duties of the federal government and its agents, and hearing claims brought under the United States Constitution and federal statutes and regulations, rests on federal question jurisdiction and does not turn on the citizenship of the parties.

This Court has appellate jurisdiction under 28 U.S.C.§ 1291, as this is an appeal from the denial of a preliminary injunction and the final dismissal of the action by order entered August 21, 2019.  (JA019–022).  Appellants filed their notice of appeal on August 20, 2019.  (JA023–024).

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court erred in ruling that it had no subject matter jurisdiction to enforce Minor Appellant's rights as a class member under the *Flores* settlement agreement, a consent decree entered in *Flores v. Sessions*, CV-85-4544 (C.D. Cal.). The *Flores* Settlement, based on the federal claims of the class, addresses the custody and detention of minors in immigration proceedings.

2. Whether the district court erred in holding that 8 U.S.C. §§ 1252(a)(5) and (b)(9) ousted its subject matter jurisdiction over Appellants' claims that Appellants' forced return to Mexico would have the effect of terminating their relationship with counsel, in violation of the Due Process Clause and 8 U.S.C. § 1362, which provides a right to be represented by counsel in removal proceedings at no expense to the government.

3. Whether the district court erred in holding that 8 U.S.C. § 1252(b)(9) ousted its subject matter jurisdiction over Appellants' claims that ICE has no statutory authority to return them forcibly to Mexico.

4. Whether the district court erred in holding that 8 U.S.C. § 1252(a)(4) ousted its subject matter jurisdiction over Appellants' claims that their forced return to Mexico would violate their rights under the Refugee Convention and the Convention Against Torture, and would cause the United States to breach its non-refoulement treaty obligations.

## STATEMENT OF THE CASE

Appellants are Guatemalan citizens who fled their home country because they were "not safe or secure in Guatemala." (JA084, ¶ 2). Appellants entered the United States without inspection on April 23, 2019, and turned themselves in to CBP officers. (JA084, ¶ 3). They entered as "arriving aliens."

There are two categories of "arriving aliens" who are inadmissible. *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). The first category comprises those who fall within 8 U.S.C. § 1225(b)(1)—persons "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document." Such a person is inadmissible under 8 U.S.C. § 1182(a)(7). Section 1225(b)(1) applied to Appellants, as Appellants did not have valid entry documents. (JA335, Hr'g Tr.).

The second category of inadmissible aliens are "other aliens," who fall within 8 U.S.C. § 1225(b)(2). This category comprises every *other* person who is an applicant for admission but is not entitled to be admitted. Non-citizens who fall into this category are subject to the "contiguous territory" provision, codified at 8 U.S.C. § 1225(b)(2)(C), on which the government asserts authority for the MPP.

After CBP officers turned Appellants over to ICE, ICE issued Notices to Appear on April 28, 2019, requiring Appellants to appear before an immigration

judge in San Diego on June 25, 2019.  (JA088–090, 094–096).  Appellants, therefore, were put in standard removal proceedings (known as section 240 proceedings, under 8 U.S.C. § 1229a), rather than expedited removal.

ICE stamped Appellants' Notices to Appear "MPP," referring to the Migrant Protection Protocols.  (JA088–090, 094–096).  Under the MPP, those fleeing prosecution are forcibly "returned" to Mexico during the pendency of their removal proceedings.  By 8 C.F.R. § 235.3(d), a non-citizen sent to Mexico is "considered detained for a proceeding within the meaning of [8 U.S.C. § 1225(b)]."

The MPP's "initial processing information" informed Appellants that they were entitled to be represented by counsel at their hearing in Immigration Court on June 25, 2019, but did not explain how Appellants would be able to find a lawyer while in Mexico, let alone communicate with a lawyer to prepare for the hearing.  (JA091–092, 097–098).  The Government made no assessment at that time of Appellants' fear of being returned to Mexico.

With the Notices to Appear marked MPP, CBP agents took Appellants to the San Ysidro border on April 29, 2019, and turned Appellants over to Mexican immigration authorities in Tijuana.  (JA085, ¶ 8).  Once in Mexico, Appellants were initially homeless and feared for their safety.  (JA085, ¶¶ 10–11).  Appellants managed to avoid harm, however, only because they were taken in by a

stranger in Tijuana. (JA085, ¶ 12). Appellants fear that if they are forced to go to Mexico again, they will not be so lucky. (*Id.*).

Conditions in Mexican border cities are unsafe for Appellants and other asylum-seekers. According to the U.S. Department of State, "violence against migrants by government officers and organized criminal groups" is one of "[t]he most significant human rights issues" in Mexico. (JA100). In Tijuana (the Mexican city where MPP was first implemented and where Appellants were forced to live for two months while awaiting their first immigration hearing), 2,518 people were murdered in 2018, which is seven times the total in 2012. (JA140). First-hand reports from migrants recounting their experiences in Mexico also demonstrate how unsafe Mexican border towns are for migrants seeking asylum in the United States. (JA142–144).

On June 25, 2019, Appellants presented at the Port of Entry at San Ysidro, and ICE transported them to their court hearing in San Diego. (JA085, ¶ 13). Appellants had no lawyer, and Appellant Hernandez Culajay was so frightened of being returned to Mexico that he agreed under duress not to pursue his and his daughter's asylum claims in that proceeding. (JA085–086, ¶¶ 14–16).

At the conclusion of their court hearing, the immigration judge denied Appellants' asylum claims and ordered their removal to Guatemala. (JA093, 099). Although the judge informed Appellants of their ability to appeal the decision,

Appellant Hernandez Culajay felt compelled to waive his appeal rights, fearing that any appeal would result in being sent back to Mexico. (*Id.*; JA061–062, ¶¶ 14–16).

Following their court appearance, ICE transferred Appellants from San Diego to Berks for continued detention pending their removal to Guatemala. (JA086, ¶ 17). Shortly thereafter, Appellants retained counsel for the first time. Now represented, Appellants initiated an appeal to the BIA, arguing that their decision not to pursue their asylum claims was made under duress, and thus not knowing, intelligent, or voluntary. (JA086, ¶¶ 18–19; JA226–227, ¶¶ 3–4). The filing the appeal triggered the automatic stay of removal provision of 8 C.F.R. § 1003.6(a), preventing Appellants' removal to Guatemala, but Appellants also filed a motion for an emergency stay of removal, fearing that ICE might try to return them to Mexico. (JA169–174). On July 23, 2019, the BIA granted Appellants' motion for an emergency stay of removal, which had drawn attention to the possibility that ICE might try to return Appellants to Mexico. (JA168).

Nevertheless, around July 23, 2019, the government took Appellants from Berks to Allentown airport for a flight to San Diego with the intent that they be taken to the Mexican border for return to Mexico. (JA087, ¶ 20). When advised that ICE intended to send Appellants to Mexico notwithstanding the BIA's order, Appellants' counsel drafted and filed an Emergency Petition for a Writ of

Mandamus. (JA031–052). Appellants, with the agreement of the Defendants, obtained an order from District Judge Chad F. Kenney stating that Appellants may not "be physically sent out of the country from the United States (to Mexico or Guatemala)." [Dkt. No. 2]. The action was then assigned to Judge Joshua D. Wolson.

While Appellants' motion for a preliminary injunction was pending, the USCIS Asylum Office interviewed Appellants for the first time to determine whether they had substantial grounds for a fear of returning to Mexico. (JA279–291). This is known as a non-refoulement interview. Despite multiple requests from Appellants (and over strenuous objection of counsel), ICE did not allow Appellants' attorney to be present by telephone or otherwise. (JA283).

ICE takes the position that, to preclude their forcible return to Mexico, asylum-seekers like Appellants have to show facts specific to them, and not merely that similarly-situated migrants awaiting immigration court hearings in the United States are the subject of persecution in border towns. (JA376–377, Hr'g Tr.). DHS determined that Appellants, even the six-year-old Appellant, did not have grounds for fear of return to Mexico. (JA307–309, 361–362).

Before Judge Wolson, Appellants sought a preliminary injunction, arguing that the government's threat to send Appellants to Mexico during the pendency of their appeal to the BIA, *inter alia*:

- violated M.S.H.S.'s rights as a class member under the *Flores* Settlement;

- violated the July 23, 2019 stay order entered by the BIA;[2]

- violated their statutory and constitutional rights, as sending them to Mexico would unduly interfere with an existing attorney-client relationship;

- violated their statutory and constitutional rights because the government is not authorized to apply the MPP to arriving aliens such as Appellants, and the MPP did not respect the non-refoulement obligations of the United States.

(JA068–079).

On August 16, 2019, Judge Wolson held a hearing on Appellants' request for a preliminary injunction. (JA292). At the hearing, the government confirmed its intent to send Appellants to Mexico absent an injunction. (JA297, 299–300). The government's position was that Appellants would suffer no irreparable harm if returned to Mexico because they had no specific fear of being harmed and there would be no change in their immigration status. (JA314–315, 361–362).

Judge Wolson raised many complex questions at the hearing, but declined to allow a reply or supplemental brief by Appellants. (JA409–413). In an

---

[2] At the preliminary injunction hearing, counsel for Appellants agreed with Judge Wolson that there was some ambiguity as to whether the BIA's stay order barred Appellants' return to Mexico, and withdrew without prejudice the claim that the government's efforts under the MPP violated the stay order, pending Appellants' seeking of clarification from the BIA. (JA336–338).

opinion issued on August 19, 2019 (the Monday after the hearing the previous Friday), Judge Wolson denied Appellants' request and held that the district court lacked subject matter jurisdiction over any of the claims that Appellants presented. (JA001). Judge Wolson ordered the case closed on August 21, 2019. (JA021–022).

The government acknowledged that, although the Berks facility was "nearly empty," its position remained that Appellants should be returned to Mexico. (JA413). During the pendency of this appeal, at the urging of Appellants and their counsel, the government agreed to keep Appellants at Berks.

# SUMMARY OF ARGUMENT

The district court erred in holding that it lacked subject matter jurisdiction over all Appellants' claims.

Minor Appellant's claims under the *Flores* Settlement arise under federal law. The Settlement, which defines the government's obligations in relation to the detention of migrant children, is a federal consent decree resolving federal constitutional, statutory, and regulatory claims brought against, and binding on, the federal government and its agents. The source of the rights that Minor Appellant seeks to enforce is federal, and federal common law governs any disagreements about the meaning or construction of the agreement. This is a straightforward federal question action in which the district court has original jurisdiction pursuant to 28 U.S.C. § 1331.

