No. 19-2927
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

EMERSON OBED HERNANDEZ CULAJAY et al.,

*Appellants*,

v.

KEVIN K. MCALEENAN, et al.,

*Appellees*.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
NO. 5:19-cv-03204-JDW
HONORABLE JOSHUA D. WOLSON
_____

### BRIEF FOR APPELLEES
_____

JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director

ARCHITH RAMKUMAR
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-8060
Archith.Ramkumar@usdoj.gov

October 11, 2019          *Attorneys for Appellees*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................1

STATEMENT OF JURISDICTION...............................................................3

COUNTER-STATEMENT OF THE ISSUES ................................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................5

STATEMENT OF THE CASE........................................................................5

  A. LEGAL BACKGROUND ..........................................................5

  B. FACTUAL BACKGROUND......................................................8

    1. Migrant Protection Protocols (MPP) ................................8

    2. This Lawsuit ..................................................................10

    3. Procedural History ..........................................................12

STANDARD OF REVIEW ..........................................................................15

SUMMARY OF THE ARGUMENT ..............................................................16

ARGUMENT...............................................................................................18

I. THE DISTRICT COURT CORRECTLY FOUND THAT IT LACKED
JURISDICTION OVER APPELLANTS' FSA CLAIM.........................................18

II. THE DISTRICT COURT CORRECTLY FOUND THAT IT LACKED
JURISDICTION OVER APPELLANTS' RIGHT-TO-COUNSEL CLAIM. ........29

III. THE DISTRICT COURT CORRECTLY CONCLUDED THAT IT LACKED
JURISDICTION OVER APPELLANTS' CLAIM THAT MPP VIOLATES NON-
REFOULEMENT PROCEDURES. ......................................................................42

IV. MPP IS AUTHORIZED BY STATUTE........................................................47

CONCLUSION.................................................................................................. 54

# TABLE OF AUTHORITES

## Cases

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007) ...................................................... *passim*

*Arroyo v. U.S. Dep't of Homeland Sec.*, No. SACV 19-815 JGB (SHKx), 2019 WL 2912848 (C.D. Cal. June 20, 2019) ............................................................ 41, 42

*Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543 (2d Cir. 2018) .................. 22, 25

*Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005) ............................................40

*Bourdon v. Dep't of Homeland Sec.*, No. 17-15787, 2019 WL 4865825 (11th Cir. Oct. 3, 2019)............................................................................................. 45, 46

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) ...............................................20

*Bradley v. West Chester Univ. of Penn. State Sys. of Higher Ed.*, 880 F.3d 643 (3d Cir. 2018) ...........................................................................................................15

*Brown v. Philadelphia Housing Auth.*, 350 F.3d 338, 347 (3d Cir. 2003)..............42

*Chehazeh v. Att'y Gen.*, 666 F.3d 118 (3d Cir. 2012) .................................... *passim*

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) ...............25

*Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018) ................................................46

*Gross v. German Foundation Indus. Initiative*, 549 F.3d 605 (3d Cir. 2008).........43

*Gunn v. Minton*, 568 U.S. 251 (2013) .................................................. 22, 23, 24, 25

*Hassen v. Gov't of Virgin Islands*, 861 F.3d 108 (3d Cir. 2017)...................... 15, 48

*Hoxha v. Levi*, 465 F.3d 554 (3d Cir. 2006) ..........................................................46

*Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694 (3d Cir. 2018).......................48

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001)....................................................................37

*I.N.S. v. Stevic*, 467 U.S. 407 (1984) ........................................................9

*In re Community Bank of N. Va. Mortgage Lending Practices Litig.*, 911 F.3d 666 (3d Cir. 2018)..............................................................................28

*In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270 (3d Cir. 1999) ........................ 15, 18

*Innovation Law Lab v. McAleenan*, 924 F.3d 503 (9th Cir. 2019)................. *passim*

*Innovation Law Lab v. McAleenan*, No. 19-15716 (9th Cir. 2019)............... 5, 9, 10

*J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)........................................... *passim*

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ................................................ *passim*

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) ..................................................44

*Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196 (3d Cir. 2006)...........................45

*Kleindienst v. Mandel*, 409 U.S. 753 (1972) ................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).........................18

*Lampon-Paz v. Dep't of Homeland Sec.*, 612 F. App'x 73 (3d Cir. 2015) .............43

*Lynn v. Whisman*, 45 F.3d 758 (3d Cir. 1995)..........................................................28

*M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark*, 344 F.3d 335 (3d Cir. 2003) ..............................................................................41

*Madu v. Att'y Gen.*, 470 F.3d 1362 (11th Cir. 2006)................................................36

*Mahmood v. Gonzales*, 427 F.3d 248 (3d Cir. 2005) ..............................................48

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158 (3d Cir. 2014), *aff'd* 136 S. Ct. 1562 (2016) ............................................................ 22, 23

*Matter of E-R-M & L-R-M*, 25 I. & N. Dec. 520 (BIA 2011) ............................ 7, 49

*Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008)..........................................44

*Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019) ............................................ 49, 50

*Mochama v. Zwetow*, No. 14-2121-KHV, 2017 WL 36363 (D. Kan. Jan. 3, 2017) ...................................................................................................................40

*Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8 (1st Cir. 2013)................................................................................. 24, 25

*Munoz v. Mabus*, 630 F.3d 856 (9th Cir. 2010)................................................. 19, 22

*Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006) .........................................36

*Nelson v. Pennsylvania*, 125 F. App'x 380 (3d Cir. 2005).....................................18

*New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338 (3d Cir. 1999)............................................................................................21

*Reno v. Am.-Arab Anti Discrim. Comm.*, 525 U.S. 471 (1999)..............................30

*S.M.M.M. et al. v. Barr et al.*, No. 3:19-cv-01774 (S.D. Cal. 2019) ......................22

*Segar v. Mukasey*, 508 F.3d 16 (D.C. Cir. 2007)...................................................20

*Shaffer v. GTE North, Inc.*, 284 F.3d 500 (3d Cir. 2002) ................................. 18, 20

*Shaffer v. Veneman*, 325 F.3d 370 (D.C. Cir. 2003)..............................................19

*Shalom Pentecostal Church v. Acting Sec. U.S. Dep't of Homeland Sec.*, 783 F.3d 156 (3d Cir. 2015) ....................................................................................... 38, 39

*Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007) ............................................. 30, 34

*Skurtu v. Mukasey*, 552 F.3d 651 (8th Cir. 2008)..................................................33

*Slaughter v. U.S. Dep't of Agriculture*, 555 F. App'x 927 (11th Cir. 2014)...........19

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)....................................................43

*Torres-Tristan v. Holder*, 656 F.3d 653 (7th Cir. 2011)........................................31

*Trinidad y Garcia v. Thomas*, 683 F.3d 952 (9th Cir. 2012) (en banc)....................46

*W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018)........................ 13, 25, 26

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)....................................27

## Statutes

28 U.S.C. § 1291 .......................................................................................3

28 U.S.C. § 1331 .....................................................................................23

28 U.S.C. § 1367(a) .................................................................................28

5 U.S.C. § 701(a) .....................................................................................45

8 U.S.C. § 1101 .........................................................................................6

8 U.S.C. § 1182(d)(5)................................................................................7

8 U.S.C. § 1225(b)(1).......................................................................... *passim*

8 U.S.C. § 1225(b)(1)(A)(i) .............................................................. 49, 50

8 U.S.C. § 1225(b)(1)(A)(ii) ....................................................................6

8 U.S.C. § 1225(b)(2)....................................................................... 6, 51, 52

8 U.S.C. § 1225(b)(2)(A) .................................................................. *passim*

8 U.S.C. § 1225(b)(2)(B)(ii) ............................................................ 8, 51, 52

8 U.S.C. § 1225(b)(2)(C) ........................................................... 5, 8, 45, 50

8 U.S.C. § 1229a .......................................................................................7

8 U.S.C. § 1229(a) ....................................................................................7

8 U.S.C. § 1231(a) ..................................................................................44

8 U.S.C. § 1231(b)(3)...............................................................44

8 U.S.C. § 1252(a)(2)(B)(ii) ...................................................45

8 U.S.C. § 1252(a)(4)...............................................................43

8 U.S.C. § 1252(a)(5)...............................................................38

8 U.S.C. § 1252(b)(4)(A)..........................................................40

8 U.S.C. § 1362 ........................................................................32

FARR Act § 2242(a), 112 Stat. 2681–822 .............................47

## Regulations

8 C.F.R. § 235.3(d) ........................................................... 23, 24

## Other Authorities

H.R. Rep. No. 109-72 (May 3, 2005) ............................... 30, 37

## **INTRODUCTION**

In December 2018, the Department of Homeland Security (DHS) announced a new initiative, the Migrant Protection Protocols (MPP), through which immigration officers exercise case-by-case discretion to temporarily return certain aliens to Mexico pending their removal proceedings in the United States. MPP is a direct and measured response to the burgeoning crisis on the southern border and ensures that limited government resources are appropriately utilized in response to the influx of migration over the southern border. Appellants now seek to halt their inclusion in MPP. As the district court correctly found, however, Appellants' claims are squarely foreclosed by the strictures of the Immigration and Nationality Act (INA) as well as bedrock principles of subject matter jurisdiction. Moreover, the plain text of the INA sanctions the application of MPP to Appellants.

First, the district court properly concluded that it lacked jurisdiction over Appellants' claim under the *Flores* Settlement Agreement (FSA), *see* JA6-11, because this claim seeks enforcement of a settlement agreement entered in a different court and therefore requires an independent basis for federal court jurisdiction. Such an independent basis is absent here.

Likewise, the district court's determination that the INA's claim-channeling provision in 8 U.S.C. § 1252(b)(9) operated to deprive it of jurisdiction over Appellants' right-to-counsel claim, *see* JA11-13, finds firm support in statutory text.

As every single court of appeals to have addressed the issue has found, any claim based on an alleged impairment of the right to counsel in the midst of removal proceedings is inextricably intertwined with the removal process. And Appellants themselves have represented that the harm resulting from any purported violation of their right to counsel would be a deleterious impact on the results of their removal proceedings. Thus, such a claim can only be raised in a petition for review (PFR) filed in an appropriate court of appeals following exhaustion of administrative remedies in immigration proceedings, not in district court.

