No. 19-2927

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

EMERSON OBED HERNANDEZ CULAJAY, and
M.S.H.S., a minor child,

*Plaintiffs-Appellants*

v.

KEVIN K. MCALEENAN, Acting Secretary,
United States Department of Homeland Security, et al.

*Defendants-Appellees.*

On Appeal from Order of the United States District Court
for the Eastern District of Pennsylvania
No. 5:19-cv-03204-JDW
Honorable Joshua D. Wolson

## APPELLANTS' REPLY BRIEF

ANTHONY VALE
MICHAEL S. DEPRINCE
PEPPER HAMILTON LLP
3000 Two Logan Square
Philadelphia, Pennsylvania 19103
Telephone: 215.981.4000

TOBIAS BARRINGTON WOLFF
3501 Sansom Street
Philadelphia, Pennsylvania 19104
Telephone: 215.898.7471

BRIDGET CAMBRIA
CAMBRIA & KLINE, P.C.
532 Walnut Street
Reading, Pennsylvania 19601
Telephone: 484.926.2014

AMY MALDONADO
LAW OFFICE OF AMY MALDONADO
333 Albert Avenue, Suite 610
East Lansing, Michigan 48823
Telephone: 517.803.2870

*Attorneys for Appellants*

# TABLE OF CONTENTS

ARGUMENT ........................................................................................... 1

    A.    The District Court Had Subject-Matter Jurisdiction To Enforce the *Flores* Settlement and To Hear Minor Appellant M.S.H.S.'s Claims Regarding Her Custody and Detention as a *Flores* Class Member.................................................................................................. 1

        1.    Appellant's Claims Under the *Flores* Consent Decree Arise Under Federal Law and Are Authorized by Paragraph 24(B) of the Decree. .................................................. 1

        2.    The Authorities on Which the Government Relies Are Inapt........................................................................................ 4

        3.    The Court Below Misconstrued Paragraph 24(B) of the *Flores* Decree.......................................................................... 9

        4.    The Requirements of Alienage Jurisdiction Under 28 U.S.C. § 1332(a)(2) Are Satisfied........................................... 14

    B.    The District Court Had Subject-Matter Jurisdiction over Appellants' Constitutional and Statutory Claims Based on Interference with an Existing Attorney-Client Relationship. ............ 15

    C.    The District Court Had Subject-Matter Jurisdiction over Appellants' Claims that Their Forced Return to Mexico Would Violate Their Statutory and Constitutional Rights............................ 19

    D.    The District Court Had Subject-Matter Jurisdiction over Appellants' Claims that MPP Violates Guarantees of Non-Refoulement and Lacks Necessary Procedural Safeguards. .............. 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007) .............................................................15

*Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) ...............8, 9, 10

*Arizona v. United States*, 567 U.S. 387 (2012)........................................................7

*Arroyo v. United States Department of Homeland Security*, No. SACV
    19-815, 2019 U.S. Dist. LEXIS 111869 (C.D. Cal. June 20, 2019) .................15

*Bartlett v. Honeywell Int'l*, 737 Fed. App'x 543 (2d Cir. 2018) ..............................7

*Chehazeh v. Attorney General*, 666 F.3d 118 (3d Cir. 2012)..................................15

*Clearfield Trust v. United States*, 318 U.S. 363 (1943)............................................2

*D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016)........................................................12

*Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501
    F.2d 917 (3d Cir. 1974) ....................................................................................17

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019)......................................27

*Gunn v. Minton*, 568 U.S. 251 (2013) ...........................................................6, 7, 8

*Harbison v. Bell*, 556 U.S. 180 (2009) ..................................................................22

*Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008).........................................25

*Illinois v. City of Milwaukee*, 406 U.S. 91 (1971) ..................................................4

*In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241 (3d Cir. 2009).................24

*J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559 (E.D. Va. 2018) .......................................12

*J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)..................................................15

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ...........................................17, 18, 21

*Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992)................................24

*King v. Burwell*, 135 S. Ct. 2480 (2015)....................................................................25

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1984).......................4, 5

*Maldonado v. Lloyd*, No. 18-cv-3089, 2018 WL 2089348 (S.D.N.Y. May 4, 2018).....................................................................................................12

*Mamouzian v. Ashcroft*, 390 F.3d 1129 (9th Cir. 2004).........................................22

*Munoz v. Mabus*, 630 F.3d 856 (9th Cir. 2010)..........................................................5

*Nelson v. Pennsylvania*, 125 F. App'x 380 (3d Cir. 2005)........................................4

*Padilla v. Rumsfeld*, 352 F.3d 695 (2d Cir. 2003)....................................................11

*In re Phar-Mor Inc. Sec. Litig.*, 172 F.3d 270 (3d Cir 1999) ...................................4

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) .......................................................11, 12

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................12

*Shaffer v. GTE North, Inc.*, 284 F.3d 500 (3d Cir. 2002) .........................................4

*Shaffer v. Veneman*, 325 F.3d 370 (D.C. Cir. 2003)..................................................6

*Skurtu v. Mukasey*, 552 F.3d 651 (8th Cir. 2008)....................................................15

*Slaughter v. U.S. Dep't of Agriculture*, 555 F. App'x 927 (11th Cir. 2014) (per curiam) .............................................................................................6

*United States v. Little Lake Misere Land Co.*, 412 U.S. 580 (1973)................2, 3, 4

*W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018).....................................12