Appellants' claim that the threatened interference with their attorney-client relationship violated their federal statutory and constitutional rights also comes before the district court pursuant to federal question jurisdiction. The district court incorrectly held that two subparagraphs of 8 U.S.C. § 1252 stripped it of jurisdiction. In fact, the two subparagraphs, 1252(a)(5) and (b)(9), apply only to the review of a final order of removal, or to claims that arise from the removal proceedings. No such final order exists here, and Appellants' claims that their return to Mexico would impose undue harm on their established attorney-client

relationship comprise independent constitutional and statutory violations that have no bearing on a final order in their removal proceedings.

Appellants' third claim is that the INA does not authorize their forced return to Mexico. Again, there is federal question jurisdiction. The district court's jurisdiction is not ousted by subparagraph 1252(b)(9) because Appellants' claims do not arise from "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Rather, Appellants' claims are based on the decision by ICE to return them forcibly to Mexico—a custody decision that was without statutory authorization. Because the application of the MPP to Appellants was not "an action taken" to remove Appellants, subparagraph 1252(b)(9) has no application.

Appellants' fourth claim is that their forced return to Mexico under the MPP will violate their non-refoulement rights. The district court had federal question jurisdiction because they do not challenge a final order of removal. Instead, Appellants allege that their forced placement in Mexico during the pendency of their removal proceedings violates the United States' treaty obligations under the Refugee Convention and CAT, as well as the domestic statutes that uphold these obligations. Because such claims do not bear on the merits of Appellants' removal proceedings, the district court erred in invoking subparagraph 1252(a)(4) as a blanket jurisdictional bar.

# ARGUMENT

**A. The District Court Had Original Subject Matter Jurisdiction To Enforce the *Flores* Settlement and To Hear Minor Appellant M.S.H.S.'s Claims Regarding Her Custody and Detention as a *Flores* Class Member**

Appellants assert claims under the *Flores* Settlement based entirely on federal law. The *Flores* Settlement, which defines the Appellees' obligations in relation to the detention of migrant children, is a federal consent decree resolving federal constitutional, statutory, and regulatory claims brought against, and binding on, the federal government and its agents. The source of the rights that Minor Appellant seeks to enforce is federal, and federal common law governs any disagreements about the meaning or construction of the agreement. As the United States Supreme Court has long held, claims that arise out of federal rights and obligations fall within a district court's federal question jurisdiction, including "claims founded upon federal common law." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1971). This is a straightforward federal question case in which the district court has original jurisdiction pursuant to 28 U.S.C. § 1331.

## 1. The *Flores* Settlement

In January 1997, a class-wide settlement agreement was reached in a case now captioned *Flores v. Sessions*, CV-85-4544 (C.D. Cal.). For more than 20 years, the *Flores* Settlement has prescribed "a nationwide policy for the detention, release, and treatment of minors in the custody of INS [which] shall supersede all

previous INS policies that are inconsistent with the terms of [the] Agreement."

(JA180, ¶ 9). "*Flores* is the only binding legal standard directly applicable to the

detention of minor aliens by the United States Government, despite the passage of

time and the drastic changes in immigration policy since this judgment was first

entered." *Bunikyte ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 U.S.

Dist. LEXIS 26166, at *9 (W.D. Tex. Apr. 9, 2007); *see also Flores v. Sessions*,

862 F.3d 863, 869 (9th Cir. 2017) ("It has now been twenty years since the

Settlement . . . and the government has not published any such rules or regulations.

Thus, pursuant to the 2001 agreement, the Settlement continues to govern those

agencies that now carry out the functions of the former INS.").

The *Flores* Settlement applies to all minors in immigration custody,

regardless of whether the apprehended child is unaccompanied, or accompanying

her parent or family. *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016); *see also*

*Flores v. Sessions*, 862 F.3d at 881 (holding that "[n]ot a single word in [the

Homeland Security Act or the Trafficking Victims Protection Reauthorization Act]

indicates that Congress intended to supersede, terminate, or take away" any

minor's rights under the *Flores* Settlement).

Paragraph 24(B) of the *Flores* Settlement gives Minor Appellant

M.S.H.S. the right to pursue her claims in the Eastern District of Pennsylvania:

> Any minor who disagrees with the INS's determination
> to place that minor in a particular type of facility, or who

asserts that the licensed program in which he or she has
been placed does not comply with the standards set forth
in [the Agreement], may seek judicial review in any
United States District Court with jurisdiction and venue
over the matter to challenge that placement determination
or to allege noncompliance with the standards set forth
. . . . In such an action, the United States District Court
shall be limited to entering an order solely affecting the
individual claims of the minor bringing the action.

(JA188–189, ¶ 24(B)).

As one court has observed, "[i]n effect, Paragraph 24(B) [of the

*Flores* Settlement] acts as a choice-of-forum clause, allowing District Courts

around the Nation to consider individual challenges to the government's placement

determination." *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1129 (N.D. Ill. 2018).

Indeed, district courts other than the Central District of California have enforced

the rights of *Flores* class members, and to the best of Appellants' knowledge, none

has refused on the ground of lack of subject matter jurisdiction.[3] *See, e.g.*, *id.* at

1128 ("When properly conceived, subject matter jurisdiction poses no obstacle to

---

[3] The district court's suggestion that M.S.H.S. seek to enforce her rights
under the *Flores* Settlement in the Central District of California, (JA017), if
permitted to stand, would sow confusion among *Flores* class members as to which
court a class member should turn to enforce his or her rights. Children with no
connection to the Central District of California, other than their membership in the
*Flores* class, would be forced to litigate their claims in a forum far removed from
their physical location, where access to lawyers might be prohibitively difficult.
Furthermore, the ability of a district court to grant emergency relief, as was
necessary here, would be prejudicially obstructed by the obstacles of distance and
time. The burden on Judge Gee, under any such scenario, would be crushing.

considering Plaintiffs' claim under the Flores Agreement. That is because the original *Flores* case itself . . . was premised on federal-question jurisdiction."); *Bunikyte*, 2007 U.S. Dist. LEXIS 26166, at *13 ("Paragraph 24(b) provides that any individual child may bring suit in any Federal District Court.").

Before the district court, the government did not argue that there was no affirmative grant of subject matter jurisdiction supporting the power of the court to hear the *Flores* claim. Instead, in his *sua sponte* analysis, Judge Wolson wrote:

> [A]s a general rule, courts do not have the authority to enforce other courts' injunctions. Indeed, the court that issued an injunctive order alone possesses the power to enforce compliance with and punish contempt of that order.

(JA010 (citations omitted)). He went on to observe that "the district court that approved the *Flores* Settlement and entered it as a consent decree lacks the power to expand this Court's power because this Court's power, as authorized by the Constitution or by statute, may not be expanded by judicial decree." (*Id.*).

The enforcement of the *Flores* Settlement by a district court outside the Central District of California does not present a question of subject matter jurisdiction. The *Flores* Settlement is a federal consent decree to which the United States and its agents are parties. The district court here had subject matter jurisdiction over Minor Appellant's *Flores* claim because she is a *Flores* class member seeking to enforce federally created rights acknowledged by the United

States before a federal court. Because the *Flores* Settlement is governed by, and must be interpreted according to, federal contract law principles, claims brought to enforce rights under the Settlement carry a statutory authorization for federal question jurisdiction under 28 U.S.C. § 1331.

2.  M.S.H.S.'s *Flores* Claims Arise Under Federal Law

Federal consent decrees must be interpreted with reference to federal common law principles. Federal consent decrees that bind the government, in particular, must be governed by and interpreted with reference to federal common law. Federal district courts in the District of Columbia have squarely held that "a consent decree between the federal government and another party must . . . be interpreted in light of the federal common law of contracts." *Government of Guam v. United States*, 341 F. Supp. 3d 74, 86 (D.D.C. 2018); *see also United States v. Volvo Powertrain Corp.*, 854 F. Supp. 2d 60, 64 n.1 (D.D.C. 2012) ("A federal court interpreting its own consent decree applies the federal common law of contracts."). The Seventh Circuit has affirmed the same proposition. *See In re Harvey*, 213 F.3d 318, 321–22 (7th Cir. 2000) (stating that the interpretation of a federal consent decree is governed by federal common law).

This proposition flows from long-established precedent requiring that federal common law govern the contractual obligations of the government. In *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943), the Supreme Court held

that a uniform rule of federal common law controls the obligations of the United States in relation to the commercial paper it issues. The Court then expanded on that principle in a series of rulings holding that "obligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (citing *United States v. Little Lake Misere Land Co.*, 412 U. S. 580, 592–94 (1973); *Priebe & Sons, Inc. v. United States*, 332 U. S. 407, 411 (1947); *Nat'l Metro. Bank v. United States*, 323 U. S. 454, 456 (1945)). A consent decree that binds the government and its agents is a contract defining the rights and obligations of the United States. *See, e.g.*, *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007). Such a decree is therefore "governed exclusively by federal law." *Boyle*, 487 U.S. at 504.

The Second Circuit has applied these principles to hold that claims involving a dispute over whether a party "has complied with a consent decree approved by a federal district court," alongside a potential federal preemption question, raised "disputed, substantial federal issues which are amenable to federal court resolution without interfering with the federal-state balance approved by Congress" and hence are subject to federal question jurisdiction. *Bartlett v. Honeywell Int'l*, 737 F. App'x 543, 546 (2d Cir. 2018) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Here, it is the federal government and its agents whom Appellants allege have not "complied with a consent decree approved by a federal

district court," *id*., making the "substantial" nature of the federal issue under *Gunn* indisputable. *Gunn*, 568 U.S. at 258. And the "federal-state balance approved by Congress" in the enforcement of federal consent decrees is entirely federal in nature—Congress would always expect federal courts to be the tribunals in which federal consent decrees are enforced. Recognizing federal question jurisdiction in this case does not create any possibility of altering the federal-state balance contemplated by Congress in 28 U.S.C. § 1331.

In fact, it is clear that the district court's holding has nothing to do with its original subject matter jurisdiction under § 1331. It is evident the district court here did not contemplate that Appellants would refile their claims in a Pennsylvania state court. Rather, the district court believed that Appellants should file their request for relief in the Central District of California. (JA017). In the most remarkable passage of its ruling, the district court explicitly attempted to transform this question of venue into one of subject matter jurisdiction, asserting that "jurisdiction"—meaning subject matter jurisdiction—"does vary from district court to district court" on the question of which federal district courts can enforce a federal consent decree. (JA010). This is error. The original subject matter jurisdiction of the federal district courts in the federal question statute is granted equally across the federal system. *See* 28 U.S.C. § 1331 ("*The district courts* shall

have original jurisdiction of *all civil actions* arising under the Constitution, laws, or treaties of the United States." (emphasis added)).