The district court's finding that Appellants' non-refoulement claim was not justiciable, *see* JA15-17, also rests on solid ground. The crux of Appellants' claim is that it was unlawful to require them to affirmatively indicate a fear of returning to Mexico in order to receive a fear assessment. Because it is undisputed that Appellants received a fear assessment, however, the district court was right to dismiss this aspect of the claim as moot. To the extent Appellants ask this Court to construe this claim as arising under the Convention Against Torture (CAT), such a claim would also be foreclosed because treaties like the CAT do not provide legal causes of action and, in any event, 8 U.S.C. § 1252(a)(4) provides that claims sounding in the CAT must be raised, if it all, via the PFR process. Moreover, Appellants' generalized assertion that the non-refoulement procedures mandated by

MPP are inadequate is similarly non-justiciable on account of both 8 U.S.C. § 1252(a)(2)(B)(ii) as well as the rule of non-inquiry.

Finally, because this Court can affirm on any ground supported by the record, this Court should find that MPP is statutorily authorized. Appellants' contrary argument is irreconcilable with the clear text of the INA, which explicitly accords discretionary authority to immigration officers to return individuals placed in full removal proceedings, like Appellants, to the contiguous territory from which they entered or attempted to enter the United States. Accordingly, this Court should affirm the decision below.

## STATEMENT OF JURISDICTION

Appellants contend that this case arises "under the United States Constitution; the Administrative Procedure Act ('APA')," the INA, and the FSA. JA33-34, ¶ 5; Opening Br. 3. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, as Appellants are appealing from a final district court order dismissing their claims. *See* JA17-18, 22-23 (voluntarily dismissing sole remaining claim for purposes of appealing the district court's decision).

However, as the Government will demonstrate below, the district court correctly concluded that it did not have subject matter jurisdiction over Appellants' FSA claim, *see* JA6-11, Appellants' right-to-counsel claim, *see* JA11-13, and Appellants' non-refoulement claim, *see* JA15-17.

## COUNTER-STATEMENT OF THE ISSUES

1. Whether the district court correctly concluded that it lacked jurisdiction over a claim to enforce a settlement agreement entered into in another forum, where the settlement agreement did not independently provide for subject matter jurisdiction and where the claim based on the settlement agreement was unrelated to the remaining asserted claims, *see* JA6-11.

2. Whether the district court correctly concluded—like every single court of appeals to have considered the issue—that section 1252(b)(9) forecloses exercising subject matter jurisdiction over Appellants' right-to-counsel claim because such a claim is inextricably intertwined with removal proceedings and thus can only be raised at the conclusion of removal proceedings in a PFR, *see* JA11-13.

3. Whether the district court correctly concluded that Appellants' claim that MPP was arbitrary and capricious because it allegedly transgressed relevant non-refoulement obligations was moot, since Appellants received a fear assessment interview, and non-justiciable, since claims premised on the pertinent treaty obligations require an independent cause of action and can be raised only in the PFR process, *see* JA15-17.

4. Whether MPP is statutorily authorized given that Congress has authorized the Secretary of Homeland Security to place all aliens arriving on land into the United States from Mexico into full removal proceedings, and, if the Secretary

does so, to further exercise discretion in temporarily returning those aliens to Mexico pending those proceedings, *see* 8 U.S.C. § 1225(b)(2)(A), (C), JA13-14.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. Appellees are aware of a related pending Ninth Circuit appeal, *Innovation Law Lab v. McAleenan*, No. 19-15716 (9th Cir. 2019). The stay panel in that case granted the motion to stay the district court's preliminary injunction, *see id.*, Dkt. 22, *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 509 (9th Cir. 2019), and oral argument in front of the merits panel concluded on October 1. *See Innovation Law Lab*, No. 19-15716, Dkt. 63 (9th Cir. Oct. 1, 2019). Appellees are additionally aware of related cases in the Eastern District of Pennsylvania, *R.G.A.M. et al. v. Barr*, No. 5:19-cv-3194 (E.D. Pa. 2019) and in the Southern District of California, *S.M.M.M. et al. v. Barr et al.*, No. 3:19-cv-01774 (S.D. Cal. 2019).

## STATEMENT OF THE CASE

### A. Legal Background

It is well-settled that Congress exercises "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden," power that is "enforced exclusively through executive officers, without judicial intervention." *Kleindienst v. Mandel*, 409 U.S. 753, 766 (1972). As part of that power, Congress has enacted comprehensive procedures

governing the admission of aliens into the United States, which are enshrined in the INA, 8 U.S.C. § 1101 *et seq*. At issue in this appeal is one such procedure—section 1225, which establishes the rules governing aliens who are "applicants for admission," *i.e.*, aliens who arrive in the United States either at a port of entry as well as those aliens who are apprehended in the United States after illegally crossing the border. Thus, the "process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

If an immigration officer finds that an alien is inadmissible, then that officer must determine whether to place the alien "into one of two categories": (1) expedited removal hearing proceedings under section 1225(b)(1), *see* 8 U.S.C. § 1225(b)(1), or (2) full removal proceedings under section 1225(b)(2), *see* 8 U.S.C. § 1225(b)(2). *Jennings*, 138 S. Ct. at 837. Expedited removal, codified at section 1225(b)(1), provides for the swift removal of aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" "without further hearing or review." *Jennings*, 138 S. Ct. at 837. The only exception to this mandate is if the alien indicates an intention to apply for asylum or a fear of persecution, which entitles the alien to an "asylum interview." *Id.*; *see also* 8 U.S.C. § 1225(b)(1)(A)(ii). Full removal proceedings, on the other hand, apply to a

"broader" category of aliens, outlined in section 1225(b)(2)(A), which "serves as a catchall provision that applies to all applicants for admission not" placed in expedited removal proceedings under "§ 1225(b)(1)." *Jennings*, 138 S. Ct. at 837. Thus, any alien who "is not clearly and beyond a doubt entitled to be admitted" "shall be detained for" a full removal proceeding. 8 U.S.C. § 1225(b)(2)(A). Full removal proceedings entail more extensive procedural protections, including a hearing before an immigration judge (IJ) and appellate review by the Board of Immigration Appeals (BIA). *See* 8 U.S.C. § 1229a. In full removal proceedings, unlike expedited removal proceedings, aliens receive written notices to appear (NTAs) at their immigration hearings. *See* 8 U.S.C. § 1229(a). It is well-settled that "DHS has discretion to put aliens in [full] removal proceedings even though they may also be subject to expedited removal." *Matter of E-R-M & L-R-M*, 25 I. & N. Dec. 520, 523 (BIA 2011).

Applicants for admission subject to full removal proceedings are "detained for" the duration of their "removal proceedings," unless they are temporarily paroled "for urgent humanitarian reasons or significant public benefit." *Jennings*, 138 S. Ct. at 837, 842; 8 U.S.C. § 1225(b)(2)(A); 8 U.S.C. § 1182(d)(5). As an alternative to mandatory detention, however, Congress provided that "[i]n the case of an alien described in subparagraph A [of section 1225(b)(2)] who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to

the United States, the Attorney General[1] may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C). This contiguous return authority, which forms the basis for the instant appeal, authorizes DHS to temporarily return aliens arriving by land from Mexico or Canada to those countries "during the pendency of § 1229a removal proceedings." *Innovation Law Lab*, 924 F.3d at 509. Finally, section 1225(b)(2)(B) lists three exceptions to the general rule announced in section 1225(b)(2)(A). Relevant here, one such carve-out provides that "[s]ubparagraph (A) shall not apply to an alien" "to whom paragraph (1) applies." 8 U.S.C. § 1225(b)(2)(B)(ii).

## B. Factual Background

### 1. Migrant Protection Protocols (MPP)

In December 2018, the Secretary announced the implementation of MPP, "which initiated a new inspection policy along the southern border." *Innovation Law Lab*, 924 F.3d at 506. Consistent with the contiguous return authority outlined in section 1225(b)(2)(C), MPP provides that "certain aliens entering or seeking admission to the United States, who enter the United States by crossing through Mexico" and who are placed in full removal proceedings "may be returned to Mexico" pending their "immigration proceedings." JA2. Thus, under MPP,

---

[1] Section 1225 refers to the Attorney General, but those functions have been transferred to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 251, 552(d); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

applicants for admission "are processed for standard removal proceedings, instead of expedited removal," and "wait in Mexico until an immigration judge" in the United States "resolves their . . . claims." *Innovation Law Lab*, 924 F.3d at 506; JA2. Immigration officers "exercise discretion" in deciding who to place in MPP, but MPP is "categorically inapplicable to unaccompanied minors, Mexican nationals, applicants who are processed for expedited removal, and any applicant who is more likely than not to face persecution or torture in Mexico." *Innovation Law Lab*, 924 F.3d at 506; JA2.

The discretionary authority outlined in MPP is exercised in accord with applicable non-refoulement principles. *See Innovation Law Lab v. McAleenan*, No. 19-15716, Dkt. 27-2 at 191 (9th Cir. May 22, 2019). Accordingly, aliens who express a fear of persecution or torture in Mexico are entitled to an interview with an asylum officer. *See id.* at 192. That interview, which assesses whether an alien would more likely than not be persecuted based on a protected ground or tortured if returned to Mexico,[2] is conducted "in a non-adversarial manner, separate and apart from the general public," and the results of the interview "shall be reviewed by a supervisory asylum officer, who may change or concur with the assessment's conclusion." *Id.* at 192-93.

---

[2] This "more likely than not" standard is identical to the "clear probability of persecution standard." *I.N.S. v. Stevic*, 467 U.S. 407, 424, 429-30 (1984).

Aliens subject to MPP are informed that they are entitled to be represented by counsel during their removal proceedings. *See* Opening Br. 7; JA2; *Innovation Law Lab v. McAleenan*, No. 19-15716, Dkt. 27-2 at 102-03 (9th Cir. May 22, 2019). If an alien placed in MPP ultimately becomes the subject of a final order of removal, than that alien is removed in accordance with DHS's regulations. *See* JA2.