**STATUTES**

5 U.S.C. § 706(2)(A)..................................................................................................23

8 U.S.C. § 1225(b)(1)................................................................................20, 21, 22

8 U.S.C. § 1225(b)(1)(B)(ii)......................................................................................22

8 U.S.C. § 1225(b)(2)................................................................................20, 21, 22

8 U.S.C. § 1225(b)(2)(B) ..........................................................................................21

8 U.S.C. § 1225(b)(2)(C) ............................................................20

8 U.S.C. § 1229a(b)(4)(A) .........................................................24

8 U.S.C § 1229a(b)(4)(B) ..........................................................25

8 U.S.C. § 1231(b)(3) ...........................................................23, 25

8 U.S.C. § 1252(b)(9) ................................................................18

28 U.S.C § 1331 ...............................................................1, 24, 27

28 U.S.C. § 1332(a)(2) ..............................................................14

INA § 243(h) (1980) .................................................................26

Pub. L. No. 104-208, 110 Stat. 3009 (1996) ............................26

## REGULATIONS

8 C.F.R. §§ 208.16(a) ................................................................23

8 C.F.R. § 208.30(f) ..................................................................22

8 C.F.R. § 1208.16(a) ................................................................23

## OTHER AUTHORITIES

H.R. Rep. No. 104-469, pt. 1 (1996) ........................................23

## ARGUMENT

**A.** **The District Court Had Subject-Matter Jurisdiction To Enforce the *Flores* Settlement and To Hear Minor Appellant M.S.H.S.'s Claims Regarding Her Custody and Detention as a *Flores* Class Member.**

The government takes the position in its response that a suit to enforce the terms of a federal consent decree being administered on an ongoing basis by a U.S. district court—a decree that binds the United States and its agents, defines their duties in relation to migrants who arrive at the U.S. border and are subsequently held at federal detention facilities, and expressly provides that its provisions may be enforced in other U.S. district courts around the country—must be filed by Minor Appellant M.S.H.S. in a Pennsylvania state court rather than the Eastern District of Pennsylvania. This proposition is as wrong as it sounds. The district court had subject-matter jurisdiction over Appellant's *Flores* claims on multiple grounds.

1. Appellant's Claims Under the *Flores* Consent Decree Arise Under Federal Law and Are Authorized by Paragraph 24(B) of the Decree.

The district court has jurisdiction over Appellant's *Flores* claims under the federal question statute, 28 U.S.C § 1331. Appellant's *Flores* claims concern the duties of the U.S. government under an ongoing federal consent decree that is governed by federal common law and defines the rights of migrants arriving at the U.S. border—migrants who are seized by federal officials, detained in

federal facilities, threatened with removal to other nations, and either granted or denied access to federal asylum proceedings. This is a claim that arises under federal law, involves substantial federal questions, and implicates vital federal interests in an arena over which federal law has exclusive and preemptive authority. As Appellants explained in their opening brief, *Flores* claims arise under federal law and can be heard in a federal district court. *See* Opening Br. at 15-23. Nothing in the government's papers casts doubt on that proposition.

The government apparently does not deny that the rights, obligations and duties of the parties to the *Flores* agreement are governed by federal common law. *See* Resp. Br. at 19-20. That concession was a necessary one, given the long line of cases in which the Supreme Court has found that contracts of the United States that bind the government, define its rights and obligations, and address matters that demand uniformity throughout the United States are the product of federal common law rather than the common law of individual states. *See, e.g.,* *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 592-94 (1973); *Clearfield Trust v. United States*, 318 U.S. 363, 367 (1943). The *Flores* agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." (JA180, ¶ 9). The need for a uniform national rule of decision—and hence the controlling authority of federal common law—is woven throughout the agreement.

This concession is dispositive.  To say that the *Flores* consent decree is governed by federal common law is not merely to describe some technical rule of construction.  It is to say that the rights, obligations and duties under that contract have binding force as federal law.  Contracts do not bind parties through some brooding omnipresence of general obligation; they bind parties when a specific source of law makes their provisions binding.  When a contract is governed by federal common law, federal law provides the positive authority that gives force to its provisions.  Thus, a claim arising out of such a contract is a claim that arises directly under federal law.  The Supreme Court has put the matter succinctly:

> Since *Erie*, and as a corollary of that decision, we have consistently acted on the assumption that dealings which may be 'ordinary' or 'local' as between private citizens raise serious questions of national sovereignty when they arise in the context of a specific constitutional or statutory provision; particularly is this so when transactions undertaken by the Federal Government are involved, as in this case.  In such cases, the Constitution or Acts of Congress "require" otherwise than that state law govern of its own force.

*Little Lake Misere Land Co*., 412 U.S. at 592-93.  The dealings between the U.S. government and migrants arriving at U.S. borders to request asylum raise "serious questions of national sovereignty" and bear on myriad "specific constitutional [and] statutory provision[s]" defining the powers and duties of the government and the rights of these vulnerable children.  *Id*. at 592.  To say that the *Flores* decree

defines the obligations of the United States is to say that "the Constitution or Acts of Congress 'require' otherwise than that state law govern of its own force." *Id.* at 592-93. These are federal common law claims, and federal question jurisdiction extends to "claims founded upon federal common law." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1971).