What the district court is thus seeking to do is transform a purported question of judgments and remedies law into an infirmity of subject matter jurisdiction. The district court concluded that the *Flores* decree cannot do what every other court to address the matter has interpreted paragraph 24(B) to do: authorize other federal district courts to enforce its provisions directly. (JA007–010). But the United States asserted no such challenge to the power of the district court to enforce the *Flores* Settlement directly. The district court raised the issue *sua sponte*, and it was able to do so only by labeling this enforcement question as one of "subject matter jurisdiction" and invoking the precept that defects to such jurisdiction cannot be waived and must be raised on the court's own initiative. (JA006).

This is error compounded on error. The district court's original subject matter jurisdiction over the Appellants' claims rests on 28 U.S.C. § 1331. Any argument about the ability of federal district courts other than the Central District of California to enforce the *Flores* Settlement—which no other federal court has adopted, so far as Appellants are aware, and which would be erroneous— would be an argument about judgments and remedies law. The government has made no such argument. Therefore, the question can play no role in this case.

This Court should make clear that all district courts in this Circuit can join other district courts around the country that have entertained individual enforcement actions pursuant to paragraph 24(B) of the *Flores* Settlement.

### B. The District Court Had Subject Matter Jurisdiction To Adjudicate Appellants' Claims that Their Forced Return To Mexico Would Violate Their Statutory and Constitutional Right To Be Represented by Counsel

The Immigration and Nationality Act, as codified at 8 U.S.C. § 1362, provides a statutory right to counsel in immigration proceedings:

> In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

There is also a related constitutional right. "The constitutional right to counsel is based upon the Fifth Amendment's guarantee of due process of law." *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 374 (3d Cir. 2003) (affirming the guarantee of Fifth Amendment rights in immigration proceedings).

Appellants initiated an attorney-client relationship with their attorney soon after their arrival at Berks. (JA086, ¶ 18; JA226, ¶ 3). The government's attempt to send Appellants to Mexico during the pendency of their removal proceedings violates their statutory and constitutional right to counsel, as return-to-Mexico would put this relationship in peril. Sending Appellants to Mexico would

impose a substantial and needless burden on the attorney-client relationship—and, more likely, would terminate the relationship altogether.  (JA227, ¶¶ 6–7).

The district court, however, held that it could not hear Appellants' claim.  In the district court's view, 8 U.S.C. §§ 1252(a)(5) and (b)(9) divested it of subject matter jurisdiction over this claim:

> The Court does not have jurisdiction to hear this claim, however.  The INA makes clear that a "petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."  8 U.S.C. § 1252(a)(5).  The statute also provides:  "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order[.]"  8 U.S.C. § 1252(b)(9)."

(JA011).  The district court interpreted these two provisions to mean that "any issue" that arises from removal proceedings must be reserved for a petition for review before a circuit court."  (JA011–012).  The district court extended this framework to subsume Appellants' interference-with-counsel claims.

This is error.  As a threshold matter, subparagraphs 1252(a)(5) and (b)(9) channel jurisdiction over claims arising from removal proceedings into the petition-for-review process on review of a final order of removal.  No final order exists here, because Appellants are seeking review of the Immigration Judge's order before the BIA.  Moreover, Appellants raise violations of constitutional and

statutory rights arising *not* from their removal proceedings, but instead from an independent harm imposed on their established legal representation. In concluding that Appellants must wait to bring their interference-with-counsel claims as part of the petition-for-review process, the district court improperly expanded the reach of subparagraphs 1252(a)(5) and (b)(9).

1. Subparagraphs 1252(a)(5) and (b)(9) Apply to the Review of a Final Order of Removal and Questions Arising from Removal Proceedings

The district court's reliance on subparagraphs 1252(a)(5) and (b)(9) to oust jurisdiction over Appellants' claims is erroneous because Appellants do not challenge a final order of removal, or any aspect of their removal proceedings that should be consolidated into review of such a final order.

The language of subparagraph 1252(a)(5) states that a "petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." This Court has affirmed that this provision means what it says: it "pertain[s] only to 'judicial review *of an order of removal.*'" *Chehazeh v. Attorney General*, 666 F.3d 118, 132 (3d Cir. 2012) (emphasis in original) (quoting *Kumarasamy v. Attorney General*, 453 F.3d 169, 172 (3d Cir. 2006)).

In turn, paragraph 1252(b), titled "Requirements for Review of Order of Removal," clarifies when removal claims should be channeled into the petition-

for-review process. *See Fla. Dep't of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (noting that while statutory titles are not dispositive, they are "tools available for the resolution of a doubt about the meaning of statute"). At issue here, subparagraph 1252(b)(9) provides that "review of all questions of law and fact . . . *arising from* any action taken or proceeding brought to *remove* an alien from the United States . . . shall be available only in judicial review of a final order." (emphasis added). This Court's jurisprudence confirms that this provision applies to review of final orders of removal and review of any issues related to such orders. *Chehazeh*, 666 F.3d at 131–32.

In short, Appellants do not seek review of a final order of removal, or any legal or factual question arising from their removal proceedings. Appellants challenge the government's attempt to physically locate them in Mexico while their removal proceedings remain ongoing. Therefore, neither subparagraph 1252(a)(5) nor 1252(b)(9) summarily ousts the court's jurisdiction over Appellants' constitutional and statutory interference-with-counsel claims.

2.      Appellants' Constitutional and Statutory Claims Based on Interference with an Existing Attorney-Client Relationship Cannot Be Channeled into the Petition-for-Review Process

There is no final order of removal against Appellants. Therefore, Appellants' claims of interference with an existing attorney-client relationship may be reserved for consolidation into the petition-for-review process only if the claims

are sufficiently intertwined with Appellants' removal proceedings. Indeed, the jurisdiction-channeling provision on which the district court relied funnels only those factual and legal questions "arising from" actions taken or proceedings brought to remove an immigrant pursuant to a final order. *See* 8 U.S.C. § 1252(b)(9). Therefore, claims that are independent of or collateral to the removal process are excluded from this provision's reach. *See Chehazeh*, 666 F.3d at 131.

Before the district court, Appellants argued that, because they have obtained counsel to represent them in their removal proceedings, the Due Process Clause and 8 U.S.C. § 1362 confer them the right not to have their attorney-client relationship unduly burdened or terminated. (JA071–073). Their claims are collateral to their removal proceedings, because Appellants raise independent violations of constitutional and statutory rights arising from harm imposed on their legal representation—not the prospective effect that such harm will have on the outcome of their removal proceedings.

This reasoning accords with the recent decision in *Arroyo v. United States Department of Homeland Security*, No. SACV 19-815, 2019 U.S. Dist. LEXIS 111869 (C.D. Cal. June 20, 2019). In *Arroyo*, a group of individuals detained in the Los Angeles area, represented by counsel in that region, sought a preliminary injunction in the Central District of California to enjoin their transfer

to detention facilities outside of the Los Angeles area. *See id.* at \*10–11. The detainees contended that their transfer would interfere with their rights to counsel under the Due Process Clause and the INA. *See id.* at \*11. The court held it had subject matter jurisdiction to hear these claims, notwithstanding subparagraphs 1252(a)(5) and (b)(9), because the constitutional and statutory claims were not "inextricably tied to their removal proceedings." *See id.* at \*38; *see also id.* at \*39 ("[A]n established attorney-client relationship carries with it certain rights separate from and additional to their rights in removal proceedings."). Instead, because the right-to-counsel claims involved a "harm which accrues at the moment of geographic separation," the court determined that the alleged injury to established counsel relationship is independent of and collateral to removal proceedings, such that the claims were beyond the jurisdiction-channeling provisions' reach. *See id.* at \*39.

Appellants acknowledge contrary authority holding that claims of harm to an existing attorney-client relationship arise from removal proceedings for jurisdiction-channeling purposes. *See Alvarez v. Sessions*, 338 F. Supp. 3d 1042 (N.D. Cal 2018). The district court relied on *Alvarez* below. (JA012–013). Appellants respectfully submit, however, that *Alvarez* was incorrectly decided, and that the district court's reliance thereon is misguided.

*Alvarez* stemmed from the flawed notion that constitutional and statutory interference-with-counsel claims are "bound up in and an inextricable part of the administrative process." *Alvarez*, 338 F. Supp. 3d at 1049. By this rationale, subparagraphs 1252(a)(5) and (b)(9) constitute a "but for" test—*i.e.*, if the claims would not exist but for the removal proceedings, the district court's jurisdiction is ousted. This is interpretative error. Congress very well could have drafted these subparagraphs to apply generally to all issues relating to proceedings brought to remove a non-citizen from the United States, but it did not. Instead, subparagraphs 1252(a)(5) and (b)(9) only reach review of final orders of removal and claims that "arise from" removal proceedings, and preclude district court jurisdiction only over claims that are a direct attack on an order of removal, or that arise directly from a decision to remove a non-citizen.

In reading subparagraph 1252(b)(9) broadly to oust jurisdiction, the district court also relied on *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). (JA011–012). In *J.E.F.M.*, the Ninth Circuit characterized subparagraph 1252(b)(9) as "breathtaking" in scope and "vise-like in grip," which "swallows up virtually all claims that are tied to removal proceedings." *J.E.F.M.*, 837 F.3d at 1031. However, *J.E.F.M.* predated Justice Alito's plurality opinion in *Jennings*, which reined in "expansive" judicial interpretations of subparagraph 1252(b)(9).

*Jennings*, 138 S. Ct. at 840.  In light of *Jennings*, a Southern District of California

court called into question the continued validity of *J.E.F.M.*:

> This precedent may treat Section 1252(b)(9) too broadly
> in light of the *Jennings* plurality's rejection of an
> "expansive" interpretation of "arising from" that would
> sweep a claim into Section 1252(b)(9) simply because an
> alien is in removal proceedings or a removal action was
> taken.

*Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107, 1114 (S.D. Cal. 2018)

(finding jurisdiction to adjudicate claims that non-citizens were not promptly

brought to a judge for a hearing on whether to continue their detention).

Although the district court acknowledged Justice Alito's cautionary

language, it found this language inapplicable to Appellants' claims because at issue

in *Jennings* was "a question of prolonged detention."  (JA012).  The district court

concluded that, whereas questions of detention were "related to, but did not arise

directly from, the removal proceedings," Appellants' interference-with-counsel

claims "relate specifically to the underlying removal proceeding." (*Id.*).  The

"relates to" versus "relates specifically to" standard presents a distinction without a

difference.  Subparagraph 1252(b)(9)'s applicability turns on whether Appellants'

claims arise from the actions taken to remove them.  *Jennings*, 138 S. Ct. at 840.