2. This Lawsuit

Appellants are two Guatemalan citizens, a 31-year old father and his six-year old daughter, that entered the United States unlawfully on April 23, 2019. JA2. After surrendering to Customs and Border Protection ("CBP") Officers, Appellants were placed in full removal proceedings and received NTAs. JA2-3. On their face, the NTAs indicated that Appellants were placed in full removal proceedings, and were also stamped MPP. JA3. The NTAs required Appellants to appear on June 25, 2019 in San Diego before an IJ. JA3.

On April 29, 2019, CBP Officers, pursuant to the discretionary authority under MPP, returned Appellants to Mexico pending their hearing in San Diego. JA3. Thereafter, on June 25, 2019, Appellants presented themselves at the San Ysidro Port of Entry and were transported to their removal hearings. *Id.* During the course of the hearings, after being apprised of their rights by the IJ, Appellants were found removable from the United States, waived their appellate rights, and also indicated that they had no fear of returning to Guatemala, abandoning their claims for asylum.

*Id.* Accordingly, the IJ ordered that Appellants be removed. *Id.* Appellants were then transferred to Berks County Residential Center in Pennsylvania. *Id.*

After retaining counsel, Appellants appealed their removal decisions to the BIA, contending that the abandonment of their asylum claims occurred under duress. JA3. Appellants then sought an emergency stay of removal, which the BIA granted on July 23, 2019 pending the outcome of the BIA appeal. JA3-4.

Appellants then commenced the present lawsuit that same day, seeking to enjoin any further efforts to return Appellants to Mexico pursuant to MPP via an emergency petition for a writ of mandamus. *See* JA31-52. They obtained the equivalent of an administrative stay—an order temporarily prohibiting the return of Appellants to Mexico "while the merits of the" case "are explored through litigation." Dkt. 2.[3] Approximately two weeks later, on August 9, 2019, after articulating a fear of return to Mexico, Appellants were interviewed by an asylum officer regarding their fear of return to Mexico in accordance with all applicable MPP non-refoulement procedures. JA4. The asylum officer found that Appellants did not establish a clear probability of persecution based upon a protected characteristic or torture. JA4. That determination was approved by a supervisory asylum officer. *See* JA281.

---

[3] In this brief, "Dkt." refers to district court docket entries.

3. <u>Procedural History</u>

On August 5, 2019, Appellants filed a preliminary injunction motion based on the following claims: (1) that returning Appellants to Mexico would violate the FSA; (2) that returning Appellants to Mexico would violate Appellants' right to counsel; (3) that MPP is not statutorily authorized; and (4) that MPP is arbitrary and capricious because aliens subject to MPP must affirmatively state a fear of persecution or torture in order to obtain a fear assessment. JA4-5, 68-70, 71-79.[4]

After the parties completed briefing and oral argument, on September 16, 2019, the district court made the *sua sponte* determination that it lacked subject matter jurisdiction over all of the claims raised in Appellants' preliminary injunction motion and thus denied the motion and dismissed those claims. *See* JA1.

Beginning with Appellants' FSA claim, the district court concluded that an independent jurisdictional basis was necessary to confer jurisdiction over the FSA claim, and Appellants "have not pointed the Court to any statutory authority" to meet this requirement. JA7. The district court found that the FSA "cannot, on its own," supply subject matter jurisdiction because it is a "consent decree" entered by a different "district court." The district court found that this conclusion was reinforced

---

[4] Appellants also initially sought relief with respect to their claim that returning them to Mexico would run afoul of the stay order imposed by the BIA, but withdrew that claim below. *See* JA17.

by the FSA "itself" as "Paragraph 24.B" of the FSA "provides for review in any United States District Court with **jurisdiction** and venue over the matter." JA8 (emphasis in original). The district court found that the term "jurisdiction" "must mean 'subject matter jurisdiction,'" as otherwise, it could only mean "personal jurisdiction," yet "because the United States is subject to personal jurisdiction everywhere in the country," such an interpretation would reduce this term to a "nullity, something that the Court must avoid if an alternative interpretation is available." *Id.*

Thus, the district court held that Appellants "ask[ed] the Court to enforce commitments that emanate not from the Constitution but from a contract and court order. The Court has no authority to do so." JA10. And the district court further rejected Appellants' reliance on *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018) because the conclusion in *W.S.R.* that the FSA, by itself, provided subject matter jurisdiction "give[s] the word 'jurisdiction' in" the FSA "no meaning at all." JA10-11.

Turning next to Appellants' right-to-counsel claim, the district court found that it did "not have jurisdiction to hear this claim" based on the text of 8 U.S.C. § 1252(b)(9), which is an "unmistakable zipper clause that channels judicial review of all decisions and actions arising from removal proceedings" into a "petition for review filed with an appropriate court of appeals." JA11 (emphasis and

citations omitted). As the district court noted, the "statutory right on which" Appellants base their right-to-counsel claim "provide[s] them with a right to counsel in removal proceedings" and, at the preliminary injunction hearing, Appellants "explained that the harm that they will suffer will be harm to the fairness of their removal proceedings." JA12. Thus, the right-to-counsel claim arose from Appellants' "removal proceedings" as they "relate[d] specifically to the underlying removal proceeding," and accordingly, the district court "lack[ed] jurisdiction under Section 1252(b)(9)." *Id.*

The district court then assessed Appellants' claim that they are categorically precluded from being placed in MPP because they are "eligible for expedited [removal] consideration under Section 1225(b)(1)" and thus cannot be "eligible for full removal proceedings under Section 1225(b)(2)(A)." JA13. The district court initially observed that "there is overlap between the aliens who fall within these two statutory provisions." *Id.* However, ultimately, the district court found that "Section 1252(b)(9) takes away" "jurisdiction" over this claim because the "classification decision" to place an alien in expedited or full removal proceedings constitutes an "action taken . . . to remove an alien." JA13-14.

Finally, the district court found that Appellants' claim that MPP is arbitrary and capricious because it places the "onus on" aliens like Appellants to affirmatively raise a "fear of persecution or torture" to receive a fear assessment was moot and

"not justiciable" because Appellants received "an assessment interview" "on August 9, 2019." JA15-16. The district court further determined that it did not have jurisdiction over Appellants' claim that the processes implemented by MPP to evaluate fears of persecution or torture ran afoul of the CAT because "Section 1252(a)(4) provides" that the "sole and exclusive means for judicial review of any cause or claim under" the CAT is a "petition for review filed with an appropriate court of appeals." JA16 (emphasis omitted).

The district court thus "dismiss[ed] the claims over which it lack[ed] subject matter jurisdiction." JA17. In the wake of the district court's decision, Appellants voluntarily dismissed the single remaining claim and proceeded to file a timely notice of appeal. *See* JA22-23.

## STANDARD OF REVIEW

"Whether the district court possessed subject matter jurisdiction is an issue of law [that] this court reviews *de novo*." *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999). In addition, this Court "exercise[s] plenary review of a district court's … granting [of] a motion to dismiss," and, as such "may affirm on any grounds supported by the record." *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017); *see also Bradley v. West Chester Univ. of Penn. State Sys. of Higher Ed.*, 880 F.3d 643, 650 (3d Cir. 2018).

## SUMMARY OF THE ARGUMENT

This Court should affirm the decision below. First, the district court correctly found that it did not have subject matter jurisdiction over the FSA claim because there is no standalone jurisdiction to enforce settlement agreements executed in other fora, and no independent basis to exercise subject matter jurisdiction over the FSA claim exists.

Next, the district court properly concluded that Appellants' right-to-counsel claim falls firmly within the clear text of section 1252(b)(9), which channels all claims arising from removal proceedings into a PFR filed at the conclusion of removal proceedings and in the appropriate court of appeals, instead of a petition in district court. Every single court of appeals that has assessed whether right-to-counsel claims are covered by section 1252(b)(9) has answered that question in the affirmative because such claims have a clear and tangible relationship with removal proceedings, and because of the frequency with which such claims are litigated in PFRs. Adopting Appellants' competing interpretation of section 1252(b)(9) would sap this provision of force, and would further make section 1252(b)(9) impermissibly redundant.

Third, the district court was correct to dismiss Appellants' non-refoulement claim as moot, as Appellants' primary assertion is that the threshold requirement that they needed to affirmatively articulate a fear of return in order to obtain a fear

interview is arbitrary and capricious under the APA. Yet, it is undisputed that Appellants received a fear interview, and an asylum officer found that Appellants did not establish the requisite fear of return to Mexico, obviating this component of the claim from the case. As for the remainder of Appellants' claim, to the extent Appellants now portray this claim as arising not under the APA but instead under other various international treaties, such claims are not cognizable and subject to numerous jurisdictional bars in the INA, including §§ 1252(a)(4) and 1252(a)(2)(B)(ii).

Finally, because this Court can affirm on any ground supported by the record, particularly with respect to pure questions of law untethered to any factual development, this Court should find that MPP is statutorily authorized. Appellants admit, as they must, that immigration officers possess the discretionary authority to place aliens eligible for expedited removal into full removal proceedings, which is exactly what happened to Appellants. The antecedent inspection decision to place Appellants in full removal proceedings settles the question of whether MPP is statutorily authorized, as the INA makes clear that the contiguous return authority can properly be exercised with respect to all aliens in full removal proceedings. Accordingly, the district court's decision should be affirmed.

# ARGUMENT

## I. The District Court Correctly Found that It Lacked Jurisdiction over Appellants' FSA Claim.

Appellants contend that the district court erred in dismissing their FSA claim due to lack of subject matter jurisdiction. Opening Br. 15. They are wrong.

Appellants concede, as they must, that their FSA claim arises "under the Settlement" Agreement, memorialized as a "consent decree." Opening Br. 18-19. This concession is dispositive because claims seeking to enforce settlement agreements, such as the present claim, do not belong in federal court, "unless there is some independent basis for federal jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994); *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 504 (3d Cir. 2002) ("[W]e hold that the district court lacked subject matter jurisdiction to rule on GTE's motion to enforce the settlement agreement."); *see also In re Phar-Mor*, 172 F.3d at 275 (same); *Nelson v. Pennsylvania*, 125 F. App'x 380, 382 (3d Cir. 2005) (same). Stated differently, Appellants' claim is a species of a breach-of-contract claim, and a claim that the "settlement contract" was violated, cannot, on its own, confer federal subject matter jurisdiction. *Kokkonen*, 511 U.S. at 381; Opening Br. 19 (acknowledging that claim is a breach-of-contract claim). This is precisely why the district court found that an "independent" "basis to assert subject matter jurisdiction over claims arising under the" FSA was a prerequisite. JA9. Because no such jurisdictional hook was identified here, and because Appellants

asked the district court "to enforce commitments that emanate not from the Constitution but from a contract and court order" issued by the Central District of California, the district court was correct that it did not possess the "authority" to exercise jurisdiction over this claim. JA10.