2. The Authorities on Which the Government Relies Are Inapt.

In attempting to argue the contrary, the government invokes a series of cases that are either inapt or do not stand for the propositions the government suggests. The government places primary reliance on *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1984), and decisions from this Court applying its holding, *see Shaffer v. GTE North, Inc.*, 284 F.3d 500 (3d Cir. 2002); *In re Phar-Mor Inc. Sec. Litig.*, 172 F.3d 270 (3d Cir 1999); *Nelson v. Pennsylvania*, 125 F. App'x 380, 382 (3d Cir. 2005). All of these cases involved prosaic settlement agreements resolving individual claims "that produced the dismissal of an earlier federal suit." *Kokkonen*. 511 U.S. at 379. As the Court went on to explain:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and

ancillary jurisdiction to enforce the agreement would
therefore exist.

*Id.* at 381. That "quite different" situation describes the *Flores* consent decree, as

the government acknowledges. *See* Resp. Br. at 20 ("The Central District of

California similarly 'retain[s] jurisdiction' over *Flores* and claims seeking to

enforce the FSA until the court determines that 'substantial compliance with' the

FSA has been achieved."). *Flores*, in turn, expressly authorizes enforcement of its

provisions by other federal district courts around the country. (*See* JA188–189,

¶ 24(B)). Nonetheless, the government invites this Court to treat the *Flores*

consent decree as though it were just another settlement resolving individual

claims in a private dispute. *Kokkonen* itself makes clear that this characterization

is wholly inapt.

     The government then cites to a series of cases that, it says, stand for

the following proposition:

> [T]he conclusion that a claim seeking enforcement of a
> settlement agreement is insufficient, standing alone, to
> confer subject matter jurisdiction upon a district court
> does not change even if the United States or one of its
> agencies is a party to the relevant settlement agreement
> or consent decree.

Resp. Br. at 19. Two of the cases that the government cites do not relate to the

original subject-matter jurisdiction of federal district courts but rather to the

sovereign immunity of the United States. *See Munoz v. Mabus*, 630 F.3d 856, 860-

61 (9th Cir. 2010) ("We join our sister circuits in holding that Congress' waiver of sovereign immunity under Title VII does not extend to suits to enforce settlement agreements entered into without genuine investigation, reasonable cause determination, and conciliation efforts by the EEOC."); *Shaffer v. Veneman*, 325 F.3d 370, 473 (D.C. Cir. 2003) ("Shaffer's argument for subject matter jurisdiction under the APA fails for another reason. This Court and others have interpreted the Tucker Act as providing the *exclusive* remedy for contract claims [for damages in excess of $10,000] against the government, at least *vis a vis* the APA." (internal quotation omitted)). There is no issue of sovereign immunity in this case. The third case cited by the government based its holding on the fact that the district court that issued the disputed consent decree had "reserved jurisdiction to enforce Consent Decree violations" only to itself. *Slaughter v. U.S. Dep't of Agriculture*, 555 F. App'x 927, 929 (11th Cir. 2014) (per curiam). As Appellants set forth in their opening brief, cases from other circuits and district courts that speak directly to the question have held that a claim seeking enforcement of a federal consent decree that binds the United States and defines its duties and obligations is one that arises under federal law. *See* Opening Br. at 19-21.

The government also suggests that Appellant's claims under the *Flores* decree raise no substantial issue of federal law as that term is used in *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court's most recent major ruling on

federal question jurisdiction.  This is incorrect.  First, as discussed above and in

Appellants' opening brief, a claim arising under a consent decree governed by

federal common law is a claim that arises directly under federal law.  It is not

necessary for the consent decree to make reference to other federal statutes or

regulations in defining the duties that bind the United States.  The duties set forth

in the consent decree are themselves the product of federal common law, so

controlling questions arising under that decree constitute substantial and

dispositive issues of federal law.

Second, the *Gunn v. Minton* standard is satisfied here even apart from

that proposition.  The *Flores* decree defines the obligations of a federal agency and

its officials in the field of immigration, detention and applications for asylum.

These are areas where the United States exercises plenary power, as the

government regularly insists, *see* Resp. Br. at 5-6, and where questions of removal

of aliens have been the subject of powerful federal preemption.  *See, e.g.*, *Arizona

v. United States*, 567 U.S. 387 (2012) (holding that provisions of Arizona law

relating to registration, arrest, detention and removal of aliens are preempted).

*Compare* Resp. Br. at 25 & n.7 (attempting to distinguish *Bartlett v. Honeywell

Int'l*, 737 Fed. App'x 543 (2d Cir. 2018), by arguing that "federal preemption

issues were implicated" in that case).[1]  *Flores* claims present substantial questions about the duties of a federal agency in a field defined only by federal law where the United States has vital, distinctively federal interests.

Appellants reiterate:  Claims arising under the *Flores* consent decree directly present controlling questions of federal law because that decree has binding force through the operation of federal common law.  These disputed questions of federal law are substantial and the federal interest in the resolution of those questions is significant, defining the duties and obligations of the United States in immigration and removal proceedings where federal authority is plenary and frequently preemptive.  The need for a uniform nationwide policy on these questions is written into the consent decree itself.  And the congressionally anticipated balance between state and federal authority in this field is not disrupted in any way by recognizing federal question jurisdiction, as Congress would assume that the provisions of a federal consent decree defining the duties and obligations of federal agencies and officials would always be enforced in federal court.  The case for federal question jurisdiction under *Gunn v. Minton* is clear.

---

[1] The government asserts that "Appellants neglect to mention" that *Bartlett* implicated preemption questions.  That is untrue.  *See* Opening Br. at 20 (describing *Bartlett* as involving "a dispute over whether a party 'had complied with a consent decree approved by a federal district court,' alongside a potential federal preemption question").