The answer here is no:  Appellants' claims arise from the government's

determination to impinge upon their attorney-client relationship.

The practical effect of the district court's reading of subparagraphs 1252(a)(5) and (b)(9) is that any claim that relates to the disruption of Appellants' relationship with their lawyer must wait until a final order of removal issues. Only then may they raise for the first time, on direct review before this Court, their claims that their forced return to Mexico destroyed their existing attorney-client relationship in violation of the Constitution and statute. The scope of the petition-for-review process itself shows the error of this outcome.

Judicial review of a final order of removal is limited to the record created during the underlying administrative proceedings. *See* 8 U.S.C. § 1252(b)(4)(A). During removal proceedings, judges of the immigration courts and the BIA are concerned only with the merits of a non-citizen's claim for relief from removal. Because no record can be developed during removal proceedings to document the independent legal harm imposed on an established attorney-client relationship, the district court's decision effectively leaves Appellants without a tribunal positioned to evaluate the merits of their right-to-counsel claims. *See Jennings*, 138 S. Ct. at 840 (cautioning against interpretations of subparagraph 1252(b)(9) that would make a claim "effectively unreviewable"); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496–97 (1991) (holding that jurisdiction-channeling statutes cannot be interpreted to "foreclose all forms of meaningful judicial review," and cautioning against statutory interpretation that results in "the

practical equivalent of a total denial of judicial review of generic constitutional and statutory claims").

For the foregoing reasons, the jurisdiction-channeling directives at 8 U.S.C. §§ 1252(a)(5) and (b)(9) are simply inapplicable and cannot serve to statutorily bar Appellants' right-to-counsel claims from proceeding before the district court at this time.

### C. The District Court Had Subject Matter Jurisdiction Over Appellants' Claims that Government Has No Statutory Authority To Return Them Forcibly to Mexico

The government relies on the so-called "contiguous territory" provision, codified at 8 U.S.C. § 1225(b)(2)(C), to subject Appellants to the MPP and to return them to Mexico. This provision, however, does not apply to Appellants. The district court had subject matter jurisdiction to adjudicate Appellants' claims under 28 U.S.C. § 1331. The jurisdiction of the court was not ousted by subparagraph 1252(b)(9) because Appellants' claims do not arise from "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Rather, Appellants' claims are based on the decision by ICE to return them forcibly to Mexico, a custody decision that was without statutory authorization.

On April 23, 2019, when they crossed the border, Appellants were "arriving aliens" without valid entry documents, rendering them inadmissible under INA § 212(a)(7)(A)(i), which provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—
>
>> (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title, or
>>
>> (II) whose visa has been issued without compliance with the provisions of section 1153 of this title,
>
> is inadmissible.

As a consequence of their having no entry documents, the expedited removal procedure of 8 U.S.C. § 1225(b)(1)(A)(i) applied to Appellants. Although subparagraph (b)(1)(A)(i) states that "the officer shall order the alien removed," ICE had discretion to place Appellants in standard removal proceedings. *See Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520 (BIA 2011) (holding that DHS has discretion to place any aliens in standard removal).

ICE exercised its discretion to place Appellants in standard removal proceedings by classifying them not as "arriving aliens," but rather as "other aliens" under 8 U.S.C. § 1225(b)(2)(A), which provides:

> (2) Inspection of Other Aliens
>
>> (A) In general
>>
>> Subject to subparagraphs (B) and (C), in the case
>> of an alien who is an applicant for admission, if the
>> examining immigration officer determines that an
>> alien seeking admission is not clearly and beyond a
>> doubt entitled to be admitted, the alien shall be
>> detained for a proceeding under [8 U.S.C.
>> § 1229(a)].

The reason the government did not place Appellants in expedited removal is evident on the Notices to Appear, which are stamped "MPP." (JA088–090, 094–096) (requiring Appellants to appear in San Diego before an immigration judge on June 25, 2019). From April 25, 2019, when it issued the Notices to Appear, the government intended to subject Appellants to the MPP announced by Secretary Nielsen on December 20, 2018. (JA075–076).

The issue here is not the exercise of discretion to place Appellants in standard removal proceedings—Appellants do not challenge the authority of ICE to put them into standard removal. Instead, the issue is the government's application of the MPP to Appellants, because the statute does not authorize applying the MPP to individuals who enter the United States as arriving aliens under subparagraph 1225(b)(1).

The government claims as authority for its MPP policy the "contiguous territory" provision, (JA262–263), which provides:

> In the case of an alien *described in subparagraph (A)* who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(C) (emphasis added). The opening words of the contiguous territory provision plainly limit its application to those who fall into subparagraph A. Under the statutory framework, however, non-citizens who enter the United States as "arriving aliens" without valid entry documents under subparagraph 1225(b)(1) do not fall into subparagraph A. *See* 8 U.S.C. § 1225(b)(2)(B) (stating that subparagraph A "shall not apply to an alien . . . to whom subparagraph (1) [of paragraph 1225(b)] applies").

In other words, the contiguous territory provision—the source of authority for the MPP—does not allow for the return to Mexico of an alien to whom subparagraph 1225(b)(1) applies, such as Appellants. The provision is applicable only to "other aliens" under subparagraph 1225(b)(2). Therefore, there is no statutory provision that authorizes the "return" to Mexico of an arriving alien to whom subparagraph 1225(b)(1) applies, and the government has no authority to subject Appellants to the MPP. *See Innovation Law Lab v. McAleenan*, 924 F.3d 503, 513 (9th Cir. 2019) (Fletcher, J., concurring).[4]

---

[4] Appellants acknowledge that the per curiam opinion in *Innovation Law Lab* interpreted the statute to allow the contiguous territory provision to arriving

The district court held that it could not hear this claim on the merits.

Instead, the district court concluded that subparagraph 1252(b)(9) took away any

such jurisdiction.  Subparagraph (b)(9) provides, in relevant part:

> Judicial review of all questions of law and fact, including
> interpretation and application of constitutional and
> statutory provisions, arising from any action taken or
> proceeding brought to remove an alien from the United
> States under this subchapter shall be available only in
> judicial review of a final order under this section.

The district court determined that, to the extent Appellants challenged the

government's decision to classify them as subject to standard removal proceedings

(and therefore the contiguous territory provision), subparagraph 1252(b)(9)'s

"arising from" language precluded it from hearing Appellants' claims on the basis

that "the classification decision is an action taken . . . to remove an alien."

(JA013–014).[5]

---

aliens to whom subparagraph (b)(1) applies, but respectfully suggest that Judge
Fletcher's analysis is the correct one.  In *Innovation Law Lab*, "Eleven Central
American asylum applicants who were returned to Tijuana, Mexico, and six
organizations that provide asylum-related legal services challenged the MPP on
several grounds in the district court.  After concluding that the MPP lacks a
statutory basis and violates the Administrative Procedure Act (APA), the district
court enjoined DHS on a nationwide basis 'from continuing to implement or
expand the [MPP].'"  924 F. 3d at 506.  The appeal is scheduled for hearing on the
merits on  October 1, 2019.

[5] So far as Appellants can determine, the government did not argue that 8
U.S.C. § 1252(b)(9) ousted jurisdiction in *Innovation Law Lab*, 924 F.3d 503.

The lower court erred in applying subparagraph 1252(b)(9) to oust jurisdiction here. First, Appellants are not challenging what the lower court called "the classification decision," being the decision to place Appellants in standard removal proceedings. Rather, they assert that ICE did not have statutory authority to return them forcibly to Mexico because of their status as arriving aliens under subparagraph 1225(b)(1). Second, the application of the MPP to Appellants was not "an action taken" to remove Appellants. Rather, the decision to apply the contiguous territory provision was a custody determination executed during the pendency of their removal proceedings. Appellants argue that this custody determination was taken without any basis in law. Therefore, neither subparagraph 1252(b)(9), nor any other provision within 8 U.S.C. § 1252, applies to Appellants' challenge to the government's efforts to return them to Mexico.

### D. The District Court Had Subject Matter Jurisdiction To Adjudicate Appellants' Claims that Their Forced Return to Mexico Would Be Inconsistent with the Government's Non-Refoulement Obligations

#### 1. The District Court Had Subject-Matter Jurisdiction Over Appellants' Non-Refoulement Claims

The district court had subject matter jurisdiction over Appellants' claim that ICE could not return them to Mexico because doing so would be inconsistent with the government's non-refoulement obligations.

The principle of non-refoulement was first articulated in Article 33 of the 1951 Convention Relating to the Status of Refugees ("Refugee Convention") as follows:

> No Contracting State shall expel or return (refouler) a refugee in any manner whatsoever to the frontiers of territories where his [or her] life or freedom would be threatened on account of his [or her] race, religion, nationality, membership of a particular social group or political opinion.

When announcing the MPP, the government agreed to respect its non-refoulement obligations,[6] which are found in Article 33 of the Refugee Convention,[7] and also Article 3 of the Convention Against Torture ("CAT") and the domestic statutes that implement these two treaties.

As part of the Refugee Act of 1980, Congress enacted the withholding of removal statute, codified at 8 U.S.C. § 1231(b)(3), to "implement the principles agreed to" in the Refugee Convention, with the specific intent to ensure that the United States does not "expel or return" noncitizens to any place where they face likelihood of persecution. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999).

---

[6] *See* JA051–052 (citing Press Release, *Secretary Kirstjen M. Nielsen Announces Historic Action to Confront Illegal Immigration*, DHS (Dec. 20, 2018)).

[7] Although not a party to the 1951 Refugee Convention, the United States adopted the 1967 Protocol Relating to the Status of Refugees, which incorporates the Refugee Convention's non-refoulement prohibition. *See* 1967 Protocol Relating to the Status of Refugees, art. 1(1) & 7(1) (stating that signatories "undertake to apply articles 2 to 34 inclusive of the [Refugee] Convention" without reservation).

And as part of the Foreign Affairs Reform and Restructuring Act of 1999

("FARRA"), Congress implemented Article 3 of CAT in the INA, making explicit

the prohibition against refoulement:

> It shall be the policy of the United States not to expel,
> extradite, or otherwise effect the involuntary return of
> any person to a country in which there are substantial
> grounds for believing the person would be in danger of
> being subjected to torture . . . .