Critically, the conclusion that a claim seeking enforcement of a settlement agreement is insufficient, standing alone, to confer subject matter jurisdiction upon a district court does not change even if the United States or one of its agencies is a party to the relevant settlement agreement or consent decree. *See, e.g.*, *Munoz v. Mabus*, 630 F.3d 856, 864 (9th Cir. 2010) ("Because Munoz's breach of settlement agreement claim is essentially a contract action against the federal government . . . his claim cannot seek jurisdictional refuge in Title VII."); *Shaffer v. Veneman*, 325 F.3d 370, 374 (D.C. Cir. 2003) ("The district court had neither subject matter jurisdiction nor ancillary jurisdiction over Shaffer's claim, founded, as it is, solely upon a contract with the United States."); *Slaughter v. U.S. Dep't of Agriculture*, 555 F. App'x 927, 929 (11th Cir. 2014) ("As the district court correctly found, it does not have an independent basis for jurisdiction to enforce violations of [the] Consent Decree."). Appellants are thus wrong to intimate that the fact that "federal common law govern[s] the contractual obligations of the government," Opening Br. 19, changes the jurisdictional analysis, as this only speaks to how breach of contract claims with a proper jurisdictional basis in the first instance are evaluated. But none

19

of the cases Appellants cite, *see id.* at 20-21, come close to holding that the fact that contractual disputes involving the federal government are adjudicated using principles of federal common law automatically overrides any barriers imposed by subject matter jurisdiction. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988), *see* Opening Br. 20, did not even involve a breach of contract claim, as the relevant question in that case was whether "the Federal Government can be held liable under state tort law for injury caused by a design defect." *Boyle*, 487 U.S. at 502. And in *Segar v. Mukasey*, 508 F.3d 16, 19 (D.C. Cir. 2007), *see* Opening Br. 20, the district court in that case explicitly "retained jurisdiction over the case until" it concluded that all relevant obligations were discharged, and it supervised the terms of a consent decree entered in the same court. *Segar*, 508 F.3d at 19. The Central District of California similarly "retain[s] jurisdiction" over *Flores* and claims seeking to enforce the FSA until the court determines that "substantial compliance with" the FSA has been achieved. JA194, ¶¶ 35, 37. Those sets of circumstances are a far cry from the present case, where Appellants are unabashedly seeking to enforce a settlement agreement entered in and currently being enforced by a different court. *See GTE North*, 284 F.3d at 504 n.5 (noting that a district court's "express retention of jurisdiction over the entire settlement agreement" constitutes a limited exception to the general rule announced in *Kokkonen*).

The terms of the FSA buttress the district court's conclusion. As the district court observed, Paragraph 24.B of the FSA "provides for review in any United States District Court with jurisdiction and venue over the matter." JA8 (emphasis omitted). In order to give the term "jurisdiction" in the FSA meaning, jurisdiction must mean subject matter jurisdiction because it cannot mean personal jurisdiction, since "the United States is subject to personal jurisdiction everywhere in the country." *Id.* Thus, the district court's construction accords with cardinal rules of contract interpretation that all of the terms in a contract must be given weight and not "render[ed]" "superfluous." *New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 349 (3d Cir. 1999). The district court was similarly correct to find that if the simple act of bringing an FSA claim, by itself, sufficed to establish subject matter jurisdiction, then the term "jurisdiction" "would lose all meaning because any court in which a case was brought would have jurisdiction by virtue of the case having been brought," again "render[ing] the term a nullity." JA8. It is therefore unsurprising that a district court entertaining a similar challenge has likewise found that "absent an independent basis for jurisdiction" it did not have "subject matter jurisdiction" over a claim alleging that placement "in the MPP"

constituted a "violation of the" FSA. *S.M.M.M. v. Barr*, No. 3:19-cv-01774-WQH-KSC, Dkt. 23 at 10 (S.D. Cal. Sept. 27, 2019) (citing *Munoz*, 630 F.3d at 861).[5]

Tellingly, Appellants do not even grapple with the district court's straightforward analysis of the terms of the FSA, and, in particular, with the fact that the district court's holding is the only one that gives the term "jurisdiction" in Paragraph 24.B of the FSA meaning. Instead, Appellants attempt to manufacture jurisdiction by insisting that their FSA claim necessarily arises under federal law. This effort, however, is nothing more than an attempt to place a square peg into a round hole.

Relying on an unpublished Second Circuit decision, Appellants appear to contend that their FSA claim has all the hallmarks of a claim that nonetheless "aris[es] under" federal law. *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543, 546 (2d Cir. 2018); Opening Br. 20-21. But Appellants' claim cannot be shoehorned into the "special and small category" of such claims. *Gunn*, 568 U.S. at 258; *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd* 136 S. Ct. 1562 (2016) ("Only a slim category of cases satisfy the . . . test." (internal quotation omitted)). In order

---

[5] In view of this decision, Appellants' assertion that no other courts have "refused" to entertain FSA claims "on the ground of lack of subject matter jurisdiction" is no longer accurate. Opening Br. 17.

for a state law claim to be classified as a claim arising under federal law pursuant to 28 U.S.C. § 1331, four independent preconditions must each be met: the "federal issue" must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *Manning*, 772 F.3d at 163. Here even assuming, *arguendo*, the first of these requirements is met, Appellants cannot meet the remaining three prongs.

Appellants portray the pertinent federal issue as whether the government has "complied with" the terms of the FSA. Opening Br. 20. Indeed, the gravamen of their claim is that returning Plaintiff M.S.H.S. to Mexico contravenes particular provisions of the FSA. *See* JA68-70. Critically, however, these issues are not disputed in this particular case, not because the Government concedes the veracity of Appellants' allegations, but because the Government's position is that once Plaintiff M.S.H.S. is returned to Mexico, Plaintiff M.S.H.S. will no longer be "in government custody," and, as a consequence, the FSA simply does not apply. JA267. Thus, the "actually disputed" prong is not met here. *Gunn*, 568 U.S. at 258. To the extent Appellants attempt to contest this threshold argument and portray the disputed federal issue as being whether or not return to Mexico can constitute "legal custody" for purposes of the FSA, JA181, ¶ 10, that effort also falls short. Appellants rely exclusively on 8 C.F.R. § 235.3(d), which states that aliens returned to Mexico

23

"shall be considered detained for proceeding within the meaning of section [1225](b)" of the INA. *See* JA68. Putting aside whether Appellants are correct, however, this issue is simply not substantial.[6] Appellants cursorily addressed this question below, *see* JA57-58 n.1, JA68, and this regulation is unmentioned in Count I of the mandamus petition, which contains the relevant FSA allegations. *See* JA46, ¶¶ 30-34. Indeed, even if Appellants' interpretation of 8 C.F.R. § 235.3(d) is credited, that simply resolves an initial obstacle to entertaining Appellants' claim. It plays no role, however, in the underlying merits of Appellants' FSA claim, which exclusively concerns whether conditions in Mexico satisfy the relevant provisions of the FSA. *See* JA68-70. Thus, the issue of whether return to Mexico qualifies as legal custody for purposes of the FSA "is not substantial in the relevant sense" because it is not the "central point of dispute" "on the merits" and will not be "controlling in numerous other cases." *Gunn*, 568 U.S. at 259, 260, 262. "[D]emonstrating that the question is significant to the federal system as a whole, is needed" and "[t]hat is missing here." *Id.* at 264; *see also Municipality of Mayaguez*

---

[6] Although not germane to the jurisdictional issue, the Government disagrees that the effect of 8 C.F.R. § 235.3(d) is that aliens returned to Mexico are in legal custody as that term is used in the FSA. The text of the regulation makes clear that such aliens are not actually detained, but are merely "*considered* detained" solely for purposes of removal proceedings. *Id.* (emphasis added). This regulation is consistent with the statutory command that aliens "shall be detained" during the duration of their removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

*v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) ("Though the ultimate question . . . is whether [the defendant] failed to comply with federal regulations, and thereby breached its contract, this dispute . . . is unlikely to have any impact on the development of federal law.").

Nor can Appellants satisfy the final prong. In contrast to a "pure issue of law," that could potentially govern numerous future cases, Appellants' FSA claim is "fact-bound and situation-specific," and "it is hardly apparent . . . why a proper federal-state balance would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006); *see also Gunn*, 568 U.S. at 263 ("Such fact-bound and situation-specific effects are not sufficient to establish federal arising under jurisdiction."). Appellants are therefore incorrect in asserting that "[r]ecognizing federal question jurisdiction in this case does not create any possibility of altering the federal-state balance contemplated by Congress." Opening Br. 21.[7]

Appellants rely heavily on *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1128 (N.D. Ill. 2018), and its conclusion that "subject matter jurisdiction poses no obstacle

---

[7] Appellants neglect to mention that the result in *Bartlett* stemmed not simply from the presence of a consent decree but also from the fact that federal preemption issues were implicated, satisfying all four components of the test adduced in *Gunn*. *See* 737 F. App'x at 546.