3. The Court Below Misconstrued Paragraph 24(B) of the *Flores* Decree.

The court below provided no sound basis for ruling that Paragraph 24(B) of the *Flores* consent decree could not authorize district courts other than the Central District of California to enforce its provisions. It relied on the decision of the Eleventh Circuit in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012), for the proposition that "as a general rule, courts do not have the authority to enforce other courts' injunctions." (JA010). But *Alderwoods* was a bankruptcy dispute in which the Eleventh Circuit expressly based its holding on the *in rem* nature of the claim before it. *Alderwoods* involved a debtor who was served with a complaint by a creditor in Florida. The debtor believed the claim was discharged by a previous order of the Delaware bankruptcy court and sued in a Florida district court to enforce the discharge order. The Eleventh Circuit held that the debtor was required to seek its enforcement order from the bankruptcy court in Delaware because the district court in Florida lacked subject-matter jurisdiction over the dispute. The court expressly based that holding on the *in rem* nature of a bankruptcy proceeding, which requires that a court possess exclusive control over the res of the bankrupt estate. "As a matter of basic policy," the Eleventh Circuit wrote, "[b]ankruptcy jurisdiction . . . is principally *in rem* jurisdiction" and a court "must have possession of the res in order to obtain *in rem* jurisdiction over its distribution." *Id*. at 969. The exclusive nature of the original bankruptcy court's

jurisdiction is necessary because "[o]nly if the court has exclusive custody and control over the [res] does it have jurisdiction over the [res] so as to be able to adjudicate rights in it that are binding against the world." *Id*.; *see also id*. at 971 ("As the court that controlled the res of Debtors' estate, the Delaware Bankruptcy Court retained jurisdiction to effectuate and enforce the discharge injunction.").

The claims in this case are entirely *in personam* and are not constrained in any way by the demands of an *in rem* proceeding. And unlike the Delaware bankruptcy court in *Alderwoods*, which retained "exclusive custody and control" over any discharge claims relating to the res of the estate, *id*. at 969, the *Flores* court expressly authorized other district courts to enforce the provisions of the decree. *Alderwoods* has no application here, and the district court cited no other authority for the proposition that the *Flores* court could not authorize enforcement of the decree in other district courts.

The district court's interpretation of Paragraph 24(B) of the *Flores* decree is likewise unsound. The court below concluded that when Paragraph 24(B) authorizes enforcement of the decree in "any United States District Court with jurisdiction and venue over the matter," it requires such a court to have a new and independent basis for subject-matter jurisdiction "because the United States is subject to personal jurisdiction everywhere in the country" and interpreting this reference to refer to personal jurisdiction "would essentially render the term a

nullity, something that the Court must avoid if an alternative interpretation is available." (JA008). For the reasons set forth here and in Appellants' opening brief, there is an independent basis for subject-matter jurisdiction over Appellant's *Flores* claims under both 28 U.S.C. §§ 1331 and 1332(a)(2). Independent of that analysis, the district court's interpretation of Paragraph 24(B) is clearly mistaken.

First, it is incorrect to say that the ability to establish personal jurisdiction is never in dispute in claims brought against officials of the United States government who are sued in their official capacity. The matter was in significant dispute before both the Second Circuit and the Supreme Court of the United States in the post-9/11 litigation concerning the detention and habeas corpus petition of José Padilla, an American citizen named by the United States as an enemy combatant. In *Padilla v. Rumsfeld*, 352 F.3d 695 (2d Cir. 2003), *rev'd*, 542 U.S. 426 (2004), the Second Circuit concluded that Secretary of Defense Donald Rumsfeld was the proper habeas respondent and found that the federal district court in New York was required to establish personal jurisdiction over the Secretary in order to entertain the petition: "The issue, then, is whether Secretary Rumsfeld is subject to the personal jurisdiction of the Southern District of New York." *Id*. at 709. When the case came before the Supreme Court, that Court concluded that a custodial official in South Carolina was the proper respondent, not Secretary Rumsfeld, and held that the district court in New York could not exercise

jurisdiction over that official. 542 U.S. 426, 435-36, 446-47. Writing separately, Justice Kennedy described the uncertainty surrounding the lawsuits involving habeas petitions where the physical location of the relevant custodial official is subject to dispute and explained that "the question of the proper location for a habeas petition is best understood as a question of personal-jurisdiction or venue." *Id*. at 451 (Kennedy, J., concurring).

*Flores* claimants sometimes seek remedies through a writ of habeas corpus, either as one vehicle for asserting their *Flores* claims or as a parallel form of relief. *See, e.g.*, *D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016) (deciding the merits of a habeas petition that partially relies upon *Flores*); *Maldonado v. Lloyd*, No. 18-cv-3089, 2018 WL 2089348 (S.D.N.Y. May 4, 2018) (examining a habeas petition that partially relies upon *Flores*); *J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559 (E.D. Va. 2018) (mentioning *Flores* as background before denying habeas relief); *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018) (reviewing both habeas and *Flores* claims). It thus makes perfect sense that the *Flores* court would specify that claimants seeking relief in another district court must ensure that they can join all the proper defendants to the action according to the rules of personal jurisdiction and venue.