FARRA § 2242(a), Pub. L. No. 105-207, Div. G. Title XXI, 112 Stat. 2681

(codified at 8 U.S.C. § 1231 note).  Therefore, as adopted and statutorily codified,

the non-refoulement guarantees in both the Refugee Convention and CAT provide

procedural safeguards that prohibit removal or return of non-citizens to countries

where their life or liberty may be threatened.  *See generally I.N.S. v. Stevic*, 467

U.S. 408, 426 (1984) (recognizing non-citizens' statutory "entitlement" to

withholding under § 1231(b)(3)); *Khouzam v. Attorney General*, 549 F.3d 235,

256–57 (3d Cir. 2008) ("[T]he basic dictates of due process must be met . . . where,

as here, mandatory statutory relief [is] at issue.").

Before the district court, Appellants argued that the MPP, as

implemented, fails to provide for these procedural safeguards, thus violating the

United States' non-refoulement obligations under the treaties.  (JA045, 373–374).

Because breaches of the government's non-refoulement obligations present federal

questions "arising under the Constitution, laws, or treaties of the United States,"

the district court had original subject matter jurisdiction to hear Appellants' claims.

*See* 28 U.S.C. § 1331.

>    2.    The District Court Erred in Applying the Jurisdiction-Stripping
>          Provision at § 1252(a)(4) to Appellants' Non-Refoulement
>          Claims

The district court held that it lacked subject matter jurisdiction over

Appellants' non-refoulement claims.  In so concluding, the court relied on 8 U.S.C.

§ 1252(a)(4), which provides:

> Notwithstanding any other provision of law (statutory or
> nonstatutory), . . . a petition for review filed with an
> appropriate court of appeals in accordance with this
> section shall be the sole and exclusive means for judicial
> review of any cause or claim under the United Nations
> Convention Against Torture and Other Forms of Cruel,
> Inhuman, or Degrading Treatment or Punishment[.]

The district court erred in invoking subparagraph 1252(a)(4) as a

blanket jurisdictional bar here.  In fact, this subparagraph appears in the statutory

section titled "Judicial review of orders of removal."  *See* 8 U.S.C. § 1252.  This

language, together with the language of subparagraph 1252(a)(4), evidences an

intent to channel review of causes and claims under CAT, as it relates to removal

decisions, into the petition-for-review process upon a final order.  *See Piccadilly*

*Cafeterias*, 554 U.S. at 47 (noting that while statutory titles are not dispositive,

they are "tools available for the resolution of a doubt about the meaning of

statute").  Here, Appellants do not challenge removal from the United States as a

result of a final order.  Instead, Appellants allege that their forced placement in Mexico during their ongoing removal proceedings violates the Refugee Convention and CAT, and the domestic statutes that uphold these treaties' non-refoulement obligations.  Therefore, subparagraph 1252(a)(4) has no bearing on Appellants' non-refoulement claims.

The district court further erred in concluding that subparagraph 1252(a)(4) barred it from hearing Appellants' non-refoulement claims "to the extent they arise under CAT."  (JA016–017).  Even if subparagraph 1252(a)(4) did apply at this stage, which it does not, its jurisdiction-ousting mechanisms would not reach causes and claims that do not arise under CAT.  Indeed, the violations Appellants alleged before the district court are rooted not only in CAT, but also the Refugee Convention, as well as the domestic statutes that uphold the non-refoulement obligations in both treaties.  (JA045, 373–374).  Insofar as subparagraph 1252(a)(4) relates only to judicial review of CAT claims, this provision cannot serve as a wholesale jurisdictional bar over Appellants' non-refoulement claims.

## **CONCLUSION**

For the foregoing reasons, Appellants request that this Court reverse the district court's preliminary injunction decision, and remand with instructions to hear Appellants' claims related to *Flores* and the government's Migrant Protection Protocols.

Respectfully submitted,

*/s/ Anthony Vale* _____
Anthony Vale
Michael S. DePrince
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Telephone:  (215) 981-4000
Fax:  (215) 981-4750
Email:  valea@pepperlaw.com

Tobias Barrington Wolff
3501 Sansom Street
Philadelphia, Pennsylvania 19104
Telephone:  (215) 898-7471
Email:  twolff@law.upenn.edu

Bridget Cambria
Cambria & Kline, P.C.
532 Walnut Street
Reading, PA 19601
Telephone:  (484) 926-2014
Fax:  (484) 926-2032
Email:  bridget.cambria@cambriaklinelaw.com

Amy Maldonado (IL Bar. No. 6256961)
Law Office of Amy Maldonado
333 Albert Avenue, Suite 610
East Lansing, MI 48823
Telephone:  (517) 803-2870
Fax:  (888) 299-3780
Email: amy@amaldonadolaw.com

Dated:  September 16, 2019        *Attorneys for Appellants*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Anthony Vale, pursuant to Local Appellate Rule 46.1(e), hereby

certify that I am counsel of record and am a member of the bar of the United States

Court of Appeals for the Third Circuit.


*/s/ Anthony Vale*
Anthony Vale

Dated: September 16, 2019        *Attorney for Appellants*

# CERTIFICATE OF WORD COUNT

I, Anthony Vale, hereby certify that this motion complies with the word count limitation established by Fed. R. App. P. 27(d)(2)(A) because this motion contains 9,112 words, according to the word count feature of Microsoft Word 2010.  This count excludes the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Anthony Vale*
Anthony Vale

Dated:  September 16, 2019          *Attorney for Appellants*

## <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

I, Anthony Vale, hereby certify that the electronic brief that the text of the electronically brief is identical to the text of the original copies that will be dispatched by hand delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit.

*/s/ Anthony Vale*
Anthony Vale

Dated: September 16, 2019     *Attorneys for Appellants*

## CERTIFICATE OF PERFORMANCE OF VIRUS CHECK

I, Anthony Vale, hereby certify that on September 16, 2019, I caused

a virus check to be performed on the electronically filed copy of this brief using the

following virus software:  Symantec Endpoint, v.14.  No virus was detected.


*/s/ Anthony Vale*
Anthony Vale

Dated:  September 16, 2019        *Attorney for Appellants*

# CERTIFICATE OF SERVICE

I, Anthony Vale, hereby certify that on September 16, 2019, a true and
correct copy of the foregoing Appellants' Opening Brief was served electronically
upon the below-listed parties via the Court's CM/ECF system:

Veronica Finkelstein, Esquire
Paul Koob, Esquire
Anthony St. Joseph, Esquire
United States Attorney's Office
Department of Justice
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

/s/ Anthony Vale
Anthony Vale

Dated:  September 16, 2019          *Attorney for Appellants*

# TABLE OF APPENDIX

Page(s)

*Joint Appendix Volume I*

Memorandum Opinion Denying Plaintiffs' Motion for Preliminary Injunction
(Aug. 19, 2019) [Dkt. No. 20] .......................................................**JA001–018**

Order Denying Plaintiffs' Motion for Preliminary Injunction
(Aug. 19, 2019) [Dkt. No. 21] .......................................................**JA019–020**

Order Closing Docket for Case No. 5:19-cv-03204 (E.D. Pa.)
(Aug. 21, 2019) [Dkt No 27] .........................................................**JA021–022**

Notice of Appeal [3d Cir. Case No. 19-2927] ........................................**JA023–024**


*Joint Appendix Volume II*

Civil Docket Sheet for Case No. 5:19-cv-03204 (E.D. Pa.) .....................**JA025–030**

Emergency Petition for a Writ of Mandamus (July 23, 2019)
[Dkt. No. 1] .....................................................................................**JA031–052**

Memorandum of Law in Support of Plaintiffs' Motion for
Preliminary Injunction (Aug. 5, 2019) [Dkt. No. 14].....................**JA053–083**

    Exhibit 1.  Declaration of Emerson Obed Hernandez Culajay.......**JA084–087**

    Exhibit 2.  Notice to Appear, Charges of Inadmissibility,
and IJ Order, Emerson Obed Hernandez Culajay ...............**JA088–093**

    Exhibit 3.  Notice to Appear, Charges of Inadmissibility,
and IJ Order, M.S.H.S. .......................................................**JA094–099**

    Exhibit 4.  U.S. State Department, Mexico 2017 Human Rights
Report ................................................................................**JA100–137**

    Exhibit 5.  Letter to Former DHS Secretary Kirstjen Nielsen .......**JA138–167**

    Exhibit 6.  Respondents' Motion for Emergency Stay of
Removal and BIA Order ......................................................**JA168–174**

Exhibit 7.  Flores Settlement Agreement ......................................**JA175–225**

Exhibit 8.  Declaration of Bridget Cambria in Support of
       Plaintiffs' Motion for Preliminary Injunction .....................**JA226–228**

Exhibit 9.  MPP Guiding Principles .............................................**JA229–230**

Exhibit 10.  U.S. Immigration and Customs Enforcement
       Transfers Policy No. 11022.1...............................................**JA231–244**

Defendants' Brief in Opposition to Plaintiffs' Motions for Preliminary Injunctive
    Relief & Writ of Mandamus (Aug. 14, 2019)
    [Dkt. No. 18]....................................................................**JA245–278**

Exhibit 1.  Migrant Protection Protocols Assessment
       Worksheet........................................................................**JA279–291**

Preliminary Injunction Hearing Transcript (Aug. 16, 2019) ...................**JA292–418**

| | | |
|---|---|---|
| **EMERSON OBED HERNANDEZ CULAJAY, and M.S.H.S., a minor child,** | : : : | **Case No. 5:19-cv-03204-JDW** |
| *Plaintiffs,* | : : : | |
| **v.** | : : : | |
| **KEVIN K. MCALEENAN, Acting Secretary, United States Department of Homeland Security, et al.** | : : : : | |
| *Defendants.* | : : | |

## <u>OPINION</u>

A Guatemalan father and his six-year old daughter ask this Court for a preliminary injunction to prevent the Government from transferring them from a detention facility in Berks County, Pennsylvania, to Mexico pursuant to the Government's Migrant Protection Protocols ("MPP"), a policy in which the Government sends aliens who have crossed the United States-Mexico border back to Mexico during the pendency of their removal proceedings. Against this politically fraught backdrop, the Court must navigate several statutory provisions in which Congress has stripped district courts of subject matter jurisdiction to hear immigration-related claims. The Court must conduct this inquiry regardless of the parties' arguments, as part of its independent duty to ensure its subject matter jurisdiction. After conducting that inquiry, the Court concludes that it lacks subject matter jurisdiction to hear any of the claims on which Plaintiffs base their preliminary injunction motion. Accordingly, the Court will deny the motion and dismiss the claims over which it has determined it lacks subject matter jurisdiction.