to considering Plaintiffs' claim under the [FSA]" because the "original *Flores* case itself . . . was premised on federal-question jurisdiction." Opening Br. 17-18. That reasoning: (1) is inapt, since the original claims in *Flores* predated the FSA; (2) simply fails to account for the fact that district courts generally lack jurisdiction to enforce settlement agreements entered into elsewhere; and (3) cannot be reconciled with the plain terms of the FSA. The district court made this precise point in finding *W.S.R.* unpersuasive: "Plaintiffs pointed the Court to the holding in *W.S.R.* . . . . [A]s noted above, Paragraph 24.B of the [FSA] requires a district court to have 'jurisdiction' before it can consider a claim about the parties' rights under the [FSA]. That requirement demands more than the simple conclusion that district courts' subject matter jurisdiction is the same. Indeed, such a reading would give the word 'jurisdiction' in Paragraph 24.B no meaning at all." JA10-11. Appellants assail the district court's statement, in its discussion of *W.S.R.*, that subject matter jurisdiction can "vary from district court to district court." Opening Br. 21. But they completely omit the necessary context in which that statement was made. Specifically, in refuting the conclusion in *W.S.R.* that because the district court in *Flores* has subject matter jurisdiction to adjudicate FSA claims, that same conclusion globally applies in all district courts, *see W.S.R.*, 318 F. Supp. 3d at 1128-29, the district court noted: "[T]he district court in *Flores* has jurisdiction to hear claims that arise under the [FSA] because it has the inherent power to enforce its own orders. No other court

does. *In that sense*, jurisdiction does vary from district court to district court." JA10 (emphasis added); JA194, ¶ 37. Properly understood, the district court's determination is unremarkable, as the terms of the FSA provide for its "enforcement" in the Central District of California, but no other court.[8]

In a footnote, Appellants assert that the district court's conclusion would create practical "difficult[ies]" and would impose a "crushing burden" on the judge overseeing *Flores*. Opening Br. 17 n.3. This argument, however, conflates considerations relevant to venue with whether subject matter jurisdiction exists; "[v]enue [is] largely a matter of litigational convenience . . . . Subject-matter jurisdiction, on the other hand, concerns a court's competence to adjudicate a particular category of cases" and, relevant here, "does not entail an assessment of convenience." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006). In any event, Appellants' argument fails on its own terms, as it is far from clear why having the district court that routinely hears FSA enforcement claims and has explicitly retained jurisdiction until the terms of the FSA are satisfied, JA194, ¶¶ 35, 37, would impose

---

[8] There is no indication that the court in *Bunikyte, ex rel. Bunikiene v. Chertoff*, Nos. A-07-CA-164-SS, 2007 WL 1074070, at *4 (W.D. Tex. Apr. 9, 2007), *see* Opening Br. 18, even considered the question of subject matter jurisdiction, and indeed, that court's holding that "Paragraph 24(b)" of the FSA "provides that any individual child may bring suit in any Federal District Court," *id.*, is at odds with the text of the FSA and conspicuously omits the operative clause that informed the district court's analysis: FSA claims may only be brought in federal district courts with both "jurisdiction and venue over the matter." JA8.

a "crushing" burden or why litigating in the Central District of California would uniquely impede "access to lawyers." Opening Br. 17 n.3. Such an outcome also respects considerations of comity, as well as the intimate familiarity the district court in the Central District of California has developed with respect to the FSA.

Finally, though not raised by Appellants either below or in their opening brief, the district court lacked the power to exercise supplemental jurisdiction over Appellants' FSA claim under 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the] original jurisdiction that they form part of the same case or controversy under Article III." In practical terms, this means that there must be a sufficient "factual nexus between the federal and state claims to establish a common nucleus of operative facts." *Lynn v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995); *see also In re Community Bank of N. Va. Mortgage Lending Practices Litig.*, 911 F.3d 666, 671 (3d Cir. 2018). Appellants' FSA claim, which only applies to Plaintiff M.S.H.S. and exclusively concerns whether conditions in Mexico satisfy various provisions of the FSA, is factually distinct from every other claim at issue on appeal. The claim that MPP is not statutorily authorized, *see* Opening Br. 32-37, is a pure question of law that has no overlap with the FSA claim. And the claims that MPP violates Appellants' right-to-counsel and relevant non-refoulement obligations respectively, *see id.* at 23-32, 37-42, requires examination of the

procedures MPP prescribes on each of these issues,[9] procedures that have no bearing on whether the FSA has been violated.

Ultimately, then, contrary to Appellants' assertion, "the district court's holding" has everything "to do with its original subject matter jurisdiction under § 1331." Opening Br. 21. This Court should thus affirm the decision dismissing Appellants' FSA claim for lack of subject matter jurisdiction.

## II. The District Court Correctly Found That It Lacked Jurisdiction Over Appellants' Right-to-Counsel Claim.

The district court correctly held that section 1252(b)(9) precluded judicial review of Appellants' right to counsel claim. *See* JA11-13. Every single court of appeals to have considered the issue has determined that right-to-counsel claims are subject to § 1252(b)(9), and, accordingly, can only be brought in a PFR once administrative immigration proceedings have ended. This Court should follow suit.

The starting point in the analysis is the text of section 1252(b)(9), which provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

---

[9] And, in any event, as demonstrated below, the district court correctly found that it lacked jurisdiction over both of these claims.

The import of this provision is unequivocal: it is an "unmistakable zipper clause" that channels judicial review of "all questions of law and fact," including both "constitutional and statutory" challenges into a PFR. *Reno v. Am.-Arab Anti Discrim. Comm.*, 525 U.S. 471, 482-83 (1999); JA11-12. To state the obvious, the reach of this provision is capacious. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Section 1252(b)(9) is . . . breathtaking in scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings."); *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007) ("[Section 1252(b)(9)'s] expanse is breathtaking . . . . By its terms, the provision aims to consolidate *all* questions of law and fact that arise from either an action or a proceeding brought in connection with the removal of an alien." (emphasis in original) (internal quotations omitted)). The broad reach of section 1252(b)(9) is consistent with the Congressional purpose underpinning its enactment, namely to "streamline immigration proceedings" and "eliminate[] the previous initial step in obtaining judicial review—a suit in a District Court," so that "'review of a final removal order is the only *mechanism* for reviewing any issue raised in a removal proceeding.'" *Singh v. Gonzales*, 499 F.3d 969, 975-76 (9th Cir. 2007) (emphasis added) (quoting H.R. Rep. No. 109-72 at 173 (May 3, 2005)); *Aguilar*, 510 F.3d at 9 ("In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and

piecemeal nature of the review process that previously had held sway in regard to removal proceedings.").

Although the breadth of section 1252(b)(9) is vast, the provision is not all-encompassing. Courts have found that "claims that are independent of or collateral to the removal process" evade the grasp of section 1252(b)(9). *J.E.F.M.*, 837 F.3d at 1032; *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) ("Ancillary determinations made outside the context of a removal proceeding, however, are not subject to direct review."); *Aguilar*, 510 F.3d at 10 ("To us, Congress's choice of phrase suggests that it did not intend section 1252(b)(9) to sweep within its scope claims with only a remote or attenuated connection to the removal of an alien."). For this reason, a plurality of the Supreme Court in *Jennings* concluded that the plaintiffs' claims that they were being unlawfully detained for prolonged periods "in the course of immigration proceedings" were not subject to section 1252(b)(9) because the plaintiffs were "not asking for review of an order of removal," "not challenging the decision to detain them in the first place or to seek removal" and "not even challenging any part of the process by which their removability will be determined." 138 S. Ct. at 836, 841.

By contrast, Appellants' right-to-counsel claims are clearly "part and parcel," *J.E.F.M.*, 837 F.3d at 1033, "of the process by which their removability will be determined," *Jennings*, 138 S. Ct. at 841, and can accordingly only be raised in a

PFR. This is so because right to "counsel claims are not independent or ancillary to the removal proceedings. Rather these claims are bound up in and an inextricable part of the administrative process." *J.E.F.M.*, 837 F.3d at 1033. "By any realistic measure," a claim that "detention and subsequent transfer . . . infringed the[] rights to counsel," which is the essence of Appellants' claim, *see* Opening Br. 23, 26, "possesses a district link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned." *Aguilar*, 510 F.3d at 13. In fact, the statutory provision on which Appellants base their claim explicitly ties the right to counsel to removal proceedings: "In any removal proceedings before an [IJ] . . . the person concerned shall have the privilege of being represented . . . by such counsel . . . as he shall choose." 8 U.S.C. § 1362; Opening Br. 23. The district court emphasized this point in its analysis, noting that because "[t]he statutory right on which Plaintiffs rest their claims provide[s] them with a right to counsel in removal proceedings," "their claims arise from their removal proceedings, and this Court lacks jurisdiction under Section 1252(b)(9)." JA12; JA13 ("Indeed, the statutory right to counsel is specific to removal proceedings."). Underscoring this conclusion is the fact that below, Appellants "explained that the harm that they will suffer" with respect to their right to counsel is "harm to the fairness of their removal proceedings." JA12. And the outcome the district court reached is in harmony with the decisions of each of the Courts of Appeals that have considered this question,

namely the Ninth Circuit, *see J.E.F.M.*, 837 F.3d at 1033-34, the First Circuit, *see Aguilar*, 510 F.3d at 13, and the Eighth Circuit, *see Skurtu v. Mukasey*, 552 F.3d 651, 658 (8th Cir. 2008) ("Skurtu's claims that he was denied his right to counsel and a fair hearing are a direct result of the removal proceedings before the IJ.").

Resisting this conclusion, Appellants rely principally on this Court's decision in *Chehazeh v. Att'y Gen.*, 666 F.3d 118 (3d Cir. 2012) to argue that the absence of a final "order of removal" immunizes their claim from the applicability of section 1252(b)(9). Opening Br. 25-26. But the one-of-a-kind claim at issue in *Chehazeh* renders that case inapposite.

Critically, *Chehazeh* did not involve a right-to-counsel claim. Instead, the "unusual circumstances" of *Chehazeh* entailed consideration of a claim brought by an alien who successfully obtained asylum, only to subsequently have "removal proceedings" "reopened" against the alien years later. 666 F.3d at 121, 123. The alien limited his challenge to the "decision to reopen proceedings," *id.* at 124, and this Court concluded that section 1252(b)(9) did not apply, in part, because, such an application of section 1252(b)(9) would be "perverse," since the claim in *Chehazeh* could not "be raised efficaciously within the administrative proceedings delineated in the INA." *Id.* at 133 n.19. Because the alien in *Chehazeh* was challenging the BIA's *sua sponte* decision to reopen his removal proceedings in which he was granted relief, forcing that claim to be brought in a PFR would effectively have

deprived the alien of all "judicial review" of his claim, as the asserted harm could only be remedied prior to the conclusion of the second round of removal proceedings. *Id.* Stated differently, the harm at issue was circumscribed to the decision to reopen removal proceedings, a threshold decision that is antecedent to and "collateral to the removal process." *J.E.F.M.*, 837 F.3d at 1032.