Second, the syntax of this language in Paragraph 24(B)—pairing the terms "jurisdiction" and "venue" as requirements when authorizing "any United

States District Court" to enforce the provisions of the consent decree—indicates a reading of the term "jurisdiction" that refers to personal jurisdiction. Personal jurisdiction and venue are both forum-access rules that determine where a claim may be brought within the federal system. When choosing between U.S. district courts, the standard limitations on forum access are the rules of personal jurisdiction and venue. Subject-matter jurisdiction, in contrast, operates uniformly in the federal courts, subject only to specialized exceptions that are not relevant here (for example, claims that are required to be asserted in the Federal Court of Claims). The evident purpose of this language in Paragraph 24(B) is to authorize enforcement of the *Flores* consent decree in "any" district court in the country, subject only to whatever case-specific facts might limit the choice among federal fora. Personal jurisdiction and venue limit the choice among federal fora. Subject-matter jurisdiction governs access to federal court at all. Paragraph 24(B) is best read as describing the limits on the choice among federal fora that might result from personal jurisdiction or venue.

The insistence of the court below that its contrary reading of Paragraph 24(B) aimed to "avoid" an interpretation that "would essentially render the term a nullity" rings hollow. (JA008). Having concluded that the reference in Paragraph 24(B) must refer exclusively to subject-matter jurisdiction, the district court suggested that *no* district court other than the Central District of California

could ever enforce the terms of the *Flores* agreement.  The district court's interpretation would render all of Paragraph 24(B) a nullity.  This is hardly a ruling driven by a desire to avoid rendering the language of an agreement ineffective.

### 4. The Requirements of Alienage Jurisdiction Under 28 U.S.C. § 1332(a)(2) Are Satisfied.

The government offers no response at all to Appellants' explanation that the requirements of alienage jurisdiction under 28 U.S.C. § 1332(a)(2) are satisfied in this case.  *See* Opening Br. at 3.  The right of detained migrants to sue in federal court to enforce the U.S. government's *Flores* obligations should not and does not depend on alienage diversity.  But subject-matter jurisdiction does exist in this case under § 1332(a)(2) and will exist in most cases involving the *Flores* settlement.  This Court has the option of reversing the holding of the district court on that ground alone.

***

Paragraph 24(B) of the *Flores* decree authorizes migrant children to enforce its provisions in any United States District Court with jurisdiction and venue over the dispute.  That is exactly what Appellant seeks to do.  This Court should reverse the ruling of the court below and hold that 28 U.S.C. § 1331 (and 28 U.S.C. § 1332(a)(2)) provide ample authority for subject-matter jurisdiction over these claims.

**B.    The District Court Had Subject-Matter Jurisdiction over Appellants' Constitutional and Statutory Claims Based on Interference with an Existing Attorney-Client Relationship.**

The government asserts that every court of appeals to address the issue has determined that right-to-counsel claims are subject to § 1252(b)(9) and, accordingly, can only be brought by petition for review once administrative immigration proceedings have ended.  *See* Resp. Br. at 31-33 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016); *Skurtu v. Mukasey*, 552 F.3d 651 (8th Cir. 2008); *Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007)).  The government fails to acknowledge that each of these cases arose primarily in the context of unrepresented individuals filing right-to-counsel claims in district court. Appellants raise the distinct question of whether constitutional and statutory claims of interference with an *existing and established* attorney-client relationship also must be channeled into the petition-for-review process.  *See* Opening Br. at 23-25. This Court should follow the sound reasoning in *Arroyo v. United States Department of Homeland Security*, No. SACV 19-815, 2019 U.S. Dist. LEXIS 111869 (C.D. Cal. June 20, 2019), which correctly evaluated such a claim as independent of and collateral to removal proceedings and beyond the jurisdiction-channeling provisions' reach.  *See* Opening Br. at 27-28.

The government further asserts that Appellants rely on *Chehazeh v. Attorney General*, 666 F.3d 118 (3d Cir. 2012), to argue that the absence of a final

order of removal immunizes their right-to-counsel claim from the petition-for-review process, rendering §§ 1252(a)(5) and (b)(9) duplicative. *See* Resp. Br. at 33, 37-39. This is incorrect. As Appellants explained, § 1252(a)(5) provides for exclusive review of a final removal order through a petition for review filed before a court of appeals, and § 1252(b)(9) establishes the scope of such judicial review. Opening Br. at 25-27. Appellants rely on *Chehazeh* for this Court's holding that, as a matter of law, claims independent of or collateral to the removal process are excluded from § 1252(b)(9). *Id.* at 27. Therefore, the government's argument that this Court should "limit[] *Chehazeh* to its facts" because it involved a "one-of-a-kind claim" and "relied on decisions assessing habeas detention claims," Resp. Br. at 33-38, is misplaced. Instead, as the government correctly observes, "the applicability of section 1252(b)(9) depends on the *nature of the claim* being considered." *Id.* at 35 (emphasis added) (citing *Chehazeh*, 666 F.3d at 133 n.19). The independent and collateral nature of Appellants' interference-with-existing-counsel claim renders § 1252(b)(9) inapplicable. *See* Opening Br. at 27-28.

Resisting this conclusion, the government falls back on the argument that § 1252(b)(9)'s "capacious" language "swallows up virtually all claims that are tied to removal proceedings." Resp. Br. at 30 (quoting *J.E.F.M.*, 837 F.3d at 1031). Appellants' claims are "tied to" their removal proceedings, the government argues, because the statutory source of their right to counsel circumscribes it to

removal proceedings. *See id.* at 32 (referencing 8 U.S.C. § 1362). The flaw in this reasoning stems from the *source of the right* guiding the government's jurisdictional analysis rather than the *nature of the claim*. That a claim of interference with an attorney-client relationship "arises from" removal proceedings because the underlying right exists in removal proceedings constitutes the exact "but for" test the *Jennings* plurality cautioned against. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018) (interpreting § 1252(b)(9) as a but-for-the-removal-proceedings test "would lead to staggering results"). Irrespective of the source of their right to representation, once Appellants retained counsel, they enjoyed the right not to have their attorney-client relationship unduly burdened or terminated, not only by statute but also by the Fifth Amendment.[2] *See* Opening Br. at 23, 27–30.