## I. FACTUAL BACKGROUND

### A. MPP

In December 2018, the Department of Homeland Security ("DHS") announced MPP, which provides that certain aliens entering or seeking admission to the United States, who enter the United States by crossing through Mexico, may be returned to Mexico to await their immigration proceedings. Under MPP, the DHS issues to inadmissible aliens who cross into the United States from Mexico a Notice to Appear at a removal proceeding and then transfers them to Mexico to await their proceedings. (ECF No. 14-9.) The Government exempts a number of categories of aliens from MPP, including unaccompanied children, Mexican citizens, aliens processed for "expedited removal," and aliens who are more likely than not to face persecution or torture in Mexico. The Government requires aliens who are subject to removal to "affirmatively state[]" that they have a fear of torture or persecution in Mexico; it does not notify them of the fact that such a fear might stay their transfer. (*Id.* at 1-2.)

Aliens sent to Mexico under MPP are transferred to the custody of Mexican authorities at a point of entry. They then must return to that point of entry for their hearing, and DHS transports them to the hearing location. DHS's policy is to give aliens one hour prior to their removal proceedings to meet with counsel and prepare for those hearings. If an alien receives a final order of removal from an immigration judge, he or she is then processed in accordance with DHS's regulations.

### B. Plaintiffs' Removal Proceedings And Placement In MPP

Plaintiffs are a 31-year-old Guatemalan citizen and his six-year-old daughter. (ECF No. 14-1 ¶ 2.) Plaintiffs entered the United States without inspection on April 23, 2019 and turned themselves in to Customs and Border Protection ("CBP") Officers. (*Id.* ¶ 3.) On April 28, 2019,

2

each Plaintiff received a Notice to Appear, which required each of them to appear on June 25, 2019, in San Diego before an immigration judge. (ECF Nos. 14-2, 14-3.) The Notices to Appear indicate that the government placed Plaintiffs in "standard removal proceedings" under INA Section 240, 8 U.S.C. Section 1229. (*Id.*) Plaintiffs' Notices to Appear were stamped "MPP."

On April 29, 2019, CBP Officers took Plaintiffs to the San Ysidro border and turned them over to Mexican immigration authorities in Tijuana. (ECF No. 14-1 ¶ 8.) While in Mexico, Plaintiffs claim that they were not safe because there were no shelters and they had nowhere to go. (*Id.* ¶¶ 9-11.) However, a woman in Mexico gave them shelter for the next two months. (*Id.* ¶ 11.) During that time, Plaintiffs did not have access to medical care, and M.S.H.S. had no opportunity to go to school. (*Id.*)

On June 25, 2019, Plaintiffs presented at the San Ysidro Port of Entry and were transported to a removal hearing in San Diego. (*Id.* ¶ 13.) Plaintiffs participated in that hearing *pro se* and told the immigration judge that they had no fear of returning to Guatemala. (*Id.* ¶ 14.) Plaintiffs claim that Mr. Hernandez Culajay made that statement based on coaching he received from a CBP Officer, in order to avoid going back to Mexico. Plaintiffs also waived their appellate rights during that hearing. The immigration judge ordered Plaintiffs' removal, and the government then transferred Plaintiffs to the Berks County Residential Center in Leesport, Pennsylvania. (*Id.* ¶ 17.)

Once there, Plaintiffs retained counsel. After retaining counsel, Plaintiffs appealed to the Board of Immigration Appeals ("BIA"), alleging that the abandonment of their asylum claims was made under duress and therefore not knowing, intelligent, or voluntary. (*Id.* ¶¶ 18-19.) Filing the appeal triggered an automatic stay of Plaintiffs' removal pursuant to 8 CFR § 1003.6(a). In addition, Plaintiffs filed a motion asking the for an emergency stay of removal. (ECF No. 5-1.)

On July 23, 2019, the BIA granted their request and stayed the removal of Plaintiffs from the United States pending the outcome of their appeal before the BIA.  (ECF No. 5.)

On August 9, 2019, a DHS asylum officer conducted an assessment of Plaintiffs' claims regarding their fear of return to Mexico as part of MPP.  The asylum officer concluded that Plaintiffs did not establish a clear probability of torture or persecution on account of a protected ground or of torture in Mexico.  (ECF No. 18-1.)

### C.    Procedural History Of This Action

The same day that the BIA issued its stay, Plaintiffs were sent from the Berks County facility to San Diego, so that they could be returned to Mexico to await the outcome of their appeal before the BIA. (ECF No. 14-1 ¶ 20.)  That same day, Plaintiffs' counsel filed an Emergency Petition for Writ of Mandamus. (ECF No. 1.)  The Petition includes six counts under the heading "Claims For Relief."  In Count I, M.S.H.S. seeks to enforce rights that she claims pursuant to a consent decree entered in *Flores v. Sessions*, CV-85-4544-RJK(Px) (C.D.Cal.) (the "*Flores* Settlement").  In Count II, Plaintiffs allege violations of substantive and procedural due process. In Count III, Plaintiffs assert that DHS violates the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* (the "APA"), because it improperly classifies them (and others like them) as eligible for MPP because they are not from Mexico and because sending them to Mexico would violate the United States' obligations under domestic and international law.  In Count IV, Plaintiffs contend that MPP is invalid under the APA because it should have been subject to notice and comment.  In Count V, Plaintiffs contend that the adoption of MPP violates the APA because it is arbitrary and capricious, at least in part because it requires individuals designated for return to Mexico under MPP affirmatively to voice a fear of persecution in Mexico affirmatively, rather than notifying them that if they have such a fear, they might not be returned to Mexico.

4

In their Petition, Plaintiffs asked the Court for a Temporary Restraining Order to maintain the status quo by prohibiting Plaintiffs' removal to Mexico. The Court held a hearing on July 24, 2019. During that hearing, the Government committed to keep the Plaintiffs in the United States pending briefing and resolution of a motion for a preliminary injunction.

Plaintiffs filed a Memorandum in support of a Motion for a preliminary injunction on August 5, 2019. (ECF No. 14.) (As a technical matter, Plaintiffs have never filed a formal motion for a preliminary injunction. However, their Petition asks for all relief that is just and proper. In any event, the Court will construe the on-the-record proceedings at both the hearing on the application for the temporary restraining order and the hearing on the request for a preliminary injunction as an oral motion in open court for a preliminary injunction pursuant to Fed. R. Civ. P. 7.) In their Memorandum, Plaintiffs "advance four claims in support of their motion for a preliminary injunction," which is that the government's threat to send Plaintiffs to Mexico during the pendency of their appeal to the BIA:

- violates M.S.H.S.'s rights as a class member under *Flores*;

- violates the stay order that the BIA entered on July 23, 2019;

- violates their due process rights by interfering with an existing attorney-client relationship; and

- violates their statutory and constitutional rights because the Government is not authorized to apply MPP to arriving aliens such as Plaintiffs.

(ECF No. 14 at 12.) The Government filed a Brief in Opposition to Plaintiffs' Motions for Preliminary Injunctive Relief and Writ of Mandamus on August 14, 2019. (ECF No. 18.) The Court held a hearing on Plaintiffs' request for a preliminary injunction on August 16, 2019.

5

## II.     LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.  *See Lane v. New Jersey*, 725 Fed. App'x 185, 187 (3d Cir. 2018). The movant bears the burden of showing that these four factors weigh in favor of granting the injunction.  *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).  Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances.  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

However, as a threshold matter, a plaintiff bears the burden of demonstrating this Court's subject-matter jurisdiction over his claims.  *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).  The plaintiff must show this by a preponderance of the evidence. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).  A district court, however, has the obligation to raise questions of subject matter jurisdiction *sua sponte*. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002). If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action pursuant to FRCP 12(h)(3), as subject-matter jurisdiction can never be waived or forfeited. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

## III.    ANALYSIS

### A.    Plaintiffs' Claims Concerning The *Flores* Settlement

In Count I of the Petition, Plaintiff M.S.H.S. seeks to enforce rights that she claims to have under the *Flores* Settlement.  The *Flores* Settlement establishes "the nationwide policy for the detention, release, and treatment of minors in the custody of INS[,]" including M.S.H.S.  (ECF

No. 14-7 ¶ 9.)  Plaintiffs ask this Court to enforce the *Flores* Settlement pursuant to Paragraph 24.B. of the settlement agreement, which provides, in relevant part:

> Any minor who disagrees with INS's determination to place that minor in a particular type of facility or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 [of the Flores Settlement], may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1.

(*Id.* ¶ 24.B.)  However, the Court concludes that it does not have subject matter jurisdiction to hear M.S.H.S.'s claims under the *Flores* Settlement.

Federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  They only possess power authorized by the Constitution or by statute.  *See Willy v. Coastal Corp.*, 503 U.S. 131, 136–137 (1992).  Moreover, to confer subject-matter jurisdiction in an action against the United States, "there must be statutory authority vesting a district court with subject matter jurisdiction."  *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 401–02 (3d Cir. 2012) (quoting *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir.2007)).  Here, Plaintiffs have not pointed the Court to any statutory authority to hear the claims under the *Flores* Settlement, and the Court has not found any such authority.

As a starting point, the Court concludes that the *Flores* Settlement cannot, on its own, confer subject-matter jurisdiction on the Court.  The *Flores* Settlement is a consent decree: a judicially-approved agreement between a private class and the executive branch of the United States.  *Pope v. United States*, 323 U.S. 1, 12 (1944); *United States v. Swift & Co.*, 286 U.S. 106, 115 (1932).  The parties to that case cannot create this Court's jurisdiction by stipulation.  *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (subject matter jurisdiction cannot be

"conferred by consent" of the parties). In addition, the district court that approved the *Flores* Settlement and entered it as a consent decree lacks the power to expand this Court's power because this Court's power, as authorized by the Constitution or by statute, may not be expanded by judicial decree. *See Kokkonen*, 511 U.S. at 377.

Indeed, the *Flores* Settlement itself recognizes this limitation. Paragraph 24.B., upon which Plaintiffs base their argument, provides for review in "any United States District Court with **jurisdiction** and venue over the matter." (ECF No. 14-7 ¶ 24.B. (emphasis added).) The parties to the *Flores* Settlement did not define the word "jurisdiction." However, the Court concludes that the context of the settlement as a whole demonstrates that the word "jurisdiction" must mean "subject matter jurisdiction." If it did not mean "subject matter jurisdiction," then it would mean "personal jurisdiction," and because the United States is subject to personal jurisdiction everywhere in the country, an interpretation that treated the word "jurisdiction" to mean "personal jurisdiction" would essentially render the term a nullity, something that the Court must avoid if an alternative interpretation is available. *See Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (6th Cir. 2004) ("[U]nder federal common law 'a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'") (quoting *Transitional Learning Community at Galveston, Inc. v. United States Office of Personnel Management*, 220 F.3d 427, 431 (5th Cir. 2001)).