The reasoning in *Chehazeh* confirms that the outcome in that case was highly dependent upon the type of claim being considered. The decision in *Chehazeh* was informed, in part, by the Ninth Circuit's opinion in *Singh*. *See Chehazeh*, 666 F.3d at 132-33. And like this Court in *Chehazeh*, the Ninth Circuit in *Singh* interpreted section 1252(b)(9) as applying "only with respect to review of an order of removal." 499 F.3d at 978 (emphasis omitted). Yet, in *J.E.F.M.*, the Ninth Circuit cabined the holding in *Singh*, as well as the language of the opinion, to the "unique situation" that arose in *Singh*, *J.E.F.M.*, 837 F.3d at 1032, similar to the "unusual circumstances" informing the result in *Chehazeh*. 666 F.3d at 121. Specifically, in *Singh*, an ineffective assistance of counsel claim that arose because the alien's attorney "failed to file a timely PFR" was not jurisdictionally barred as "it arose after a final order of removal was entered and, absent habeas review, Singh would have had no legal avenue to obtain judicial review of this claim." *J.E.F.M.*, 837 F.3d at 1032. The anomalous situation and subsequent result in *Singh* can accordingly be explained by the fact that the basis of the claim was inaction in filing the predicate

for seeking judicial review—a PFR—that section 1252(b)(9) demands. Thus, as in *Chehazeh*, the result in *Singh* ensued not only because the claim was ancillary to removal proceedings, but also because application of section 1252(b)(9) in that case would be "perverse" as there was simply no way for the claim to be "raised efficaciously" in administrative proceedings and a PFR. *Chehazeh*, 666 F.3d at 133 n.19. Indeed, *Chehazeh* itself acknowledged that the applicability of section 1252(b)(9) depends on the nature of the claim being considered. In addressing *Aguilar*, this Court noted that because Chehazeh's claim could not "be raised efficaciously within the administrative proceedings delineated in the INA," "even under the First Circuit's reasoning in *Aguilar*, § 1252(b)(9) would, it seems, not bar review of Chehzaeh's claim." *Chehazeh*, 666 F.3d at 133 n.19. That conclusion is wholly inapplicable to right-to-counsel claims that are necessary bound up with removal proceedings and that are "routinely raised in petitions for review filed with a federal court of appeals." *J.E.F.M.*, 837 F.3d at 1033; *Aguilar*, 510 F.3d at 13 ("The frequency with which right-to-counsel claims arise in removal proceedings refutes any notion that such claims are sufficiently separate from removal proceedings."). The circumstances of this case vividly illustrate this distinction. Appellants' alleged harm has not even transpired, as their claim rests entirely on their conjectural contention that their return to Mexico will, at some point in the future, impair their right to counsel in removal proceedings. Such a claim is the

paradigmatic example of a claim that must be brought through the PFR process after the harm, should it occur, manifests itself. The results in *Chehazeh* and *Singh*, on the other hand, stem from the fact that the harms in both cases, which were tangible and which had already been inflicted, simply could not have been remedied through the PFR process, an attribute that is glaringly absent from Appellants' right-to-counsel claim.

Moreover, *Chehazeh* relied on decisions assessing habeas detention claims to reach the conclusion that section 1252(b)(9) posed no hurdle in considering the claim at issue, chiefly the Eleventh Circuit's decision in *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). *See Chehazeh*, 666 F.3d at 132-33; *Madu*, 470 F.3d at 1368 (noting that claim entailed "constitutional challenge to . . . detention"). As the Supreme Court held in *Jennings*, however, such claims are completely divorced from "the process by which . . . removability will be determined," 138 S. Ct. at 841, and are thus not subject to section 1252(b)(9). And the Ninth Circuit has similarly distinguished habeas detention claims as falling outside the scope of section 1252(b)(9). In *J.E.F.M.*, the court declined to abide by the outcome in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006) because the claim in *Nadarajah* challenged years of "detention" despite the alien prevailing at "every administrative level of review" and receiving asylum. *J.E.F.M.*, 837 F.3d at 1032. This line of habeas detention cases finding section 1252(b)(9) inapplicable, however, is of no

36

help to Appellants, who do not challenge any aspect of their detention. In sum, this case bears no resemblance to *Chehazeh*, which involved a rare set of factual circumstances collateral to removal proceedings that could not be meaningfully ameliorated through the PFR process.[10]

Sound practical reasons countenance limiting *Chehazeh* to its facts. If, as Appellants urge, section 1252(b)(9) only applies once an actual "final order of removal" has issued, Opening Br. 24, the provision would largely be rendered toothless. This is because the statute unambiguously applies to claims "arising from" removal proceedings, 8 U.S.C. § 1252(b)(9), which necessarily only accrue during removal proceedings prior to a final order of removal. After removal proceedings have concluded, though, and a final order of removal has issued, then,

---

[10] *Chehazeh* relied on a single line in *I.N.S. v. St. Cyr*, 533 U.S. 289, 313 (2001) that section 1252(b)(9) "applies only with respect to review of an order of removal." *Chehazeh*, 666 F.3d at 131-32 (quoting *St. Cyr*, 533 U.S. at 313). *St. Cyr* made this finding because petitions for judicial review are "historically distinct from habeas," and, as such, the provision did not "clearly apply to actions brought pursuant to the general habeas statute." *St. Cyr*, 533 U.S. at 313-14. In direct response to *St. Cyr*, Congress, after observing that the decision created "bifurcated and inefficient review," resulting in "piecemeal review, uncertainty, lack of uniformity, and a waste of resources," passed the REAL ID Act to reaffirm that all claims, including habeas claims, arising from removal proceedings must be "channel[ed]" "to the courts of appeals" to restore "order and common sense to the judicial review process." H.R. Rep. No. 109-72 at 174. Because Congress explicitly extinguished the continuing vitality of *St. Cyr*, finding that the decision undermined the very Congressional purpose animating section 1252(b)(9), the statements in *St. Cyr* concerning the scope of section 1252(b)(9) should be given little weight.

by definition, it is no longer possible for any claims to "arise[]," *id.*, since the process has concluded. This case highlights why the constraints Appellants propose to place on section 1252(b)(9) are untenable in light of the statutory text. Appellants' contention is that their right to counsel at "their removal proceedings," will be impaired, not that their right to counsel will somehow be transgressed after they are adjudged removed and their removal proceedings have ended. JA12. Cognizant of the fact that artificial limits, like the limits Appellants advocate for, would vitiate section 1252(b)(9), *Aguilar* rebuffed any attempt to place temporal limitations on the reach of section 1252(b)(9), as "nothing in the statute limits its reach to claims arising from extant removal proceedings," and "such a reading would render the word 'action' superfluous and effectively excise it from the statute." 510 F.3d at 10. Similarly, the interpretation Appellants urge this court to adopt robs the phrase "arising from" of all meaning, and Appellants have thus failed to "give effect to every word" of section 1252(b)(9). *Shalom Pentecostal Church v. Acting Sec. U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 165 (3d Cir. 2015).

In addition, accepting Appellants' position would make section 1252(b)(9) duplicative of section 1252(a)(5), which states that a PFR "shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). On its face, section 1252(a)(5), which merely provides the "vehicle" for judicial review, *J.E.F.M.*, 837 F.3d at 1031, only applies to the actual "order of removal." 8

U.S.C. § 1252(a)(5). Section 1252(b)(9), meanwhile, defines the "scope of judicial review," *J.E.F.M.*, 837 F.3d at 1031, as all "questions of law and fact" that "arise[] from" removal proceedings, which are channeled into the PFR process articulated in section 1252(a)(5). 8 U.S.C. § 1252(b)(9). Yet, if section 1252(b)(9) was limited in the manner that Appellants suggest, then section 1252(b)(9) would, contrary to its express purpose, not apply to any claims raised prior to the conclusion of removal proceedings, as no final order of removal would have issued. *See J.E.F.M.*, 837 F.3d at 1030 (noting that section 1252(b)(9) is a "judicial review mechanism" "designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeal[s]" (emphasis in original)). And because no claims related to the removal process can, as a factual matter, arise after removal proceedings have ended, section 1252(b)(9) would be reduced to prescribing review of the removal order itself in a PFR. That interpretation "would render another section of the INA" "largely, if not entirely superfluous"—namely section 1252(a)(5)—which is yet another reason to reject Appellants' argument. *Shalom Pentecostal*, 783 F.3d at 165. Restricting application of section 1252(b)(9) to cases where a final order of removal has issued would therefore resurrect the chief evil that Congress eschewed in promulgating section 1252(b)(9): "scattershot and piecemeal" "review" of "removal proceedings." *Aguilar*, 510 F.3d at 9; *see also*

*Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) ("[The Real ID Act] effectively limit[s] all aliens to one bite of the apple . . . in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal."); *Mochama v. Zwetow*, No. 14-2121-KHV, 2017 WL 36363, at *6 (D. Kan. Jan. 3, 2017) ("The First Circuit reasoned that allowing aliens to ignore the channeling provisions of Section 1252(b)(9) and to bring right-to-counsel claims directly in district court would result in precisely the type of fragmented litigation that Congress sought to forbid. This Court agrees.").

Appellants assert that because removal proceedings are limited to the "administrative record on which the order of removal is based," 8 U.S.C. § 1252(b)(4)(A), they cannot "document the independent legal harm imposed" and thus their claim is "effectively unreviewable." Opening Br. 31. This contention is belied by the fact that "[r]ight-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals," "[i]n part . . . because immigration judges have an obligation to ask whether a petitioner wants counsel." *J.E.F.M.*, 837 F.3d at 1033; *Aguilar*, 510 F.3d at 13 ("Challenges to removal orders premised on the government's putative violation of an alien's right to counsel are commonplace, and such claims are often featured in petitions for judicial review of removal orders."). There is accordingly no practical reason why Appellants cannot raise any alleged harm to their attorney-client relationship, should such harm occur,

in proceedings before the IJ, ensuring that this claim is far afield from the class of claims that are "effectively unreviewable." Opening Br. 31; JA17 ("[Appellants] can present to the BIA and the [c]ourt of [a]ppeals any claim that transfer to Mexico under MPP undermines their due process rights in their underlying removal proceedings.").