---

[2] The government contends that because "Appellants' alleged harm has not even transpired," interference with existing counsel is a "paradigmatic example of a claim that must be brought through the [petition-for-review] process after the harm . . . manifests." Resp. Br. at 35–36. Preventing injury and harm, however, is the exact purpose of the preliminary injunctive relief sought before the district court and denied on subject-matter jurisdiction grounds. *See Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974) (defining preliminary injunction standard); *cf. Jennings*, 138 S. Ct. at 840 (questioning an "extreme" application of § 1252(b)(9) that would subsume review of prolonged detention claims, because "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place").

The government contends that because "right-to-counsel claims are routinely raised in petitions for review," Appellants' claims are "far afield from the class of claims that are 'effectively unreviewable.'" Resp. Br. at 40-41. This assertion is untenable. It may be that certain right-to-counsel claims, such as inability to secure representation or inadequate representation, routinely arise before courts of appeals. Such claims, however, often involve harms measured by the outcome of removal proceedings. Appellants' claims are distinct—they involve an independent harm imposed on their legal representation, measured not at the end of their removal proceedings, but at the moment of forced separation from counsel. *See* Opening Br. at 27-28. There is no principled reason to hold Appellants' interference-with-counsel claims in limbo, for months or years after their placement in Mexico, until a final order of removal issues. *See Jennings*, 138 S. Ct. at 840 (cautioning against applying § 1252(b)(9)'s "arising from" language with "uncritical literalism" to yield "absurd . . . results that no sensible person could have intended").

In sum, even if 8 U.S.C. § 1252(b)(9) is broad, it is not all-encompassing, and cannot serve to statutorily bar Appellants' right-to-counsel claims from proceeding before the district court.

**C.  The District Court Had Subject-Matter Jurisdiction over Appellants' Claims that Their Forced Return to Mexico Would Violate Their Statutory and Constitutional Rights.**

The district court held that § 1252(b)(9) ousted its subject-matter jurisdiction to hear Appellants' claims regarding the government's statutory authority to subject them to MPP, and therefore did not reach the claim on its merits.  (JA013-014).  The appeal from this decision addresses why the district court, in fact, had jurisdiction over this claim.  *See* Opening Br. at 32-37.  Rather than respond to Appellants' jurisdictional arguments, the government briefs its statutory authority to return Appellants forcibly to Mexico, and—conceding that § 1252(b)(9) does not oust jurisdiction—asks this Court to rule on the merits.  *See* Resp. Br. at 47-54.  This is proper, it asserts, because the merits have been "fully briefed" and Appellants will endure no prejudice.  *Id.* at 48.

As a threshold matter, if this Court were to address the merits of the government's statutory authority, it must reverse the district court's holding and declare jurisdiction to hear the claim under 28 U.S.C. § 1331, for the reasons explained in Appellants' opening brief.

The government is incorrect, however, that the parties have fully briefed the merits of the issue.  Appellants filed below an emergency petition for writ of mandamus, (JA031-052), and a motion for a preliminary injunction, (JA053-083), to enjoin their forced return to Mexico.  In support, Appellants

argued among several other bases for relief the likelihood of success that a court would find them not statutorily eligible for MPP. (*See* JA074-076). Appellants then dedicated their argument before this Court to issues of jurisdiction. *See* Opening Br. at 32-37. Upon this Court's reversal, should it determine not to remand and instead decide the merits in the first instance, Appellants welcome an opportunity for supplemental briefing on the issue if the Court deems appropriate. In the remaining space available on reply, Appellants respond to the government's merits arguments.

The government relies on the "contiguous territory" provision, codified at 8 U.S.C. § 1225(b)(2)(C), to subject Appellants to the MPP and return them to Mexico. But by the statute's plain terms, the contiguous territory provision only applies to aliens who are being inspected for admission under § 1225(b)(2). Because Appellants were deemed inadmissible under § 1182(a)(7), they fall into the § 1225(b)(1) category by definition and are not the subject of the contiguous territory provision—and thus cannot be sent to Mexico to wait out their removal proceedings under MPP.

Resisting this mandate, the government purports that "applicants for admission possess no innate characteristics that require them to be placed in expedited removal proceedings under section 1225(b)(1) or full removal proceedings under section 1225(b)(2)." Resp. Br. at 49. It follows, the

government reasons, that because ICE maintains discretion to place applicants in either expedited or full removal proceedings, "[o]nce the decision is made to place aliens, like Appellants, in full removal proceedings," they become "clearly subject to" § 1225(b)(2), and § 1225(b)(1) ceases to apply. *Id.* at 50. In other words, whether § 1225(b)(1) "applies" to Appellants turns on an immigration officer's discretion to afford them full removal proceedings. *See id.* ("[T]he contiguous return authority . . . can be lawfully exercised with respect to any unadmitted alien who is placed in full removal proceedings.").

This is wrong for several reasons. First, the government subverts the plain text of § 1225(b) to create mutually exclusive categories of removability, rather than mutually exclusive channels for inadmissibility. As the Supreme Court observes:

> [A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. . . . Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) . . . .

*Jennings*, 138 S. Ct. at 837. The government's interpretation rewrites the statute such that whether § 1225(b)(1) or § 1225(b)(2) applies is measured by expedited removal proceedings or full removal proceedings.