Moreover, the *Flores* Settlement's use of the word "jurisdiction" must mean an independent, statutory basis for subject matter jurisdiction. If the term meant "jurisdiction" and the settlement agreement could vest a court with jurisdiction, then the term would lose all meaning because any court in which a case was brought would have jurisdiction by virtue of the case having been brought. That cannot be what the parties meant. Instead, the *Flores* Settlement must have

8

meant what the law requires independent of the settlement agreement: the Court must have an independent, statutory or constitutional, basis to assert subject matter jurisdiction over claims arising under the settlement agreement.

The Court does not have such jurisdiction here. At the preliminary injunction hearing, Plaintiffs asserted that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to hear claims about the *Flores* Settlement. Section 1331 grants this Court with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To invoke federal question jurisdiction, a plaintiff's right to sue must be founded directly upon a federal law. *Donofry v. Nazareth Hosp.*, 721 F. Supp. 732, 734 (E.D. Pa. 1989) (*citing Gully v. First National Bank*, 299 U.S. 109 (1936)).

The *Flores* Settlement is not a "law[] … of the United States." Congress did not enact it. The executive branch did not promulgate it pursuant to a statutory delegation from Congress. Instead, it is a judicial decree reflecting an agreement between the executive branch and private litigants. *See Boutwell v. Walker*, No. 2:13CV170-MHT, 2013 WL 1331670, at *5 (M.D. Ala. Apr. 2, 2013), report and recommendation adopted, WL 1774623 (M.D. Ala. Apr. 25, 2013) (plaintiff's allegation that defendants had violated the court's consent order was not "a cause of action founded on federal constitutional or statutory law"). Moreover, *Flores* does not determine federal law. Indeed, in *Flores*, there was no final determination of the claims. It is therefore possible that the commitments that the executive branch made in the *Flores* Settlement exceed the minimum conduct that the Constitution requires. That potential daylight poses the problem here. While the Court might have federal question jurisdiction to determine the constitutional grievances that were at issue in *Flores*, it has no such jurisdiction to enforce commitments above and beyond constitutional minimums. When M.S.H.S., or any other plaintiff, asks the Court to enforce the

9

*Flores* Settlement, however, she asks the Court to enforce commitments that emanate not from the Constitution but from a contract and court order. The Court has no authority to do so.

Moreover, as a general rule, courts do not have the authority to enforce other courts' injunctions. *See Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012). Indeed, the court that issued an injunctive order "alone possesses the power to enforce compliance with and punish contempt of that order." *Id.* (citing *In re Debs*, 158 U.S. 564, 595 (1895)). In *Alderwoods*, the Eleventh Circuit expressed concern that it "would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Id.* So too here. Leaving the enforcement of the Central District of California's consent decree to the interpretive whims of this Court and other courts around the country, particularly when Congress has not granted subject matter jurisdiction, would wreak havoc on the federal judicial system and give plaintiffs who want to enforce the *Flores* Settlement an opportunity to forum-shop.

In their brief and at the preliminary injunction hearing, Plaintiffs pointed the Court to the holding in *W.S.R. v. Sessions*, 318 F. Supp.3d 1116 (N.D.Ill. 2018). There, the court concluded that "subject-matter jurisdiction poses no obstacle to considering [a plaintiff's] claim under the Flores Agreement" because "no one questions the … subject matter jurisdiction … of the District Court overseeing the consent decree to decide claims under it," and "[s]ubject matter jurisdiction does not vary from federal District Court to District Court." *Id.* at 1128-29. This Court disagrees, for two reasons. First, the district court in *Flores* has jurisdiction to hear claims that arise under the *Flores* Settlement because it has the inherent power to enforce its own orders. No other court does. In that sense, jurisdiction does vary from district court to district court. Second, as noted above, Paragraph 24.B. of the *Flores* Settlement requires a district court to have "jurisdiction"

10

before it can consider a claim about the parties' rights under the *Flores* Settlement. That requirement demands more than the simple conclusion that district courts' subject matter jurisdiction is the same. Indeed, such a reading would give the word "jurisdiction" in Paragraph 24.B. no meaning at all.

### B.       Plaintiffs' Due Process Claims

Plaintiffs contend in Count II of their Petition that the Government's plan to send them to Mexico pursuant to MPP would interfere with their established relationship with counsel and would therefore violate their Fifth Amendment rights to due process. Plaintiffs' right to counsel is a creation of statute. In particular, 8 U.S.C. § 1362 provides that in

> any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented … by such counsel … as he shall choose.

Plaintiffs argue that, if they are sent to Mexico, their relationship with their current counsel might suffer a disruption, if not a total fracture.

The Court does not have jurisdiction to hear this claim, however. The INA makes clear that a "petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The statute also provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order[.]" 8 U.S.C. § 1252(b)(9). The Supreme Court has described this provision as an "unmistakable 'zipper' clause" that "channels judicial review of *all*" decisions and actions arising from removal proceedings. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999); *see also Guy v. Reno*, Civ. A. No. 99-3589, 1999 WL 718554, at * 4 (E.D.Pa. Sept. 2, 1999). That means "any issue—whether legal or factual—arising from any removal-related

11

activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Thus, the pertinent question before the Court is whether Plaintiffs' deprivation-of-counsel claim "arises from" any action or proceeding to remove them, thereby depriving this Court of jurisdiction.

Here, Plaintiffs' due process claims arise from their removal proceedings. The statutory right on which Plaintiffs rest their claims provide them with a right to counsel in removal proceedings. Moreover, at the preliminary injunction hearing, Plaintiffs explained that the harm that they will suffer will be harm to the fairness of their removal proceedings. Because the harm about which Plaintiffs complain is harm to the removal proceedings, their claims arise from their removal proceedings, and this Court lacks jurisdiction under Section 1252(b)(9).

The Court is mindful of Justice Alito's caution in *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018), that courts should avoid "uncritical literalism" in interpreting the phrase "arising from" in Section 1252(b)(9). In *Jennings*, however, the Supreme Court was considering a question of prolonged detention—a claim that was related to, but did not arise directly from, the removal proceedings. Moreover, the types of claims that Justice Alito used to illustrate claims that do not arise from a removal proceeding are all claims that would exist independently from a removal proceeding, such as a claim based on inhumane conditions of confinement, or a personal injury case that accrues from an accident involving a prison transport bus that carries aliens in custody.

Here, by contrast, the claims relate specifically to the underlying removal proceeding and therefore arise from that proceeding within the meaning of Section 1259(b)(9). In that regard, this Court agrees with the Northern District of California's opinion in *Alvarez v. Sessions* that the Court "need not employ an expansive interpretation of § 1252(b)(9)'s 'arising from' language to find that right-to-counsel claims, like those of Petitioners, fall squarely within the purview of the

provision." *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1049 (N.D. Cal. 2018). Indeed, the statutory right to counsel is specific to removal proceedings. *See* 8 U.S.C. § 1362.

###### C. Plaintiffs' Claims Concerning Their Eligibility For MPP

Plaintiffs claim in Count III of their Petition that because they were eligible for expedited removal proceedings, they should not have been eligible for MPP. The INA provides that if an immigration officer determines that an alien is inadmissible for entry into the United States, then the officer "shall order the alien removed from the United States without further hearing or review …." 8 U.S.C. § 1225(b)(1)(A)(i). Proceedings under this provision are called "expedited." The statute also provides that if an immigration officer determines that an alien is not "clearly and beyond a doubt entitled to be admitted, then the alien shall be detained for" a removal proceeding before an immigration judge. 8 U.S.C. § 1225(b)(2)(A). Proceedings under this provision are called "regular."

As the Ninth Circuit recently noted, there is overlap between the aliens who fall within these two statutory provisions. *See Innovation Law Lab v. McAleenan*, 924 F.3d 503, 508 (9th Cir. 2019). The classification matters because the statutory basis for MPP is 8 U.S.C. § 1225(b)(2)(C), which provides, "In the case of an alien described in subparagraph (A) who is arriving on land … from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending" a removal proceeding before an immigration judge. Thus, only an alien described in Section 1225(b)(2)(A) can be eligible for MPP. Plaintiffs say that they are not eligible because Section 1225(b)(2)(B) provides that anyone eligible for expedited consideration under Section 1225(b)(1) is not eligible for regular removal proceedings under Section 1225(b)(2)(A).

The Court does not have jurisdiction to hear this claim because Section 1252(b)(9) takes away any such jurisdiction. Section 1252(b)(9) applies to any claim "arising from any action taken

13

or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Notably, the use of the word "or" in the phrase "action taken or proceeding brought" means that there must be some difference between an "action taken" to remove an alien and a "proceeding brought" to remove an alien. *See Loughrin v. U.S.*, 573 U.S. 351, 357 (2014) (use of the word "or" in a statute is almost always disjunctive, meaning the words it connects "are to be given separate meanings"). The immigration officer's decision to place Plaintiffs in line for regular proceedings, rather than expedited proceedings, is not necessarily a "proceeding brought" within the meaning of the statute because the classification decision appears to precede the removal proceedings, rather than being part of those proceedings. However, the classification decision is an "action taken … to remove an alien." Indeed, the only reason for an immigration officer to make the decision is to determine what type of removal proceedings will ultimately apply to the alien in question. Because it is an "action taken," it is within the scope of Section 1252(b)(9), and this Court lacks jurisdiction to hear the claim. Plaintiffs' remedy is before the immigration court and then in a petition for review in a court of appeals.

In its brief, the Government argues that 8 U.S.C § 1252(g) strips this Court of jurisdiction to hear this claim. Section 1252(g) strips from this Court jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary] to commence proceedings ... against any alien under this chapter" 8 U.S.C. § 1252(g). However, during the hearing on the preliminary injunction, the Government conceded that the immigration officer's classification decision under Section 1225(b)(2)(A) likely preceded the commencement of removal proceedings, which is instead triggered by issuance of a "Notice To Appear." Ultimately, however, the Court need not resolve this question in light of its conclusion that Section 1252(b)(9) strips this Court of jurisdiction.