Appellants further suggest that the title of section 1252(b), "Requirements for Review of Orders of Removal," operates to govern and narrow the scope of section 1252(b)(9). Opening Br. 25-26. But it is a "well-settled rule of statutory interpretation that titles and section headings cannot limit the plain meaning of statutory text where that text is clear." *M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark*, 344 F.3d 335, 348 (3d Cir. 2003). Here, the plain text of section 1252(b)(9), supported by the rationale underpinning Congress's decision to enact this channeling provision, extends beyond orders of removal to "all questions of law and fact" that "arise[] from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), language that, on its face, reaches Appellants' right-to-counsel claim. Appellants also rely on a district court decision, *Arroyo v. U.S. Dep't of Homeland Sec.*, No. SACV 19-815 JGB (SHKx), 2019 WL 2912848, at *13-*14 (C.D. Cal. June 20, 2019), in an attempt to bolster their position. *See* Opening Br. 27-28. As the Government has demonstrated, though, the analysis in *Arroyo* is at odds with *J.E.F.M.*, which constitutes binding Ninth Circuit that the

court in *Arroyo* was required to heed, as well as the remaining decisions issued by the Courts of Appeals that have considered this question.

In sum, extending the holding in *Chehazeh* to this case is inconsistent with the plain text of section 1252(b)(9) and would create a circuit split, placing this Court firmly on the wrong side of the divide. It would also create "precisely the type of fragmented litigation that Congress sought to forbid." *Aguilar*, 510 F.3d at 14. This Court should therefore affirm the district court's decision dismissing Appellants' right-to-counsel claim under section 1252(b)(9) for lack of subject matter jurisdiction.

### III. The District Court Correctly Concluded That It Lacked Jurisdiction Over Appellants' Claim that MPP Violates Non-Refoulement Procedures.

In both their mandamus petition and their preliminary injunction motion, Appellants argued that MPP is arbitrary and capricious under the APA primarily because MPP requires an "individual affirmatively state a fear of return" before receiving a fear interview. JA49-50; JA79. As the district court found, however, this portion of the claim became "moot," once both Appellants received a fear assessment interview, and Appellants do not challenge this conclusion on appeal. JA16; *see also Brown v. Philadelphia Housing Auth.*, 350 F.3d 338, 347 (3d Cir. 2003).

Appellants now appear to argue that the remainder of their claim arises directly under the "CAT" and other related treaties. Opening Br. 39-41. As an initial matter, Appellants asserted this claim solely under the APA in their written submissions below, *see* JA49-50, 76-79, and cannot now, for the purposes of appeal, pivot to a new cause of action. *See Lampon-Paz v. Dep't of Homeland Sec.*, 612 F. App'x 73, 76 (3d Cir. 2015). And, in any event, such treaties could not provide a cause of action because international agreements "do not create private rights or provide for a private cause of action in domestic courts." *Gross v. German Foundation Indus. Initiative*, 549 F.3d 605, 615 (3d Cir. 2008); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 738 (2004). To the "extent" Appellants' claim could be construed as arising under the CAT, JA16, the district court correctly found that it was precluded from entertaining this claim because the only mechanism for raising CAT claims is in the removal context under section 1252(a)(4), which states that a PFR is the "sole and exclusive means for judicial review of any cause or claim under the CAT." 8 U.S.C. § 1252(a)(4); JA16. Appellants below "confirmed" that "the CAT supplies the legal basis for all of their other non-refoulement claims," JA16-17, so it is clear that the district court acted properly in dismissing these claims. Appellants' only rejoinder is to repeatedly allude to "domestic statutes that uphold" the obligations imposed under the CAT, Opening Br. 38, 41, but they never specify

what those domestic statutes are.[11]  Though Appellants appear to hinge their argument on the "withholding of removal statute," JA374, Opening Br. 38-39, as its name suggests, that statute only applies "when an alien is ordered removed," not when an alien is returned during the pendency of removal proceedings.  8 U.S.C. § 1231(a);  8  U.S.C. § 1231(b)(3)  ("[T]he  [Secretary]  may  not  remove . . . ."); *see also Matter of I-S- & C-S-*, 24 I. & N. Dec. 432, 434 (BIA 2008).  Furthermore, affirming the dismissal of this claim is consistent with the mandate that courts must tread lightly "in the realm of international law," and allow Congress to "determine  in  the  first  instance"  whether  and  how  claims  premised  upon international law violations should be raised.  *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402-1403 (2018).

Finally, in the event Appellants attempt to contend that, as a general matter, the "procedural safeguards" implemented by MPP regarding non-refoulement are inadequate and inconsistent with the APA, Opening Br. 39, such a claim would also be immunized from judicial review.  As demonstrated in Section IV, *supra*, MPP is authorized  by  statute.    Because  the  INA  specifically  sanctions  MPP,  the implementation of MPP is not subject to judicial review.  Specifically, it is beyond

---

[11] Appellants also reference the 1951 Convention Relating to the Status of Refugees, *see* Opening Br. 38, 40-41, but did not identify this document below as a basis for their non-refoulement claim.  *See* JA77.

dispute that the discretionary decision to exercise the contiguous return authority is entrusted exclusively to the Secretary. *See* 8 U.S.C. § 1225(b)(2)(C) ("[T]he [Secretary] *may* return the alien to that territory pending a proceeding under section 1229a of this title." (emphasis added)). Because this lawful statutory authority can only be exercised "in the discretion of the . . . Secretary," the INA proscribes judicial review of return decisions. 8 U.S.C. § 1252(a)(2)(B)(ii); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 203, 205 (3d Cir. 2006) ("[The statute] states that the Secretary of Homeland Security . . . *may* revoke approval of a petition . . . . [W]e have no difficulty concluding that the decision . . . is left to the discretion of the Secretary of Homeland Security. And so, pursuant to § 1252(a)(2)(B)(ii), the District Court correctly held that it lacked jurisdiction to review this administrative decision." (emphasis in original)); 5 U.S.C. § 701(a) (APA does not apply to "agency action" that "is committed to agency discretion by law" or if "statutes preclude judicial review"). Importantly, this prohibition on review is not confined to the actual return decision itself, but also to the procedures, including the relevant non-refoulement procedures, used to arrive at return determinations. *See Bourdon v. Dep't of Homeland Sec.*, No. 17-15787, 2019 WL 4865825, at *5 (11th Cir. Oct. 3, 2019) ("If a court can dictate which arguments the Secretary must entertain or how the Secretary weighs evidence, then the Secretary can hardly be said to have . . . discretion."); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) ("It does

not matter that Plaintiff characterizes his claims as challenges to the substantive standards that the Secretary uses. The standards by which the Secretary reaches a decision within his or her ... discretion ... are just as unreviewable as the Secretary's ultimate decisions themselves.").

An independent reason Appellants' non-refoulement claim is not cognizable is that the non-refoulement procedures set forth by MPP were followed in this case, including supervisory asylum officer review and an interview in a non-adverse setting. *See* Opening Br. 10; JA4. Because those procedures were fulfilled, the sufficiency of those procedures is not subject to judicial review under "the principle of non-inquiry" as "such humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts." *Hoxha v. Levi*, 465 F.3d 554, 563-64 (3d Cir. 2006). Applying that principle here, once the asylum officers adhered to the non-refoulement procedures mandated by MPP and concluded that Appellants "did not establish a clear probability of torture or persecution on account of a protected ground," JA4, "the court's inquiry shall have reached its end." *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956-57 (9th Cir. 2012) (en banc). The district court found that section 1252(a)(2)(B)(ii) did not apply because of the "mandatory nature of the Government's non-refoulement obligations." JA16. However that conclusion would only apply, at most, to the ultimate return decision itself if in fact an officer determined that an alien faced a

clear probability of persecution on account of a protected ground or torture if returned to Mexico. *See* FARR Act § 2242(a), 112 Stat. 2681–822 (providing that removal or return is contrary to "United States" "policy" only if "there are substantial grounds for believing the person would be in danger of being subjected to torture"). Appellants do not challenge the ultimate return decisions on appeal. And, in any event, the ultimate return decisions are shielded from judicial review under the rule of non-inquiry.

## IV. MPP is Authorized by Statute.

The sole remaining claim on appeal is Appellants' assertion that MPP lacks "statutory authorization." Opening Br. 32. The district court found that it did not "have jurisdiction to hear this claim" under section 1252(b)(9) and proceeded to dismiss this claim because the "classification decision" to place an alien in expedited or full removal proceedings is an "action taken" "to remove an alien." JA13-14. That decision is sound, given that the term "action taken" is broader than the term "proceeding brought" in section 1252(b)(9), JA14. Otherwise, the word "action" would be rendered "superfluous" and "effectively excise[d] . . . from the statute." *Aguilar*, 510 F.3d at 10. In any event, Appellants now disavow that they are challenging the "classification decision," Opening Br. 37, ensuring that the only contention they now advance pertaining to this claim is that there was no "statutory authority" to "return" Appellants. *Id.*

Because it is well-settled that this Court may affirm on "any grounds supported by the record," *Hassen*, 861 F.3d at 114, this Court should find that contrary to Appellants' assertion, MPP is squarely authorized by the INA.[12] Affirmance on alternative grounds is particularly appropriate with respect to this claim for two distinct reasons. First, the parties fully briefed the merits of this issue below, *see* JA73-76, JA263-66, and Appellants also addressed the merits of this claim in their opening brief, *see* Opening Br. 34 ("[T]he statute does not authorize applying the MPP to individuals who enter the United States as arriving aliens under subparagraph 1225(b)(1)."), so no "prejudice" will ensue. *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 701 (3d Cir. 2018). Second, whether MPP is authorized by statute is a pure question of law not dependent upon any factual development, and because the district court "dismiss[ed]" this claim, JA17, the claim arises in a posture that affords Appellants "significant[]" "protections" at the motion-to-dismiss stage. *Humphrey*, 905 F.3d at 701; *Mahmood v. Gonzales*, 427 F.3d 248, 253 (3d Cir. 2005) ("When the outcome is clear as a matter of law . . . remand is not necessary.").

---

[12] The government argued below that section 1252(g) operated to divest the court of subject matter jurisdiction over this claim, but the district court declined to "resolve this question." JA14.