There is nothing in § 1225(b) to support that an immigration officer's decision to place an individual in expedited or full removal proceedings controls whether § 1225(b)(1) or § 1225(b)(2) "applies" to that person. The statutory structure commands that: § 1225(b)(1) applies to persons initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation; and § 1225(b)(2) applies to individuals who are inadmissible based on any other ground. Congress determined that the contiguous territory provision—the stated source of authority for the MPP—"shall not apply" to individuals to whom § 1225(b)(1) "applies." 8 U.S.C. § 1225(b)(2)(B). It is untenable that the contiguous territory provision's reach be dictated by an agency's exercise of discretion to initiate full removal proceedings, rather than the limitations imposed on it by Congress. *See Harbison v. Bell*, 556 U.S. 180, 198 (2009) (Thomas, J., concurring) ("Congress' intent is found in the words it has chosen to use.").

The government's argument also hinges on the view that individuals placed in full removal proceedings necessarily fall into § 1225(b)(2) and not § 1225(b)(1). This position is belied by the fact that § 1225(b)(1) *also* provides for full removal proceedings if an individual, to whom that designation applies, passes a credible fear interview. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) (codifying that individuals who pass credible fear "shall be detained for further consideration of the application for asylum"); 8 C.F.R. § 208.30(f) (providing for full removal

proceedings upon a positive credible fear finding).  It follows that when an individual to whom § 1225(b)(1) "applies" is placed in full removal proceedings, § 1225(b)(1) continues to apply to that person.  A contrary result would render the inadmissibility determination meaningless and the different grounds of inadmissibility superfluous.

The government's argument is further belied by policy and legislative history.  Individuals arriving at a land border after fleeing desperate circumstances may possess no documents or fraudulent documents, and are inadmissible for that reason and subject to placement in expedited removal.  *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1138 (9th Cir. 2004).  Congress established a credible fear screening to ensure that individuals with genuine asylum claims are not returned to danger.  *See* H.R. Rep. No. 104-469, pt. 1, at 158 (1996).  Therefore, such individuals, at minimum, will be entitled to remain in the United States pending a credible fear evaluation to assess the potential merit of their claims and, if sufficiently merited, pending a decision on those claims in full removal proceedings.

Because there is no dispute that, in enacting the contiguous territory provision, Congress specifically exempted from its reach individuals to whom § 1225(b)(1) "applies," Appellants are statutorily ineligible for MPP and cannot be forcibly returned to Mexico during their removal proceedings.

**D.    The District Court Had Subject-Matter Jurisdiction over Appellants' Claims that MPP Violates Guarantees of Non-Refoulement and Lacks Necessary Procedural Safeguards.**

Appellants assert that their forced return to Mexico violates the government's non-refoulement obligations under the withholding of removal statute, 8 U.S.C. § 1231(b)(3), its implementing regulations, 8 C.F.R. §§ 208.16(a), 1208.16(a), and the Convention Against Torture, because the government failed to furnish an even minimally adequate procedure to prevent returning them to persecution or torture.  Appellants also assert their forced return would be arbitrary and capricious in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), because the procedure they received lacked the safeguards necessary to comply with non-refoulement and unjustifiably diverged from established agency practices.  *See* Opening Br. at 37-41; (JA076-079).  The district court had subject-matter jurisdiction, 28 U.S.C. § 1331, to adjudicate Appellants' claims regarding non-refoulement.

The government now contends that Appellants only raised non-refoulement claims under CAT before the district court and, therefore, any claims that arise under the withholding of removal statute are beyond this Court's purview.  *See* Resp. Br. at 43-44.  This is incorrect.  At the preliminary injunction hearing, Appellants explicitly invoked both sources of the government's non-refoulement obligations.  (JA374-375).  Therefore, the withholding statute was put

forth with "sufficient specificity" and thoroughness to alert the district court of the claim and preserve the issue for appeal. *Keenan v. City of Philadelphia*, 983 F.2d 459, 471 (3d Cir. 1992); *see also In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 262 (3d Cir. 2009) ("[A]rguments . . . properly preserved for appeal are limited to those . . . presented with at least a minimum level of thoroughness to the District Court.").

Congress enacted the withholding statute to codify the United States' obligation of non-refoulement. *See* Opening Br. at 38-39. This statutory scheme creates various procedural requirements that must be met before a removal or return determination can be made. *See, e.g.*, 8 U.S.C. § 1229a(b)(4)(A) (right to have counsel); 8 U.S.C § 1229a(b)(4)(B) ("reasonable opportunity" to present, examine, and confront evidence). Appellants were not provided the very procedural safeguards designed to ensure that the United States fulfills its non-refoulement obligations, and thus present a cognizable claim under the statute.

The government now takes the surprising position that Appellants do not benefit from the withholding of removal statute's protections, because the statute only applies when an alien is "removed" and not "returned." In other words, the statute enshrines protections as to removing them to their native Guatemala, but not returning them to their non-native Mexico. *See* Resp. Br. at 44. This reading simply guts the withholding statute. Congress provided a clear

mandate that the "Attorney General may not remove" refugees to persecution. 8 U.S.C. § 1231(b)(3). This directive would be rendered meaningless if the government could just sidestep it by choosing to "return" a person to persecution before a final decision is made to "remove" that person.[3] *See King v. Burwell*, 135 S. Ct. 2480, 2493 (2015) ("We cannot interpret federal statutes to negate their own stated purposes.").