14

**D.      Plaintiffs' Claims Concerning Non-Refoulement Obligations**

Plaintiffs contend in Count V of the Petition, that, as applied to them, the MPP is arbitrary and capricious for two reasons: 1) rather than ask Plaintiffs whether they have a fear of persecution or torture in Mexico, the Government put the onus on Plaintiffs to raise such a fear on their own; and 2) the Government's process for assessing claims of fear of persecution or torture, including the standard to evaluate such claims, violates the Government's non-discretionary non-refoulement obligations under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  (ECF No. 14 at 21, 23.)  The Court lacks jurisdiction over the first prong of Plaintiffs' claim because that claim has been rendered moot, and the Court lacks jurisdiction over the second prong of Plaintiffs' claim by operation of a jurisdiction-stripping statute in the INA.  Thus, the Court is without power to assess either aspect of Plaintiffs' claim regarding non-refoulement.

"Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to resolving 'Cases' and 'Controversies.'"  *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017) (citation omitted).  "Mootness" is one of the several "justiciability doctrines that cluster about Article III[.]"  *Id.* at 334–35 (quotation omitted).  A case becomes moot when "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief."  *Id.* (same).  When a case is moot, there is no live controversy, and the case is not justiciable.

Plaintiffs contend that the Government's application of MPP was arbitrary and capricious as applied to them because the Government did not assume a "positive obligation" to ensure that Plaintiffs would be safe if returned to Mexico pending their removal proceedings.  (ECF No. 14 at 23.)  Rather than ask Plaintiffs if they feared persecution or torture in Mexico, the Government put

15

the burden on Plaintiffs to raise this fear without prompting. (*Id.*) As Plaintiffs' counsel acknowledged during the hearing on their Motion for a Preliminary Injunction, this aspect of their claim became moot once the DHS asylum officer conducted an assessment interview with Plaintiffs on August 9, 2019.

Likewise, the Court is without jurisdiction to consider Plaintiffs' claim that the Government's processes for evaluating their fears of persecution or torture in Mexico violate the Government's non-refoulement obligations imposed by CAT. (ECF No. 14 at 21.) As an initial matter, the Court disagrees with the Government's contention that § 1252(a)(2)(B)(ii) strips the Court of jurisdiction over this claim because the decision to send Plaintiffs to Mexico under MPP is discretionary. (ECF No. 18 at 10-11.) On the contrary, the CAT makes clear that "[n]o State Party **shall** expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." CAT, art. 3 (Dec. 10, 1984) (emphasis added). The use of the word "shall" indicates the mandatory nature of the Government's non-refoulement obligations. *See United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 246 (3d Cir. 2016) (characterizing statutory language using the word "shall" as "non-discretionary"). Thus, the Government's refoulement decision is not a discretionary one, and Section 1252(a)(2)(B)(ii) does not insulate it from review.

While that is the only statute that the Government invokes, it is not the only relevant jurisdiction-stripping provision in Section 1252. Section 1252(a)(4) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be **the sole and exclusive means for judicial review** of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment[.]

8 U.S.C. § 1252(a)(4) (emphasis added). As the plain language of this statute makes clear, this Court cannot hear Plaintiffs' claims to the extent they arise under the CAT. At argument, Plaintiffs

confirmed that, other than the notice claim referenced above, the CAT supplies the legal basis for all of their other non-refoulement claims. Section 1252(a)(4) deprives this Court of jurisdiction over those claims.

### E. Plaintiffs' Claims Concerning The Board's Stay Order

In Count VI of their Petition, Plaintiffs seek a writ of mandamus to enforce the BIA's order staying their removal. During the hearing on Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs' counsel acknowledged that the BIA's order is unclear as to its scope. Plaintiffs' counsel also agreed that Plaintiffs will withdraw their mandamus claims concerning the Board's stay order and seek clarification and/or enforcement before the Board. Because Plaintiffs have agreed on the record to withdraw this claim, it is moot, and the Court need not determine whether it has jurisdiction or whether Plaintiff have a likelihood of success on the merits.

## IV. CONCLUSION

The Court's holding today means that Plaintiffs cannot pursue their claims in this Court. However, they are not without a forum—or fora—in which to pursue relief. M.S.H.S. can return to the Central District of California to seek to enforce her rights under the *Flores* Settlement. Plaintiffs can present to the BIA and the Court of Appeals any claim that transfer to Mexico under MPP undermines their due process rights in their underlying removal proceedings. They can also present any claims that arise under the CAT to the Court of Appeals. In addition, they can return to the BIA in an attempt to clarify and enforce the BIA's stay order. However, Plaintiffs cannot pursue their claims here because Congress has not given this Court subject matter jurisdiction. Accordingly, the Court will deny Plaintiffs' Motion for a Preliminary Injunction.

The Court will also dismiss the claims over which it lacks subject matter jurisdiction. However, because there appear to be some claims asserted in the Petition that were not the subject

of the preliminary injunction motion, the Court will not dismiss the entire case. The Parties are directed to discuss whether Plaintiffs intend to proceed on any remaining claims and, if so, to advise the Court. An appropriate Order follows.

/s/ Joshua D. Wolson
Hon. Joshua D. Wolson
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **EMERSON OBED HERNANDEZ CULAJAY, and M.S.H.S., a minor child,** | : |
|  | : **Case No. 5:19-cv-03204-JDW** |
| *Plaintiffs*, | : |
|  | : |
| **v.** | : |
|  | : |
| **KEVIN K. MCALEENAN**, Acting Secretary, United States Department of Homeland Security, et al. | : |
|  | : |
| *Defendants*. | : |

**ORDER**

AND NOW, this 19th day of August, 2019, upon consideration of the Plaintiffs' Emergency Petition for a Writ of Mandamus (ECF No. 1), Plaintiffs' Memorandum of Law in Support Motion for Preliminary Injunction (ECF No. 14), and Defendants' Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction Relief & Writ of Mandamus (ECF No. 18), it is **ORDERED** as follows:

1.      For the reasons stated in the accompanying Opinion, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**;

2.      For the reasons stated in the accompanying Opinion, the Court lacks subject matter jurisdiction over Counts I, II, III, and V of the Petition, and those claims are therefore **DISMISSED**;

3.      Pursuant to Plaintiffs' statement on the record at the preliminary injunction hearing that the Court held on August 16, 2019, Count VI of Plaintiffs' Petition is **WITHDRAWN** without prejudice to Plaintiffs' claims to re-file those claims after appropriate proceedings before the Board of Immigration Appeals; and

4.      On or before **August 21, 2019**, Plaintiffs shall file redacted versions of Exhibits B

and C to their Petition.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EMERSON OBED HERNANDEZ CULAJAY**, and **M.S.H.S.**, a minor child, | : |
| *Plaintiffs*, | : Case No. 5:19-cv-03204-JDW |
| **v.** | : |
| **KEVIN K. MCALEENAN**, Acting Secretary, United States Department of Homeland Security, et al. | : |
| *Defendants*. | : |

## <u>ORDER</u>

AND NOW, this 21st day of August, 2019, upon consideration of Plaintiffs' Motion for a Stay of Order Pending Appeal (ECF No. 24), the Court finds as follows:

1.     There are four relevant criteria in considering whether to issue a stay of an order of a district court pending appeal:  (a) the likelihood of success on the merits; (b) irreparable injury to the moving party if the stay is denied; (c) substantial injury to the party opposing the stay if one is issued; and (d) whether granting the stay would be in the public interest (*see Hilton v. Braunskill*, 481 U.S. 770, 776 (1987));

2.     It is Plaintiffs' burden to demonstrate that they are entitled to a preliminary injunction (*see Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014));

3.     Plaintiffs have made no showing of anything but have instead filed a one-page Motion with no argument;

4.     Plaintiffs' Motion does not conform to Local Civil Rule 7.1(c), which requires "[e]very motion not certified as uncontested" to be "accompanied by a brief containing a concise statement of the legal contentions and the authorities relied upon in support of the motion;" and

5.      In any event, Plaintiffs have very little chance of prevailing on the merits, given the clear language of the statutes at issue that deprive this Court of subject matter jurisdiction over their dispute.

Therefore, in light of the foregoing, it is **ORDERED** that Plaintiffs' Motion for a Stay of Order Pending Appeal (ECF No. 24) is **DENIED**.

It is **FURTHER ORDERED** that, in light of Plaintiffs' Notice of Voluntary Dismissal as to Count IV of their Petition (ECF No. 25), and there being no other claims remaining in the case, the Clerk of Court shall mark this case **CLOSED**.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Emerson O. HERNANDEZ      )
CULAJAY, and M.S.H.S., a minor child,    )
                              )      Civ. No. 19-cv-3204
       Plaintiffs,          )
                              )
v.                               )      Hon. Joshua D. Wolson
                              )
KEVIN K. MCALEENAN, et al.      )
                              )
Defendants.                )

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE is hereby given that Plaintiffs Emerson Obed Hernandez Culajay, on behalf of himself and his six-year-old daughter, M.S.H.S., hereby appeals to the United States Court of Appeals for the Third Circuit from the Order dated August 19, 2019, entered on that date, (Dkt. Nos. 20, 21), which denied Plaintiff's request for a preliminary injunction on the basis of lack of subject matter jurisdiction and dismissed Counts I, II, III and V of the Emergency Petition for a Writ of Mandamus, which in conjunction with Plaintiffs voluntarily dismissal of Count IV, and Count VI being limited to a request for relief, concludes this case in its entirety.

Dated: August 20, 2019          By:     /s/Amy Maldonado
                                          *Amy Maldonado (IL Bar No. 6256961)
                                          Law Office of Amy Maldonado
                                          333 Albert Avenue, Suite 610
                                          East Lansing, MI 48823
                                          Phone: (517) 803-2870
                                          Fax: (888) 299-3780
                                          E-mail: amy@amaldonadolaw.com

                                          ATTORNEY FOR PLAINTIFFS

*Admitted pro hac vice

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Emerson O. HERNANDEZ | ) | |
| CULAJAY, and M.S.H.S., a minor child, | ) | |
| | ) | Civ. No. 19-cv-3204 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Hon. Joshua D. Wolson |
| | ) | |
| KEVIN K. MCALEENAN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I certify that August 20, 2019, I electronically filed the attached Plaintiffs' Notice of Appeal with the Clerk of Court by using the CM/ECF system, which will deliver a copy to all counsel of record.

Dated: August 20, 2019      By:    /s/Amy Maldonado
                                          *Amy Maldonado (IL Bar No. 6256961)
                                          Law Office of Amy Maldonado
                                          333 Albert Avenue, Suite 610
                                          East Lansing, MI 48823
                                          Phone: (517) 803-2870
                                          Fax: (888) 299-3780
                                          E-mail: amy@amaldonadolaw.com

                                          ATTORNEY FOR PLAINTIFFS

*Admitted pro hac vice*