The conclusion that MPP is statutorily authorized flows directly from the text and structure of section 1225, as well as longstanding rules of background prosecutorial discretion. As a threshold matter, when an individual arrives at a port of entry, "the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 138 S. Ct. at 836; 8 U.S.C. § 1225(b)(1)(A)(i) ("If an immigration officer *determines* that an alien . . . is inadmissible . . . the officer shall order the alien removed from the United States without further hearing or review." (emphasis added)); 8 U.S.C. § 1225(b)(2)(A)("[I]f the examining immigration officer *determines* that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (emphasis added)). Thus, applicants for admission possess no innate characteristics that require them to be placed in expedited removal proceedings under section 1225(b)(1) or full removal proceedings under section 1225(b)(2). Indeed, it is well-settled that "DHS has discretion to put aliens" in full removal proceedings under section 1225(b)(2) "even though they may also be" eligible for expedited removal proceedings under section 1225(b)(1). *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. at 523; *see also Matter of M-S-*, 27 I. & N. Dec. 509, 510 (A.G. 2019) ("[I]f the alien is inadmissible on one of two specified grounds and meets certain additional criteria, DHS may place him in either expedited or full

proceedings."). Appellants themselves concede that "ICE had discretion to place Appellants in standard removal proceedings." Opening Br. 33.

Thus, whether aliens are placed in either expedited or full removal proceedings is a direct byproduct of the initial inspection decision made by an immigration officer. If an immigration officer finds that an alien is inadmissible, then that officer must "determine[]" whether to place the alien in either expedited removal proceedings under section 1225(b)(1) or full removal proceedings pursuant to section 1225(b)(2). 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. § 1225(b)(2)(A). Once the decision is made to place aliens, like Appellants, in full removal proceedings, then they are clearly subject to section 1225(b)(2)(A), which states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a" full removal proceeding. And section 1225(b)(2)(C), which works in tandem with section 1225(b)(2)(A) and is at the heart of the parties' dispute, states that "[i]n the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the [Secretary] may return the alien to that territory pending a proceeding under section 1229a of this title." Taken together, the contiguous return authority outlined in section 1225(b)(2)(C) can be lawfully exercised with respect to any unadmitted alien who is placed in full removal proceedings. It is uncontroverted

that Appellants were issued "Notices to Appear" and placed in full removal proceedings. JA3; Opening Br. 34 ("Appellants do not challenge the authority of ICE to put them into standard removal."). Thus, the INA plainly authorizes the application of MPP to Appellants.

Appellants readily admit that immigration officers had "discretion to place" them in full "removal proceedings" even though they were eligible to be placed in expedited removal by virtue of "having no entry documents." Opening Br. 33-34. They nonetheless ask this Court to find that they are excepted from the application of MPP because of section 1225(b)(2)(B), which delineates three situations in which section 1225(b)(2)(A) "shall not apply." Relevant here, subsection (ii) of section 1225(b)(2)(B) states that "[Section 1225(b)(2)(A)] shall not apply to an alien to whom paragraph [(b)](1) applies." Appellants argue that because section 1225(b)(1) necessarily "applies" to them, they are not subject to sections 1225(b)(2)(A) or (C). Opening Br. 35.

The flaw in this argument is ascertaining whether section 1225(b)(1) or section 1225(b)(2) "applies" depends entirely upon "the processing decision made during the inspection process," *Innovation Law Lab*, 924 F.3d at 508, because both parties agree that aliens eligible for expedited removal under section 1225(b)(1) can still be processed for full removal proceedings under section 1225(b)(2). *See* Opening Br. 34. That is precisely what happened here, and because a discretionary

decision was made to place Appellants in full removal proceedings under section 1225(b)(2), it follows, *a fortiori*, that section 1225(b)(1) does not "appl[y]" to them. 8 U.S.C. § 1225(b)(2)(B)(ii). Instead, the purpose of section 1225(b)(2)(B)(ii) becomes readily apparent when examining the structure of section 1225. Section 1225(b)(1) mandates that aliens placed in expedited removal proceedings shall be removed "without further hearing or review," while section 1225(b)(2)(A) provides that any alien who is "not clearly and beyond a doubt entitled to be admitted" is entitled to be placed in full removal proceedings. 8 U.S.C. § 1225(b)(2)(A). In the absence of section 1225(b)(2)(B)(ii), then, an alien placed in expedited removal proceedings and ordered summarily removed would simultaneously be eligible for a full removal proceeding, complete with a hearing. To eliminate that incongruent result, Congress penned section 1225(b)(2)(B)(ii), which simply makes clear that an alien placed in expedited removal is "not entitled" to a full removal proceeding and any attendant procedural safeguards. *Innovation Law Lab*, 924 F.3d at 508. But there is no basis to believe, as Appellants contend, that section 1225(b)(2)(B)(ii) operates as a constraint on the basic background discretion to place individuals like Appellants who are eligible for expedited removal proceedings under section 1225(b)(1) into full removal proceedings under section 1225(b)(2).

Appellants also briefly note that the title of section 1225(b)(2) is "Inspection of Other Aliens," while the title of section 1225(b)(1) is narrower and entitled

"Inspection of Aliens Arriving in the United States and Certain Other Aliens Who Have Not Been Admitted or Paroled." Opening Br. 35. Those titles, however, prove little other than reinforcing the role of section 1225(b)(2) as being "broader" than section 1225(b)(1) and "serv[ing] as a catchall provision that applies to all applicants for admission not" placed in expedited removal proceedings under "§ 1225(b)(1)." *Jennings*, 138 S. Ct. at 837. Thus, the reference to "[o]ther [a]liens" in the title of section 1225(b)(2) simply refers to aliens who are not processed for expedited removal under section 1225(b)(1), and the statute "create[s] two mutually exclusive *post-inspection* categories . . . . [T]hose who are not processed for expedited removal under § 1225(b)(1) are the 'other aliens' subject to the general rule of § 1225(b)(2)." *Innovation Law Lab*, 924 F.3d at 509 (emphasis in original); JA13 ("[Because] [t]here is overlap between the aliens who fall within these two statutory provisions . . . . The classification matters . . . ."). Since Appellants were processed for full removal proceedings, not expedited removal proceedings, they fall into the category of "[o]ther [a]liens" described in section 1225(b)(2). For this reason, the Ninth Circuit, in a published opinion, specifically rejected the argument Appellants make in finding that MPP is statutorily authorized in the context of granting the government's motion for an emergency stay of a preliminary injunction. *See Innovation Law Lab*, 924 F.3d at 509 ("The plaintiffs were not processed under

§ 1225(b)(1). We are doubtful that subsection (b)(1) 'applies' to them merely because subsection (b)(1) *could have been* applied." (emphasis in original)).

Because the INA unambiguously allows the Secretary to exercise discretionary authority in returning aliens in full removal proceedings to the contiguous territory from which they arrived, and because it is undisputed that Appellants were placed in full, not expedited, removal proceedings, the statutory authority to return Appellants to Mexico under MPP was properly exercised in this case.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision.

Date: October 11, 2019               Respectfully submitted,

                                     JOSEPH H. HUNT
                                     Assistant Attorney General
                                     Civil Division

                                     WILLIAM C. PEACHEY
                                     Director

                                     EREZ REUVENI
                                     Assistant Director

                                     */s/ Archith Ramkumar*
                                     ARCHITH RAMKUMAR
                                     Trial Attorney
                                     Office of Immigration Litigation

U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-8060
Archith.Ramkumar@usdoj.gov

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Archith Ramkumar, pursuant to Local Appellate Rule 46.1(e), hereby

certify that I am counsel of record and am an attorney for the Federal Government

and am thus exempt from the requirement of being a member of the bar of the

United States Court of Appeals for the Third Circuit.

Date: October 11, 2019                */s/ Archith Ramkumar*

                                    ARCHITH RAMKUMAR
                                    Trial Attorney
                                    Office of Immigration Litigation
                                    U.S. Department of Justice
                                    P.O. Box 868, Ben Franklin Station
                                    Washington, DC 20044
                                    (202) 598-8060
                                    Archith.Ramkumar@usdoj.gov

## <u>CERTIFICATE OF WORD COUNT</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

      The brief contains 12,968 words, excluding the parts of the brief exempted
      by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and typestyle requirements of Fed. R.
      App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because:

      The brief has been prepared in a proportionally spaced typeface using Word
      2010 in fourteen-point Times New Roman.


Date: October 11, 2019          */s/ Archith Ramkumar*
                                ARCHITH RAMKUMAR
                                Trial Attorney
                                Office of Immigration Litigation
                                U.S. Department of Justice
                                P.O. Box 868, Ben Franklin Station
                                Washington, DC 20044
                                (202) 598-8060
                                Archith.Ramkumar@usdoj.gov

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, Archith Ramkumar, hereby certify that the text of this electronic brief is identical to the text of the original hard copies that will be dispatched by hand delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit.

Date: October 11, 2019

/s/ Archith Ramkumar
ARCHITH RAMKUMAR
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-8060
Archith.Ramkumar@usdoj.gov

## <u>CERTIFICATE OF PERFORMANCE OF VIRUS CHECK</u>

I, Archith Ramkumar, hereby certify that on October 11, 2019, I caused a

virus check to be performed on the electronically filed copy of this brief using the

following virus software: Symantec Endpoint, v.14.  No virus was detected.


Date:  October 11, 2019          */s/ Archith Ramkumar*
                                 ARCHITH RAMKUMAR
                                 Trial Attorney
                                 Office of Immigration Litigation
                                 U.S. Department of Justice
                                 P.O. Box 868, Ben Franklin Station
                                 Washington, DC 20044
                                 (202) 598-8060
                                 Archith.Ramkumar@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 11, 2019, I filed the foregoing brief with the Third

Circuit's electronic court filing system, which served electronic versions of the brief

on all counsel of record.


Date: October 11, 2019                */s/ Archith Ramkumar*
                                     ARCHITH RAMKUMAR
                                     Trial Attorney
                                     Office of Immigration Litigation
                                     U.S. Department of Justice
                                     P.O. Box 868, Ben Franklin Station
                                     Washington, DC 20044
                                     (202) 598-8060
                                     Archith.Ramkumar@usdoj.gov