The government's position is further undermined by the history of the withholding statute. Congress enacted this statute to comply with the United States' non-refoulement obligation under Article 33.1 of the Refugee Convention, which provides:

> No Contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened . . . .

Opening Br. at 38. In order to implement this treaty obligation, Congress passed the 1980 Refugee Convention, which explicitly provided that the "Attorney General shall not deport *or return* any alien," to the likelihood of persecution. INA § 243(h) (1980) (emphasis added). The language was amended from "deport or return" to "remove" because of the later consolidation of deportation and exclusion

---

[3] For support, the government cites *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008), which did not discuss the legality of "returning" a non-citizen who does not have final order of removal to the likelihood of persecution. This case has no bearing on Appellants' case. *See* Resp. Br. at 44.

proceedings into unitary "removal" proceedings in 1996. *See* Pub. L. No. 104-208, 110 Stat. 3009 (1996). In other words, Congress intended the withholding statute's prohibition on "removal" to encompass both "deportation" and "returns." There are no indicia that Congress, through these amendments, intended to fundamentally alter the United States' non-refoulement obligations. Therefore, the withholding of removal statutes reaches Appellants, who alleged that they were not provided adequate procedural safeguards against non-refoulement. *See* Opening Br. at 37-39. Because a breach of the withholding of removal statute, in the context of either a removal or a return, presents a federal question "arising under the Constitution, laws, or treaties of the United States," the district court had subject-matter jurisdiction to hear Appellants' claims. 28 U.S.C. § 1331.

The government further asserts that any argument that the procedural safeguards implemented by the MPP deviate from the government's non-refoulement obligations, such that they are inadequate and inconsistent with the APA, is immunized from judicial review. *See* Resp. Br. at 44. In support of this conclusion, the government argues that the decision whether to provide procedural safeguards is "committed to agency discretion by law" and, therefore, immune from review under the APA. *Id.* at 45 (citing 5 U.S.C. § 701(a)(2)). However, the judicial review exception for action committed to agency discretion is narrowly circumscribed to "those rare circumstances where the relevant statute is drawn so

that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019). Here, various procedural concerns over MPP's implementation remain ripe for the district court's adjudication, including whether the government's process to determine Appellants' fear of return to Mexico was arbitrary and capricious. (JA076-079). In other words, because Appellants allege that the fear process contravenes statutes and regulations against which the district court could evaluate the agency's discretion, this case does not present one of those rare exceptions envisioned by the APA.

This Court therefore must reverse the district court's holding that it lacked jurisdiction over Appellants' claims that the MPP violates non-refoulement obligations and is arbitrary and capricious.

Respectfully submitted,

*/s/ Anthony Vale*
Anthony Vale
Michael S. DePrince
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Telephone:  (215) 981-4000
Fax:  (215) 981-4750
Email:  valea@pepperlaw.com

Tobias Barrington Wolff
3501 Sansom Street
Philadelphia, PA 19104
Telephone:  (215) 898-7471
Email:  twolff@law.upenn.edu

Bridget Cambria
Cambria & Kline, P.C.
532 Walnut Street
Reading, PA 19601
Telephone:  (484) 926-2014
Fax:  (484) 926-2032
Email:  bridget.cambria@cambriaklinelaw.com

Amy Maldonado (IL Bar. No. 6256961)
Law Office of Amy Maldonado
333 Albert Avenue, Suite 610
East Lansing, MI 48823
Telephone:  (517) 803-2870
Fax:  (888) 299-3780
Email: amy@amaldonadolaw.com

Dated:  October 21, 2019          *Attorneys for Appellants*

## CERTIFICATE OF BAR MEMBERSHIP

I, Anthony Vale, pursuant to Local Appellate Rule 46.1(e), hereby certify that I am counsel of record and am a member of the bar of the United States Court of Appeals for the Third Circuit.


*/s/ Anthony Vale*
Anthony Vale

Dated: October 21, 2019          *Attorney for Appellants*

## <u>CERTIFICATE OF WORD COUNT</u>

I, Anthony Vale, hereby certify that Appellants' Reply Brief complies with the word count limitation established by Fed. R. App. P. 27(d)(2)(A) because this brief contains 6,496 words, according to the word count feature of Microsoft Word 2010.  This count excludes the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Anthony Vale*
Anthony Vale

Dated:  October 21, 2019          *Attorney for Appellants*

# CERTIFICATE OF PERFORMANCE OF VIRUS CHECK

I, Anthony Vale, hereby certify that on October 21, 2019, I caused a virus check to be performed on the electronically filed copy of this brief using the following virus software: Symantec Endpoint, v.14. No virus was detected.

*/s/ Anthony Vale*
Anthony Vale

Dated: October 21, 2019          *Attorney for Appellants*

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, Anthony Vale, hereby certify that the electronic brief that the text of the electronically brief is identical to the text of the original copies that will be dispatched by hand delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit.

*/s/ Anthony Vale*
Anthony Vale

Dated:  October 21, 2019          *Attorneys for Appellants*

# CERTIFICATE OF SERVICE

I, Anthony Vale, hereby certify that on October 21, 2019, a true and
correct copy of the foregoing Appellants' Reply Brief was served electronically
upon the below-listed parties via the Court's CM/ECF system:

Archith Ramkumar
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Veronica Finkelstein, Esquire
Paul Koob, Esquire
Anthony St. Joseph, Esquire
United States Attorney's Office
Department of Justice
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106


*/s/ Anthony Vale*
Anthony Vale

Dated:  October 21, 2019            *Attorney for Appellants*